# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

Dick's Sporting Goods, Inc., d/b/a  )
Dick's Sporting Goods, Inc. #375  )
           )
   Petitioner,    )
            )
 v.         )  No. 2:14-cv-02360-JPM
            )
Kevin Boydston, Director of Industry )
Operations, Bureau of Alcohol,  )
Tobacco, Firearms and Explosives, )
            )
   Respondent.   )

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The Attorney General has authority to deny an application for a Federal firearms license (an "FFL") pursuant to 18 U.S.C. § 923(d)(1)(C) or to revoke an FFL pursuant to 18 U.S.C. § 923(e), after notice and opportunity for a hearing, if an applicant for or holder of an FFL has willfully violated any provision of the Gun Control Act (the "GCA") and the regulations issued thereunder. This authority is delegated to the ATF Director, and further delegated to the DIO. *American Arms Int'l v. Herbert*, 563 F.3d 78, 82 n. 5 (4th Cir. 2009).

In June 2013, pursuant to the authority of 18 U.S.C. § 923(g)(1)(B)(ii)(I) and 27 C.F.R. § 478.23(b)(2)(i), Dick's Sporting Goods, Inc., d/b/a Dick's Sporting Goods, Inc. #375 (the "Licensee" or "Petitioner") underwent a compliance inspection. Three separate violations were uncovered during that inspection. *Gov't Exhibit 3*.

The three violations were all related to the same activity, commonly referred to as a "straw purchase," whereby the true purchaser of a firearm utilizes a stand-in "straw purchaser" to obtain a firearm on their behalf. The straw purchaser completes and signs an ATF Form 4473, falsely stating under penalty of perjury that he or she is the actual buyer

of the firearm, and undergoes the required criminal background check. *See Abramski v. United States*, No. 12-1493, pp. 10–11, (U. S. June 16, 2014) (copy attached); *Tr.* 51:20–52:11. The three violations were: 1) transfer to a person with reason to believe prohibited, 2) false information in A&D Record as to purchaser, and 3) false information on ATF Form 4473 as to purchaser. *Gov't Exhibit 2.*

The DIO determined that the Licensee willfully committed all three of the violations, and based his decision to revoke the Licensee's Federal firearms license on the first and third of those violations. *Final Notice*, ¶ 29–30. Violation number two, however, was not a part of the basis for the revocation, and is not a part of the review by this Court.

## ARGUMENT

### I.      Standard of Review

#### A.      *De Novo* Review of the Administrative Decision

This Court's review of the Attorney General's decision to revoke Petitioner's FFL is *de novo*. 18 U.S.C. § 923(f)(3). This Court "*may* consider any evidence submitted by the parties to the proceedings whether or not such evidence was considered at the [administrative] hearing." 18 U.S.C. § 923(f)(3) (emphasis added); *see Garner v. Lambert*, 345 F. App'x. 66, 68 n.2 (6th Cir. 2009); *Appalachian Res. Dev. Corp. v. McCabe*, No. 2:01-0061, 12 (M.D. Tenn. Mar. 31, 2003) (copy attached), *aff'd*, 387 F.3d 461 (6th Cir. 2004). "[B]ecause the statute is permissive, stating only that the Court 'may' consider additional evidence, a 'trial de novo' is not required in every case, and the district courts instead have 'the discretion to receive additional evidence to be considered along with that in the administrative record when some good reason to do so either appears in the administrative record or is presented by the party petitioning for judicial review.'" *Morgan*

*v. U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms & Explosives*, 473 F. Supp. 2d 756, 761–62 (E.D. Mich. 2007), *aff'd in part sub nom*, *Morgan v. Fed. Bureau of Alcohol, Tobacco & Firearms*, 509 F.3d 273 (6th Cir. 2007); *see Cucchiara v. Sec'ty of the Treasury*, 652 F.2d 28, 30 n.1 (9th Cir. 1981).

Where sufficient factual evidence exists in the administrative record to support the revocation of the FFL, it is widely acknowledged that the Court may base its *de novo* review on the administrative record without incurring the burden or expense of an additional, unnecessary evidentiary hearing. *Appalachian*, No. 2:01-0061 at 12; *Shaffer v. Holder*, No. 1:09-0030, 2010 WL 1408829, at *5 (M.D. Tenn. Mar. 30, 2010) (copy attached) (citing *Arwady Hand Truck Sales, Inc. v. Vander Werf*, 507 F. Supp. 2d. 754, 758 (S.D. Tex. 2007)); *Clust, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, No. 2:04-CV-839, 2005 WL 1651794, at *4 (S.D. Ohio July 13, 2005) (copy attached) (citing *Perri v. Dep't of Treasury, Bureau of Alcohol, Tobacco and Firearms*, 637 F.2d 1332, 1335 (9th Cir. 1981)).

B.    Summary Judgment Standard

Summary judgment should be granted in situations when there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). To defeat a properly supported motion for summary judgment, the nonmoving party is required to come forward with persuasive evidence showing that there is a genuine issue of material fact. "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir.1986)).

Although the evidence must be viewed in a light most favorable to the nonmoving party, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see 60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987) (the nonmoving party must "present some significant evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial"). Only when there are genuine disputes of fact that might "affect the outcome of the suit under governing law" will summary judgment be defeated. *Anderson*, 477 U.S. at 248; *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("when the moving party has carried its burden [by showing an absence of a genuine issue of material fact], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

After the moving party has met this initial burden by showing that there is an absence of evidence to support the non-moving party's complaint, the plaintiff must offer "concrete evidence from which a reasonable juror could return a verdict in [the plaintiff's] favor . . ." in order to defeat summary judgment. *Anderson*, 477 U.S. at 256.

The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita*, 475 U.S. at 585–88. "Mere conclusory allegations [even those contained in an affidavit,] are not sufficient to withstand a motion for summary judgment." *See Cincinnati Bell Tel. Co. v. Allnet Comm'n Servs., Inc.*, 17 F.3d 921, 923 (6th Cir. 1994) (citing *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990)); *Saleh v. City of Warren, OH*, 86 F. App'x 866, 869 (6th Cir.

2004) (citing *Emmons v. McLaughlin*, 874 F.2d 351, 358 (6th Cir. 1989)); *see also*

*Laurence v. Anteon Corp.*, No. 3:06-0637, 2008 WL 413640, at *2 (M.D. Tenn. Feb. 13,

2008) (copy attached) (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)

("conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and

are not sufficient to defeat a [properly] supported motion for summary judgment.")).

In situations "[w]here the factual context renders the non-moving party's position

implausible, it must come up with more persuasive evidence than would otherwise be

necessary to defeat summary judgment." *Matsushita*, 475 U.S. at 587; *but see Street v. J.C.*

*Bradford & Co.*, 886 F.2d 1472, 1480 n.21 (6th Cir. 1989) (stating that although a court

may exercise discretion in determining whether the "non-moving party's position [is]

implausible," caution should be exercised when so doing).

C.    Application of the Summary Judgment Standard to *De Novo* Review of a
      Federal Firearms License Revocation

The Sixth Circuit has endorsed the summary judgment standard for *de novo* review

of firearms license revocations under 18 U.S.C. § 923(f)(3). *See Armalite, Inc. v. Lambert*,

544 F.3d 644, 646–47 (6th Cir. 2008); *Appalachian*, 387 F.3d at 462. Furthermore, several

district courts in this circuit have concluded that in a *de novo* review of a firearms license

denial or revocation where there are no genuine issues of material fact, "it is clear that . . . a

court may properly grant summary judgment without conducting an evidentiary hearing."

*Al's Loan Office, Inc. v. U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco and Firearms*,

738 F. Supp. 221, 223 (E.D. Mich. 1990), *aff'd, Al's Jewelry and Loan, Inc. v. U.S. Dep't*

*of Treasury, Bureau of Alcohol, Tobacco and Firearms*, No. 95-1765, 1996 WL 683528

(6th Cir. Nov. 22, 1996) (quotation omitted) (copy attached); *Shaffer*, 2010 WL 1408829,

at *10–12; *see 3 Bridges, Inc. v. United States*, 216 F. Supp. 2d. 655, 657; 659–60 (E.D. Ky. 2002).

In a *de novo* review of firearms license revocation under the GCA, the certified transcript of an administrative proceeding and the certified administrative record may be considered as the source of facts on a motion for summary judgment. *See American Arms Int'l.*, 563 F.3d at 86 n.12 (a certified administrative record is given a presumption of accuracy when introduced in support of a motion for summary judgment). Unless somehow contradicted, the certified administrative record "satisfie[s] [ATF's] initial burden on summary judgment of demonstrating the absence of any genuine issue of fact." *Id.*

## II. The Material Facts in the Present Case are Not Disputed and Summary Judgment is Appropriate

Summary Judgment is appropriate because the Licensee has not alleged any additional material facts or evidence which cast substantial doubt on ATF's authority for its decision, or which dispute any material facts in the record, nor can such facts be alleged.

Beyond conclusory statements that the Licensee committed no willful violations (D.E. 1, ¶¶ 12, 13, 16, 17), the Licensee has not alleged any new facts supporting the essential elements of its claim. There is no evidence of any disputed facts that could form the basis for a decision in Licensee's favor by the trier of fact.

### A. The Sole Issue for Determination in *De Novo* Review Is Whether or Not the Action Was Authorized.

The Attorney General is authorized to revoke an FFL if the holder of such license has willfully violated any provision of the GCA or any rule or regulation thereunder. 18 U.S.C. § 923(e). Petitioner's own industry "expert," Wally Nelson, testified that the

decision to revoke was within ATF's discretion. *Tr.* 147:21–25. Though he may have exercised his own discretion differently, that is not the appropriate inquiry.

While this Court need not give deference to the agency decision to revoke an FFL, judicial review is limited to whether the agency's action against Petitioner was authorized by law. *See* 18 U.S.C. § 923(f); *Lumber Jack Building Ctrs v. Alexander*, 536 F. Supp. 2d 804, 807 (E.D. Mich. 2008); *Morgan*, 473 F. Supp. 2d at 762. The reviewing Court does not determine whether it would revoke the license in its own judgment, but, rather, whether all of the evidence presented is sufficient to justify the revocation of the FFL according to 18 U.S.C. § 923(f)(3). *Id.*; *Breit & Johnson Sporting Goods v. Ashcroft*, 320 F. Supp. 2d 671, 673 (N.D. Ill. 2004).

The sole question for the Court is whether the evidence is sufficient to justify a finding of one or more willful violations of the GCA. If it is, the court <u>must</u> uphold the revocation as authorized; all other considerations are irrelevant. *Pinion Enterprises, Inc. v. Ashcroft*, 371 F. Supp. 2d 1311, 1314–15 (N.D. Ala. 2005) ("[T]he statute only allows the district court to reverse the Attorney General's decision if it finds 'the Attorney General was not authorized to . . . revoke the license.' . . . The language of § 923(f)(3) does not call upon this Court to decide whether it would revoke the license in it's [sic] own judgment." (citations omitted)).

B.      Revocation Is Authorized for Willful Violations of the GCA.

A "majority of circuits, including the Sixth Circuit, have consistently held that where a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her FFL can be revoked (or application denied) on the basis that the dealer 'willfully' violated the GCA." *Appalachian*, 387 F.3d at 464 (citing *Al's Jewelry*,

1996 WL 683528, at *3–4 ("denial of license application affirmed upon finding petitioner willfully violated GCA because he knew of record keeping obligations yet failed to abide by them)); *see also Armalite*, 544 F.3d at 647–49; *Garner*, 345 F. App'x. at 71.

C.     Licensee Committed Willful GCA Violations Regarding "Straw Purchases."

Allegation No. 1 involves the transfer of firearms to a person the Licensee had reason to believe was prohibited. The Licensee knew or had reason to believe that the true purchaser and transferee, Jason Wayne Brady, was a prohibited person based on the TICS denial of his attempted purchase and the later purchase by his wife. *Gov't Exhibits 7–12 and 14*. Allegation No. 3 involves the failure to obtain properly completed ATF forms 4473. The evidence shows that the Licensee obtained an ATF Form 4473 which showed the name of Mrs. Laura Brady as being the actual buyer of the firearm, when the Licensee knew or should have known that Mrs. Brady was not the true purchaser and transferee of the firearm, and that the information regarding the buyer's name on the ATF Form 4473 was false. Both violations are related to a "straw purchase" whereby the true purchaser has a false "straw" purchaser complete the require documents, undergo the required NICS background check, and obtain the firearm on his or her behalf.

If an FFL has knowledge or reason to believe such a "straw purchase" has occurred, the FFL has committed a willful violation of the GCA. *See Armalite, Inc. v. Lambert*, 544 F.3d 644 (6th Cir. 2008) (FFL revocation upheld based on false entries in records); *United States v. Hern*, 926 F.2d 764, 768 (8th Cir. 1991) (criminal conviction of FFL upheld based on false entries in records). It is well established that straw sales are unlawful and render the ultimate recipient the true purchaser of the firearm sold. *See United States v. Manis*, 344 Fed. App'x. 160, 162 (6th Cir. 2009) (wife purchasing firearms on behalf of her

husband constituted a straw sale, and husband was the true purchaser); *see also Dixon v. United States*, 548 U.S. 1 (2006) (where girlfriend purchased firearms on behalf of her felon boyfriend, the boyfriend was the true purchaser and transferee); *United States v. Morales*, 687 F.2d 697, 700 (6th Cir. 2012) (where a person purchases a firearm on behalf of another person, this other person, and not the one who completes the ATF Form 4473, is the actual buyer and true purchaser); *United States v. Lawrence*, 680 F.2d 1126, 1128 (6th Cir. 1982) (same).

The fact that a Federal firearms licensee had reasonable cause to believe the person obtaining a firearm is not the true purchaser is sufficient proof of the knowledge element of this violation. *See United States v. Beaufort*, No. 94-5554, No. 95-5002, 1996 U.S. App. LEXIS 9275, *aff'd* 83 F.3d 416 (4th Cir. 1996) (copy attached); *Perri*, 637 F.2d 1332; *United States v. Brooks*, 61 F2d 614 (5th Cir. 1980) (Overruled on other grounds by *United States v. Henry*, 749 F.2d 203 (5th Cir. 1984)). A dealer has reason to believe the purchase is a straw transaction when the purported purchaser has very little to do with the transaction, perhaps merely signing, or completing and signing, the ATF Form 4473, and the person who is the true purchaser does activities such as choosing the firearm, discussing the features of the firearm, negotiating the price, providing the payment, and taking custody of the firearm. *See, Perri*, 637 F.2d 1332; *Brooks*, 61 F.2d 614.

Mr. Brady went to Licensee's location and sought to purchase the Mossburg. He failed to complete the purchase when his TICS check came back as "Denied." Hours later, his wife went to the same location to purchase the exact same Mossburg, from the exact same sales associate, listing the exact same last name and address on her ATF Form 4473. Between Mr. Brady's attempted purchase and his wife's successful purchase, Licensee

made only three TICS inquiries, and there were no other denials. In addition to his own personal experiences and memories from earlier in the day, the sales associate had ready access to information regarding prior denials, and indicated by his signature that he had reviewed the store's delayed/denied log for potential straw purchases. Despite all of this, Licensee still transferred the Mossburg.

When an FFL sees indications that a straw purchase is occurring, the FFL should at least make further inquiry into the sale's propriety. There is no evidence that any further inquiry was made here. Because Licensee knew or should have known that Mr. Brady was prohibited from possessing a firearm, and knew or should have known that a straw purchase was occurring, Mr. Brady was effectively the "actual purchaser" of the Mossburg through his wife's straw purchase.

The United States Supreme Court recently addressed the issue of straw purchases from FFLs. *See Abramski v. United States*, No. 12-1493 (U. S. June 16, 2014). The Court in *Abramski* analyzed the criminal conviction of a "straw purchaser" for providing a false statement to the FFL that he was the actual buyer of the firearm when in fact he was not the true purchaser. Abramski was not prohibited from possession of firearms, nor was the person for whom he obtained the firearm, and he argued that his statement was, therefore, not "material to the lawfulness of the sale," under 18 U.S.C. §§ 922(a)(6). *Id*. at 5–6.

The Court disagreed, holding that because the law required the actual purchaser to appear in person at the FFL, complete the required documents, produce identification, and have a NICS background check, Abramski's conviction was valid. *Id*. at 2–3. The Court recognized that the requirements set by Congress were important to ensuring that certain categories of persons did not obtain firearms and to enable law enforcement to trace crime

guns in investigations of serious crimes. *Id*. at 4–5, 10–13. The Court stated that these requirements would be meaningless if a purchaser used an intermediary to make the purchase from the FFL.

*Abramski* emphasized that the FFL is a "highly regulated and legally knowledgeable entity," which is the "principal agent of federal enforcement" and has the responsibility to ensure that weapons are not transferred to persons whose possession would be contrary to public interest. *Id.* at 20–21. "No piece of information is more important under federal firearms law than the identity of a gun's purchaser, the person who acquires a gun as a result of a transaction with a licensed dealer." *Id.*

In this matter, the false information is even more serious than what the Court analyzed in *Abramski*. The actual buyer here was indicated as a prohibited purchaser by the "Deny" response to the TICS background inquiry. Accordingly, Licensee's delivery of the Mossberg to Mrs. Brady several hours after Mr. Brady's TICS denial was not only in violation of Federal law, it was also in contravention of public interest. Jason Wayne Brady, the actual purchaser, selected the firearm, completed the purchase ATF Form 4473 and was unable to complete the transaction due to a "Deny" TICS response. A few hours later, his wife purchased the same firearm. Licensee had knowledge or reasonable cause to believe that Mrs. Laura Brady was not the true purchaser because each attempt by Mr. and Mrs. Brady to purchase the Mossberg shotgun was conducted by the same sales associate for the Licensee, the firearm was identical, the attempted purchaser and the person who later obtained the firearm had the same last name and same address, only a short amount of time had elapsed between the two transactions on the same date, and only three transactions occurred between those of Mr. Brady and Mrs. Brady. In addition, though the sales

associate signed the Licensee's log stating that he had reviewed the transaction for Laura Brady for potential straw purchase, he nevertheless completed the transfer. This is a classic "straw purchase," involving multiple GCA violations. *See Abramski* at 10–11.

### D.  ATF's Revocation Was Authorized as a Matter of Law.

The Attorney General is authorized to revoke any FFL following a willful violation of any provision of the GCA or any rule or regulation thereunder. 18 U.S.C. § 923(e). Neither bad purpose nor evil motive need be shown to find a willful violation of the GCA. *Armalite*, 544 F. 3d at 647–49; *Appalachian*, 387 F.3d at 464; *Procaccio v. Lambert*, 233 F. App'x. 554, 557 (6th Cir. 2007). A single willful violation of the GCA or its regulations is sufficient to authorize revocation of an FFL. *Garner*, 345 F. App'x at 70 (citing *Armalite*, 544 F.3d at 647); *Lortz, Ltd. v. Gilbert*, 451 F. App'x 503, 504 (6th Cir. 2011) (citing *Appalachian*, 387 F.3d at 464).

After reviewing the Hearing Officer's Report, the supporting testimony, and other evidence presented along with the report, the DIO concluded that Petitioner willfully violated the GCA and its regulations (18 U.S.C. §§ 922(d), 922(g)(1)(A), 922(m), 923(g)(1)(A), and 924(a)(3)(A), and 27 C.F.R. §§ 478.99(c), 478.124(c)(1) and 478.128(c)), and revoked the Petitioner's FFL. *Final Notice, ¶* 29.

At the administrative hearing, Petitioner admitted that the conduct of Licensee's employees is imputed to the Licensee. *Tr.* 115:21–24. Licensee further admitted that it was aware of the prohibition against conducting "straw purchases" and the related GCA violations. *Tr.* 115:25–116:13.

Petitioner willfully violated the GCA as a matter of law because Petitioner knew of its legal obligation pursuant to the Federal firearms laws and regulations and purposefully

disregarded or was plainly indifferent to such legal obligations. At the very least, Licensee had ample reason to believe – if not actual knowledge – that a straw purchase was occurring and yet continued with the transfer of the Mossburg. Licensee's employee acted in blatant disregard of both federal law and store policy, and that disregard is imputed to Licensee.

Summary judgment is proper because there are no disputed issues of material fact, and the action to revoke Petitioner's Federal firearms license is authorized as a matter of law by 18 U.S.C. § 923(e) due to Petitioner's willful violation of the Federal firearms laws and regulations.

E.    Improvements in Compliance after the Period of Willful Violations Are Not Relevant.

The Courts have consistently determined that compliance with GCA requirements following inspection is irrelevant and has no effect on ATF's revocation authority. *Procaccio*, 233 Fed. App'x. 554. The "argument that . . . post-inspection efforts are probative of . . . willfulness is without merit. What matters are [the] actions at the time the violations occurred." *Id.* at 559 (citing *Cucchiara*, 652 F.2d at 30 ("The fact that [petitioner] has spent a great deal of money trying to correct his faulty recordkeeping system, after the violations . . . is immaterial")); *American Arms Int'l*, 563 F.3d at 86–87 (licensee's remedial efforts after the violations were discovered do not compensate for the violations); *Willingham Sports, Inc. v. ATF*, 348 F. Supp. 2d 1299, 1311 (S.D. Ala. 2004) (evidence that licensee reformed its practices after the inspection is not probative as to whether violations in that inspection were willful).

F.    ATF's Internal Policies Are Not Relevant to Whether or Not Revocation Is Authorized.

Petitioner's allegation that ATF's revocation was a departure from ATF policy and procedures is without merit. (D.E. 1, ¶¶ 18–21). Without exception, courts have held that an alleged deviation by ATF from its internal policies is absolutely irrelevant to ATF's authority to revoke a Federal Firearms License. *See e.g. Weaver v. Harris*, 856 F. Supp. 2d 854 (S.D. Miss. 2012), *aff'd* 486 Fed. App'x. 503 (5th Cir. 2012) (policy is completely irrelevant to whether there was a willful violation); *Taylor v. Hughes*, 2012 U.S. Dist. LEXIS 134422, *15-16 (M.D. Pa. 2012) (copy attached), *aff'd* 548 Fed. App'x. 822 (3d Cir. 2013) ("Indeed, this Court's own research has uncovered no case law, statute, or regulation that suggests in any way that ATF's internal policies have any relevance to the question of whether ATF was entitled to revoke a federal firearms license upon findings of willful violations of the GCA.").

Where a licensee has willfully violated the GCA, there is no other condition necessary to authorize ATF's revocation. 18 U.S.C. § 923(e); *Weaver*, 856 F. Supp. 2d at 855–59; 486 Fed. App'x. at 504–06. Whether ATF followed its internal policies in revoking an FFL is simply not relevant to the issue of whether or not the revocation was authorized. *Id.*; *Breit*, 320 F. Supp. 2d at 673.

An agency's internal policies, practices and similar materials do not confer any privilege or right on licensees. *See United States v. Ani*, 138 F.3d 390, 392 (9th Cir. 1998) (evidence obtained in violation of customs regulations not subject to suppression) (citing *United States v. Caceres*, 440 U.S. 741, 744; 755 (1979) (tape recorded evidence obtained in violation of IRS regulations not subject to suppression)); *United States v. Benevento*, 836 F.2d 60, 70 (2d Cir. 1987), *cert. denied*, 486 U.S. 1043 (1988) (evidence obtained in

violation of customs regulations not subject to suppression). Furthermore, internal policy manuals of federal agencies do not create substantive rights in others. *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (*per curiam*) (failure to follow 13-volume internal agency manual did not provide a basis of estoppel against the government).

To prevail on its claim that the agency impermissibly departed from its policies and procedures, Petitioner must show that the policy in question had the force and effect of law, *i.e.*, that the policy "(1) prescribe[d] substantive rules—*not* interpretive rules, general statements of policy or rules of agency organization, procedure or practice—and, (2) conform[ed] to certain procedural requirements." *Rank v. Nimmo*, 677 F.2d 692, 698 (9th Cir. 1982), *cert. denied*, 459 U.S. 907 (1982); *United States v. One 1985 Mercedes*, 917 F.2d 415, 423 (9th Cir. 1990). The requirement of conforming to procedural requirements means that the agency policy must have been promulgated "pursuant to a specific statutory grant of authority." *Rank*, 677 F.2d at 698. Therefore, a policy that was "neither published in the Federal Register nor disseminated to the public for scrutiny and comment" will not have the force and effect of law. *Id. at* 698. "An agency policy that can only be unearthed by discovery of the agency's internal workings cannot be a policy that was disseminated to the public." *One 1985 Mercedes*, 917 F.2d at 423. The relevant internal agency guidelines here are not promulgated in any statutes, regulations, rules or other legal authorities.

Against this point, Petitioner erroneously relies on dicta from *INS v. Yang*, 519 U.S. 26 (1996) (D.E. 1, ¶ 21). In *Yang*, the court was tasked with reviewing an agency action which was subject to the Administrative Procedure Act (the "APA"). *Yang* has no relevance in the context of revocation decisions under the GCA because such decisions are not subject to the APA. *See Taylor v. Hughes*, 2012 U.S. Dist. LEXIS 134422, at *18–20 n.

2. Following *Taylor*, Petitioner's assertion that *Yang* is applicable to district court review of an FFL revocation is baseless as a matter of fact and wrong as a matter of law.

While the *Yang* Court stated that an irrational departure from a rule or settled agency position from prior adjudications could be deemed as arbitrary, capricious, or an abuse of discretion under the APA, the Court also held that the agency is granted broad discretion in interpreting its own policy. *Yang*, 519 U.S. at 32. Thus, even assuming *arguendo* that the *Yang* opinion applied generally to the *de novo* review of FFL revocations (and that the policy and procedures in question were relevant and applicable), the *Yang* decision would actually support the Government's position rather than that of the Petitioner because the agency is given broad discretion in interpreting its own policies and procedures. Additionally, in contrast to the facts in *Yang,* the ATF has never conceded the materiality or relevance of the alleged internal agency policy in any adjudication and has never published the policy in any rule or regulation.

ATF revocations are not final agency actions governed by the APA under 5 U.S.C. § 706(2)(A) and subject to appellate review (as was the procedure in *Yang*), but rather, are informal hearings subject to *de novo* review by United States District Courts under 18 U.S.C. § 923(f)(3). GCA revocations and appeals are controlled by the provisions of 18 U.S.C. §§ 923(e) and 923(f), not the APA. The courts have consistently held that the APA does not apply to GCA Hearings. *See Arwardy Hand Truck Sales*, 507 F. Supp. 2d at 760; *Shaffer v. Holder*, 2010 U.S. Dist. LEXIS 31415 at *41–42; *Top Brass Sports, Inc. v. Gonzalez*, No. 05-2455 at pp.18–19 (W.D. Tenn. July 18, 2007) (copy attached). Thus, the United States District Courts do not review the ATF's decision to revoke an FFL under the

APA standard to determine if ATF acted arbitrarily or capriciously; rather the review is whether or not ATF's action was authorized. *See generally id.*; 18 U.S.C. § 923(f).

By alleging that Petitioner's revocation should be overturned on district court review because ATF supposedly violated its internal policy, Petitioner attempts to implement an entirely new requirement regarding *de novo* review of an FFL revocation under 18 U.S.C. § 923(f)(3). However, in the 46 years since the passage of the Gun Control Act in 1968, no court has ever suggested that the agency's internal policies have any relevance whatsoever to the judicial review of a revocation. Conversely, Federal courts have clearly and consistently held that the reviewing district court must only consider evidence from the parties, and determine whether ATF's action was authorized by law – that is, whether the licensee willfully violated a provision of the GCA or its regulations. *See Taylor v. Hughes*, 548 Fed. App'x. 822, 825–26 (3d Cir. 2013); *accord Weaver*, 856 F. Supp. 2d 854, 486 Fed. App'x. at 506; *American Arms Int'l*, 563 F.3d at 82, *Armalite, Inc.*, 544 F.3d at 647 (6th Cir. 2008); *see also* 18 U.S.C. § 923(f); 27 C.F.R. § 478.73.

ATF followed the unambiguous provision of 18 U.S.C. § 923(e) which authorizes the revocation of any FFL if the licensee has willfully violated the GCA. Thus, Petitioner's reliance on the APA, 5 U.S.C. § 706(2), (D.E. 1, ¶ 21) is misguided, as is Petitioner's reliance on the *Yang* opinion.

## CONCLUSION

ATF's determination of willful violations is correct as a matter of law because Licensee knew of its legal obligation pursuant to the Federal firearms laws, rules and regulations, and purposefully disregarded, or was plainly indifferent to, its legal obligations. Summary judgment is proper as a matter of law because there are no disputed

issues of material fact, and as a matter of law ATF's action to revoke the Licensee's Federal firearms license is authorized by 18 U.S.C. § 923(e) based on Petitioner's willful violations of the Federal firearms laws in the GCA and the regulations thereunder.

## RELIEF REQUESTED

WHEREFORE, Respondent respectfully moves this court to GRANT the motion for summary judgment in his favor, and uphold ATF's revocation of the Licensee's Federal firearms license. Licensee disputes no issue of material fact in the administrative record, and alleges no disputed issue of material fact. Furthermore, Licensee has failed to show any basis for requesting additional proceedings in this Court.

Respectfully submitted,

Edward L. Stanton III
United States Attorney

By: /s/ David Brackstone
DAVID BRACKSTONE (#27989)
Assistant United States Attorney
167 N. Main Street, Suite 800
Memphis, Tennessee 38103
(901) 544-4231
david.brackstone@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on this 10th day of July, 2014, via the Court's ECF system on Thomas L. Parker, John F. Gibbons, and Jane B. McCullough, counsel for Petitioner.

/s/ David Brackstone
Assistant United States Attorney