UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| Dick's Sporting Goods, Inc., d/b/a | ) | |
| Dick's Sporting Goods, Inc. #375 | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:14-cv-02360-JPM |
| | ) | |
| Kevin Boydston, Director of Industry | ) | |
| Operations, Bureau of Alcohol, | ) | |
| Tobacco, Firearms and Explosives, | ) | |
| | ) | |
| Respondent. | ) | |

## STATEMENT OF UNDISPUTED FACTS

Kevin Boydston, Director, Industry Operations ("DIO"), Nashville Field Division, Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF"), Respondent herein, files this Statement of Undisputed Facts in support of his Motion for Summary Judgment.

Procedural Background

1.  Dick's Sporting Goods, Inc., d/b/a Dick's Sporting Goods, Inc. #375 (the "Licensee" or "Petitioner") holds FFL number 1-62-157-01-6K-03207, which authorizes Licensee to engage in business as a dealer in firearms other than destructive devices at 2393 N. Germantown Parkway, Memphis, Tennessee 38016. *Gov't Exhibit 1*.[1]

2.  The DIO, having reason to believe that FFL number 1-62-157-01-6K-03207 was subject to revocation, served upon Licensee a Notice of Revocation of License, ATF Form 4500 (5300.4), on or about November 26, 2013 (the "Initial Notice"). *Gov't. Exhibit 2*. The Initial Notice alleged that the Licensee sold or otherwise disposed of a firearm to a person despite knowing or having reasonable cause to believe that such person was prohibited from receipt and

---

[1] The Exhibits were part of the administrative hearing record, and have been filed with the Court.

possession of firearms. *Id.* The initial notice further alleged that the Licensee willfully entered false information into its Acquisition and Disposition Record (the "A&D Record") and failed to obtain properly completed Firearms Transaction Records (ATF Forms 4473). *Id.* These acts would constitute a violation of 18 U.S.C. §§ 922(d), 922(g)(1)(A), 922(m), 923(g)(1)(A), and 924(a)(3)(A), and 27 C.F.R. §§ 478.99(c), 478.124(c)(1), 478.125(e) and 478.128(c). *Gov't Exhibit 2*.

3. The Initial Notice explained that Licensee had the right to a hearing reviewing the revocation of the license in accordance with the provisions of 18 U.S.C. § 923(f)(2) and 27 C.F.R. Part 478. *Gov't Exhibit 2*.

4. Licensee timely requested a hearing on this matter. *Gov't. Exhibit 3–4*. On December 18, 2013, the ATF mailed a Notice of Hearing on Revocation of License to the Licensee setting the hearing for January 15, 2014, at the ATF Memphis Field Office. *Gov't Exhibit 5*. At the request of the Licensee, the hearing was postponed until February 5, 2014, and a second Notice of Hearing was issued on January 3, 2014. *Gov't Exhibit 6*.

5. Pursuant to the second Notice of Hearing, an informal hearing on this matter was held at the ATF Memphis Field Office on February 5, 2014. *Tr.* 4.[2] ATF Hearing Officer Michael Reilly presided over the hearing. *Id.* ATF Attorney Patricia Lancaster and ATF Division Counsel, Nashville Field Division, B. Todd Martin presented the Government's case and submitted evidence through documents and testimony by ATF Industry Operations Investigator ("IOI") Thomas Williams and Special Agent ("SA") Richard Howard. *Id.* Licensee was represented by its counsel, Attorney Mark Barnes, and witnesses for the Licensee were Industry Consultant Walford "Wally" A. Nelson, Vice President and Chief Compliance Officer Mary

---

[2] "Tr." Refers to the official certified transcript of the administrative hearing in this matter, which is part of the administrative record filed with this Court.

Tortorice, Manager for Loss Prevention/Compliance & Logistics Kevin Dodson, and Private Investigator Tommy Wittman. *Tr.* 4, 128:6–140:6.

6. The Attorney General has authority to deny an application for a Federal firearms license (an "FFL") pursuant to 18 U.S.C. § 923(d)(1)(C) or to revoke an FFL pursuant to 18 U.S.C. § 923(e), after notice and opportunity for a hearing, if an applicant for or holder of an FFL has willfully violated any provision of the Gun Control Act of 1968 (the "GCA"), as amended, Title 18, United States Code, Chapter 44, and the regulations issued thereunder, 27 C.F.R. Part 478. This authority is delegated to the ATF Director, and further delegated to the DIO. *American Arms Int'l v. Herbert*, 563 F.3d 78, 82 n. 5 (4th Cir. 2009). The DIO has the authority to render a decision concerning the denial of an application for, or the revocation of, an FFL in consideration of the relevant presentations made at the administrative hearing. 27 C.F.R. §§ 478.72 and 478.74.

7. Upon consideration of the presentations of both parties, all evidence, and argument, the DIO issued a Final Notice of Denial of Application or Revocation of Firearms License, ATF Form 5300.13, dated March 25, 2014, (the "Final Notice") pursuant to 27 C.F.R. § 478.74. *Administrative Record IV. Final Notice (Final Notice).* The Final Notice included Findings of Fact and Conclusions of Law. *Id*. ATF served the Final Notice on the Licensee on or about March 25, 2014. *Id*. The Final Notice is a part of the Administrative Record in this matter. *Id*. The Final Notice advised Licensee that it could, within 60 days of receipt, file a petition pursuant to 18 U.S.C. § 923(f)(3) with the United States District Court for a *de novo* judicial review. *Id*. The present action followed.

The Administrative Record

8.  In June 2013, pursuant to the authority of 18 U.S.C. § 923(g)(1)(B)(ii)(I) and 27 C.F.R. § 478.23(b)(2)(i), ATF IOI Thomas Williams examined Licensee's inventory of firearms at the licensed premises and the records and documents required to be kept by the Gun Control Act and the regulations thereunder, for the purpose of determining compliance with those requirements. *Gov't Exhibit 7*; *Tr.* 18:16–23; 21:7–14; 22:10–24:17.

9.  Three separate violations were revealed during the June 2013 compliance inspection. *Gov't Exhibit 3*. These violations were listed as the bases for revoking the Licensee's Federal firearms license. *Id.* These violations were identified on a Report of Violations issued by IOI Williams and were discussed with the Licensee as a part of the inspection. *Gov't Exhibit 7*; *Tr.* 25:24–28:13.

10.  The three violations were all related to the same activity, commonly referred to as a "straw purchase," whereby the true purchaser of a firearm utilizes a stand-in "straw purchaser" to obtain a firearm on their behalf. The three violations were: 1) transfer to a person with reason to believe prohibited, 2) false information in A&D Record as to purchaser, and 3) false information on ATF Form 4473 as to purchaser. *Gov't Exhibit 2*.

11.  The DIO determined that the Licensee willfully committed all three of the violations, and based his decision to revoke the Licensee's Federal firearms license on the first and third of those violations. *Final Notice*, ¶ 29–30. Violation number two was not a part of the basis for the revocation and is not a part of the review by this Court.

Allegation No. 1 – Transfer to Person With Reason to Believe Prohibited

12.  The Initial Notice alleged that the Licensee sold or otherwise disposed of a firearm to a person despite knowing or having reasonable cause to believe that such person was

prohibited from receipt and possession of firearms, in violation of 18 U.S.C. § 922(d) and 27 C.F.R. § 478.99(c). *Gov't Exhibit 2*.

13. Licensee, by and through its officers, agents and employees, willfully transferred a firearm, a Mossberg Maverick, serial number MV84994S (the "Mossberg"), to Jason Wayne Brady on or about November 6, 2012, despite knowing or having reasonable cause to believe that he was prohibited from receipt and possession of firearms. *Gov't Exhibits 7–12*, *14*; *Tr.* 30:17–42:1.

14. On or about November 6, 2012, Jason Wayne Brady, who resides at 70 Grove Dale Street, Memphis, Tennessee 38120, attempted to purchase the Mossberg from Licensee. *Gov't Exhibits 8* and *12*; *Tr.* 30:17–31:2. Licensee's sales associate, Matthew Krueger, assisted Mr. Brady in this transaction. After the required information was recorded on Sections A & B of the ATF Form 4473, the Licensee initiated the required Tennessee Instant Check System ("TICS")[3] criminal background inquiry for Mr. Brady. *Gov't Exhibit 8*; *Tr.* 30:17–31:2. A "Denied" response was received from TICS. *Gov't Exhibits 8* and *12*; *Tr.* 33:9–12. The transaction was terminated, and the Mossberg shotgun was not delivered to Mr. Brady at that time.

15. The same day, approximately 8 or 9 hours later, Laura Carolyn Brady went to Licensee to purchase the same Mossberg. *Gov't Exhibits 10* and *12; Tr.* 31:8–14; 33:9–34:6; 34:21–35:10; 40:21–41:11; 50:18–19; 52:2–11. The same sales associate assisted Mrs. Brady. *Gov't Exhibit 10*; *Tr.* 31:8–14; 50:18–19. Mrs. Brady recorded the required information on Sections A & B of the ATF Form 4473, and the sales associate initiated a TICS inquiry for Mrs. Brady. *Gov't Exhibit 10*; *Tr.* 31:8–14. A "Proceed" result was received, the transaction was

---

[3] A National Instant Criminal Background Check System (NICS) inquiry is required for each sale or delivery of a firearm by a FFL to inform the FFL whether or not the transferee is prohibited from possession of firearms. 18 U.S.C. § 922(t); *Tr.* 30:20–22; 31:15–32:7. TICS is the NICS system in the State of Tennessee. *Tr.* 32:7–17.

completed, and the Mossberg was delivered to Mrs. Brady. *Gov't Exhibits 10* and *12*; *Tr.* 33:9–16.

16. Laura Carolyn Brady and Jason Wayne Brady are husband and wife, and they reside together at 70 Grove Dale Street, Memphis, Tennessee 38120. *Gov't Exhibits 8* and *10*; *Tr.* 31:8–14; 33:9–34:6; 34:21–35:10; 40:21–41:11; 50:18–19; 52:2–11. Both listed this address on their respective ATF Forms 4473. *Id.*

17. The Mossberg transferred to Mrs. Brady was the exact same one Mr. Brady had attempted to purchase earlier that same day. *Id.*

18. Licensee only made three inquiries to TICS between Mr. Brady's attempt to purchase the Mossberg and Mrs. Brady's initiation of the purchase of the same Mossberg, and the only denial was for Mr. Brady. *Tr.* 33:9–16; 117:4–6.

19. When an FFL sees indications that a straw purchase is occurring, the FFL should at least make further inquiry into the sale's propriety. *Tr.* 48:18–22.

20. IOI Williams cited the Licensee for a violation of 27 C.F.R. 478.99(c) for transferring a firearm to a person it had reasonable cause to believe was prohibited from obtaining a firearm. *Gov't Exhibit 7*; *Tr.* 27:8–25.

Allegation No. 3 – False Information on ATF Form 4473 as to Purchaser

21. The Initial Notice alleged that, in transferring a firearm to a non-licensee, Licensee willfully failed to obtain the true purchaser's name on the ATF Form 4473, and made a false entry in, or failed to make an appropriate entry in, or failed to properly maintain, a record which is required to be kept pursuant to section 923 of Chapter 44 or the regulations promulgated thereunder, in violation of 18 U.S.C. §§ 922(g)(1)(A), 922(m), 923(g)(1)(A), and 924(a)(3)(A) and 27 C.F.R. §§ 478.124(c)(1) and 478.128(c). *Gov't Exhibit 2*.

22. On or about November 6, 2012, the Licensee obtained an ATF Form 4473 which showed Laura Carolyn Brady as the transferee of the Mossberg, when Licensee knew or should have known that Laura Carolyn Brady was not the actual buyer and transferee of the firearm, and that the information regarding the buyer's name on this ATF Form 4473 was false. *Gov't Exhibits 8–12* and *14*; *Tr.* 31:8–14; 33:9–34:6; 34:21–35:10; 40:21–41:11; 50:18–19; 52:2–11; 59:25–60:7.

23. The facts as described above in Allegation No.1 are relevant to Allegation No. 3 and are incorporated into this section as if restated verbatim.

24. On the date of the purchase by Laura Brady, Sales Associate Matthew Krueger designated by his signature that he had reviewed the Delay/Denied Log[4] for a possible "straw purchase," but still delivered the Mossberg to Laura Brady. *Gov't. Exhibit 12*; *Tr.* 35:18–37:14.

25. The attempted purchase by Jason Wayne Brady had been denied only a few hours earlier, with only three transactions in between. *Id*.

26. The record made by a TICS inquiry must be maintained by the Licensee, arranged by last name or in chronological order, and must be maintained separately from the other required records.[5] *Tr.* 37:15–38:3. Instructions for ATF Form 4473 contain an explanation of what constitutes an actual transferee/buyer. *Gov't. Exhibit 14*; *Tr.* 70:14–72:20.

---

[4] The Firearm Sign-Off Sheet or Denied/Delay Log is an internal control document used by Licensee and is not required by law or regulation; it is used by the Dick's Sporting Goods, at Store #375, to record the name of any person who receives a "Denied" or "Delayed" response to a TICS inquiry. *Tr.* 96:24–97:16. By internal policy, before conducting the sale of any firearm, Licensee's employees are required to check the Denied/Delay Log to see if there are any similarities with past attempts by someone receiving a "Delay or Denial" TICS response to suggest a straw purchase involving the current purchaser. *Tr.* 96:24–97:16. The same address, same last name, and the same firearm are some of the indicators that the Licensee's employees are trained to detect as indicators of straw purchasers. *Tr.* 117:9–19. The log is physically located at the place where the TICS/NICS check is conducted in each store. *Licensee Exhibit 1*; *Tr.* 96:24–97:16; 118:8–10.

[5] The Licensee admitted knowledge of this requirement and that it filed its denials chronologically in a separate folder, as required. *Tr.* 117:1–12.

27. ATF Special Agents Richard Howard and Jason Crenshaw went to the Brady home, 70 Grove Dale, Memphis, Tennessee, to retrieve the Mossberg because they were given information that the person in possession of the Mossberg (i.e. Mr. Brady) was prohibited from possession of firearms. *Tr.* 81:2–83:8.

28. During this visit, Mr. Brady advised the ATF agents that he had attempted to purchase the Mossberg from Dick's to go on a dove hunt but was denied.[6] *Tr.* 83:9–21. Mr. Brady told the ATF agents that his wife went back to the store later and purchased the Mossberg for him. *Tr.* 83:25–84:3.

29. The agents were unable to retrieve the Mossberg because it had already been confiscated by the Memphis Police Department following a domestic disturbance between Mr. and Mrs. Brady. *Tr.* 84:10–20; 90:4–11. Mr. Brady signed over possession of the Mossberg to the Memphis Police Department. *Id.* at 81:25–82:2. A copy of the Shelby County Sheriff's M.P.D. Visions report is available, but was not a part of the administrative record in this case.

30. The conduct of Licensee's employees is imputed to the Licensee. *Tr.* 115:21–24.

31. The Licensee was aware of the prohibition against conducting "straw purchases," and the related GCA violations. *Tr.* 115:25–116:13.

Respectfully submitted,

Edward L. Stanton III
United States Attorney

By: /s/ David Brackstone
DAVID BRACKSTONE (#27989)
Assistant United States Attorney

---

[6] In a later interview with Licensee's representative in preparation for the hearing, Mr. and Mrs. Brady allegedly stated that the purchase of the Mossberg was intended as a gift from Mr. Brady to Mrs. Brady for her use in a pheasant hunt. *Tr.* 137:4–19. This is inconsistent with the testimony of ATF agent Richard Howard regarding statements from Mr. Brady. *Tr.* 83:9–21. However, this later detail is not material to the issues in this matter because at the time of the sale Licensee had reason to believe that the purchase was a straw purchase and yet there is no evidence that further inquiry was made into the sale's propriety.

167 N. Main Street, Suite 800  
Memphis, Tennessee 38103  
(901) 544-4231  
david.brackstone@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing was served on this 10th day of July, 2014, via the Court's ECF system on Thomas L. Parker, John F. Gibbons, and Jane B. McCullough, counsel for Petitioner.

/s/ David Brackstone  
Assistant United States Attorney