Report on Hearing on the Notice of
Revocation of License
Dick's Sporting Goods Inc.
d/b/a Dick's Sporting Goods, Inc. #375
2393 N. Germantown, Pkwy
Memphis, TN 38016
1-62-157-01-3K-03207

# LICENSEE EXHIBITS

# DICK'S SPORTING GOODS GUN MANUAL EXCERPT


EXHIBIT

# 27.5 Denied Transactions

## 27.5.1 Straw Purchase

A straw purchase is when the customer purchasing a firearm makes false statements on an F4473 and attempts to purchase a firearm for a prohibited person. See F4473, Important Notices 1. "Actual Buyer"

**● Note ●**
It is illegal for an individual to have another person purchase a firearm.

**Policy.** The person filling out the F4473 must be purchasing the firearm for himself (or as a gift) and must be the person who will own the gun. If you suspect a straw purchase is taking place, decline the sale. Report these incidents your DLPM or Kevin.Dodson@dcsg.com. Associates must complete a on-line Straw Purchase Alert (include customer's name and description) alerting other DSG Lodge managers in the area. See Appendix C: "Forms and Checklists".

**Identifying Straw Purchases.** The following are examples of how straw purchases can occur:

**Example 1.** The purchaser indicates she is restricted from purchasing a firearm based on federal purchase requirements (e.g., convicted felon, fugitive from justice, or meets criteria within one of the other prohibited categories). She then has a second individual, the "straw purchaser" complete the F4473 and any other required state/local forms.

**Example 2.** The purchaser is declined based on results of a NICS background check. Following the decline, another person completes the F4473, then purchases the firearm for the declined/prohibited individual.

**Example 3.** The actual purchaser does not indicate why, but has another individual complete the F4473 and purchase the firearm for them.

In all of the above examples, the straw purchaser violates federal law by making false statements on the F4473 and representing himself as the actual purchaser of the firearm. They have also falsified address and date of birth information of the actual purchaser in the same manner.

The individual using the straw purchaser to obtain a firearm violates federal law by aiding, abetting, or causing false statements on the form.

The licensee violates federal law by selling the firearm if they are aware statements on the F4473 are false, even if both individuals are legally permitted to purchase the firearm but use a straw purchase to misrepresent the identity of the actual purchaser.

**● Note ●**
Partner with a manager and contact your DLPM if a straw purchase is suspected.

**Gifts.** Straw purchase situations do not pertain to the transfer of a bonafide gift. If an individual is purchasing a firearm as a gift, by law, they are the actual purchaser of the firearm. It is their responsibility to determine the individual they transfer it to is not a prohibited person.

**Spouses.** If a customer selects a firearm and indicates in any way they are the individual who will possess the firearm, but their spouse completes the F4473 for the transfer, it is considered a "straw purchase". (Excludes gift purchases.)

To make the determination, ask the following questions:

— *Is the firearm for you or someone else?*


If it is for someone else, ask "*Is it a gift?* If the customer answers "no", politely deny the sale and request the gun owner return to complete all required forms.

— What is the intended use for the gun? (e.g., personal protection, deer hunting, target shooting, etc.?)
— *What type of firearm are you interested in or most comfortable with?*

**Fair Warning.** Before a customer fills out the F4473, the associate will explain the ramifications of making false statements on the form. Providing false statements on the F4473 is a federal felony and conviction can result in a prison term up to 10 years and fines up to $250,000 for the actual purchaser and straw purchaser.

## 27.5.2 Other Reasons to Deny a Firearm Sale

There are many other reasons we might deny selling a firearm to a customer. Reasons include (but are not limited to) the following:

**Age.** If a customer is under eighteen years of age, deny the transaction. It is critical all persons involved in a firearms transaction verify the customer purchasing the firearm is at least 18 years of age or older.

**Inappropriate Comments.** Anytime a customer makes an inappropriate comment it is reason to deny a transaction. If a customer states they will be modifying the firearm (i.e. cutting the barrel) or they state they will be using the firearm for an illegal activity or make threats towards a person or group of people, deny the sale.  Customers tend to state they are joking when these comments are made. Our associate response must be "We take the business of selling firearms seriously and we will not proceed with the transaction."

**Suspicion of Drug and Alcohol Influence.** If an associate smells alcohol or suspects the customer is under the influence of drugs or alcohol, immediately contact a manager. If the manager confirms the suspicion or smells alcohol, inform the customer we are not comfortable completing the transaction and deny the sale. The manager is not required to provide an explanation or state a reason the transaction is denied. Simply provide the customer the telephone number for Customer Service. Once the customer exits the store, immediately inform your DM, DLPM and Customer Service so they are all aware of your decision.

**Any Other Suspicion.** DICK'S Sporting Goods reserves the right to deny any transaction deemed suspicious as long as the decision is not based on race, religion or gender. Partner with a manager before denying the transaction.

### 27.5.3 Denied/Delayed Firearm Transaction Binder

Maintain a Denied/Delayed Transaction binder and Straw Purchase logs by the telephone or computer where background checks are conducted for firearms transactions. This allows associates to review the log prior to conducting a background check.

● **Note** ●
The denied/delayed log must not be accessible by customers.

File all denied/delayed transaction information in this binder organized using the following tabs:

**Tab 1:** Denied/Delayed Transaction Logs

**Tab 2:** Straw Purchase Alerts and Related BOLOS

**Tab 3:** Phone numbers for neighboring stores

### 27.5.4 Denied/Delayed Transaction Logs

Lodge associates will use the Denied/Delayed Firearm Transaction Log to record all denied/delayed firearm transactions when they occur. Review the Delayed/Denied Firearms Transaction Log each time a firearm is sold to look for:

— Same last name
— Same (or neighboring) address (e.g., street or apartment complex)
— Exactly the same gun
— Similar gun model/caliber

If any of the above items are noticed during a transaction, it is likely a straw purchase. Partner with a manager and contact the DLPM.

— **Denied/Delayed Transaction Based on NICS Response:** When a transaction is delayed and proceed response is received, record the "proceed date" in the column provided on the Denied/Delayed Firearms Transaction Log.

When this occurs and a customer with the same name and address returns to purchase a firearm, do not deny the sale.

— **Delayed Transaction Expiring After 30 Days:** When a delayed transaction expires after thirty days, make a notation in the "void" column on the Denied/Delayed Transaction log. Void the F4473, but retain the customer's information in the denied/delayed log.

Deny firearms sales to individuals with the same last name and address.

— **Denied Based on Inappropriate/Suspicious Behavior or Comments:**

When a transaction is denied based on a customer's inappropriate comments or suspicious behavior, record relevant information in the space provided on the Denied/Delayed Transaction Log. Include a summary of events, customer's description and any other relevant information.

— **Straw Purchase Alert**: When a Straw Purchase Alert is received, immediately make a notation on the Denied/Delayed Transaction Log. Place the alert behind Tab 2 in the Denied/Delayed Firearm Transaction binder.

Store #: 375

| Last Name | First Name | Street Address | City, ST | Zip | Date | NTN # | Firearm Mfr. | Model | Cal./Ga. | Assoc. Initials | Date Denied | Date Proceed | Voided |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 Houston II | Jimmy | | | | 1-2-14 | — | — | — | — | — | mm 1-2-14 | 793 | |
| 2 Tindall | Cody | | | | 1-9-14 | — | — | — | — | — | mm 1-9-14 | 608 | |
| 3 Haywood | Alan | Blue Khakis, blue fleece top | | | 1-10-14 | — | O.F. Mossberg Sons | 930 | 12 | | mm 1-10-14 | 576 | |
| 4 Brister | Manor | MS | | | 1-13-14 | — | Remington | 700 | 22-250 | mm | 1-8-14 | 793 | |
| 5 Collins | Mathew | | | | 1-14-14 | — | Stoeger | 3500 | 12 | mm | 1-14-14 | 793 | |
| 6 Brasfield | Kevin | | | | 1-17-14 | — | Savage Arms | 111 | 30-06 | mm | 1-17-14 | 662 | |
| 7 Arellano | Fernando | | | | 1-9-14 | | Mossberg | 88 | 12 | mm | 1-9-14 | 576 | |
| 8 Bell, Jr. | Robert | | | | 1-31-14 | | H&R | 35 | 35 | mm | 1-31-14 | 783 | |
| 9 Ketcheside | John | Rd. | | | 2-2-14 | | Target Sdof Bront | 12 | 12 | mm | 2-2-14 | 662 | |
| 10 | | | | | | | | | | | | | |

Firearm Transaction Record Year: 2014

Page: II (1) of

*Note: The Denied/Delayed transaction log must be maintained in a binder at the gun counter. The binder can not be accessible by customers but must be in a location where associates can review it prior to selling a firearm.

# FIREARMS PROCESS



**SALE:**

- The customer chooses a firearm
- Provide direction to the customer on how to fill out the 4473 i.e. dates in 2/2/4 format, if they make a mistake to put a single line through it and initial and date it, etc
- Completely fill out the 4473 excluding box 36 even if the customer checks a prohibited question. If the ATF needs to investigate the customer, they will want to know what they were trying to buy and who the associate was that was helping them.
- When filling out the Firearms Sign off Sheet (FSO) the associate is signing that they have checked the Denied & Delayed log for a potential straw purchase.
- The Background is run through the states approved Background system (TICS, FDLE, NICS, etc)-and printed
- The MOD review the 4473-using template
- The cashier rings the transaction-Ring background check
- The Manger enters the transfer into GLS- **The manager must sign and date the GLS print out that they have reviewed the accuracy of the information entered (Spelling, dates, status, etc )**
- The Store Manager reviews the 4473 weekly
- The DLPM review the 4473 on their visit.



# DENIED/DELAYED & STRAW PURCHASE (See process outline below)

- Denied transaction can come in different forms. The NICS denial, a Denial after the transaction was Delayed, a store denial from a BOLO and a store denial for cause.
- When a Denial, Delay or straw purchase is identified, the MOD must be notified immediately. – The MOD will fill out a BOLO and send to contiguous stores and stores within the district.
- Timing for sending Straw Purchase/Denied and Delayed BOLOs is relative as to how long it would take for the customer to get to another store.

## BOLO

- The MOD should always be aware of BOLOs. By carrying the IPhone, the MOD will be notified of BOLOs sent by other stores.
- The MOD should print the BOLO post them on the LP Board and in The Denied and Delayed binder and alert the associates in the department.
- Timing is imperative as a customer could be coming from another store.

## WEEKLY STORE MANAGER REVIEW

- According to SOM the store manager has seven days after the purchase date to review the 4473.
- Print the previous weeks sales from GLS
- Review each 4473
- Place a check mark to the right of the name indicating they have checked the 4473 and the GLS entry for accuracy.
- The Store Manager must also review the Denied and Delayed binder to ensure that all transactions have been completed as directed by SOM to include logging, filing and communicating any incoming BOLOs.



## CORRECTIONS

- When an error is identified, the manager will log the error on a Summary of Violations form.
- A copy of the 4473 is to be attached to the Summary of Violations form until the correction is made.
- Customers and associates are to be notified of the error and every effort should be made to have the error corrected ASAP. The store manager should be involved in the process daily until all errors are corrected.
- The correction is to be made on the copy and the original is to remain in date order with the other 4473s.
- Once the correction is made the summary of violation form is completed and the error signed off.
- Errors are violation of the law and or policy and should be treated with urgency in getting them corrected. These are also an inconvenience to the customer and associates involved.
- **When the DLPM Reviews the 4473S and finds errors the copies along with the SOV are to be scanned to the DLPM within 24 hours. This ensures that the copies have been made. AT NO TIME SHOULD THE ORGINAL 4473s BE PULLED OUT OF THE NORMAL FILES WAITING FOR CORRECTIONS.**

# Denied and Delay Log (DDL)



The binder should be set up in accordance with SOM. (See link below for instructions)

When a Denied, Delayed or Straw purchase is identified. The MOD should be notified. The transaction should be logged into the DDL and a Straw Purchase Alert BOLO sent immediately according to the stores pre-determined notification list .

#1      The date the 4473 was denied

#2      The date the 4473 was delayed

#3      The date the store received a proceed from NICS (An over turn letter is considered a proceed)

#4      The store number if the denial is based on a BOLO from another store.

#5      Indicates the 4473 is not a void (over 30 days old, without denial or proceed from NICS or a
         store Denial)

#6      Supporting information- explain or describe the situation.

The BOLOs should remain in date order at all times.

The related 4473 should be kept in the appropriate "Denied," Delayed" or "Void" 4473 file.

This is the link to the DDL direction: M:\Memphis - Loss Prevention\Firearms



## Operational Excellence
### "Building the Foundation for the Customer Experience"
### Standards – Process – Technology

As our business continues to grow and our firearms market share improves, we will see an increase in attempted straw purchases. As federally licensed firearms dealers, our stores have a responsibility to follow the law and protect the public from unlawfully obtained firearms. Taking feedback from our stores, we have bolstered our best-in-class process to prevent straw purchases by revising the denied/delayed transaction program for Q4 2011.

Please review, communicate and implement the following practices immediately.

## Updated Denied/Delayed Firearm Transactions Log

All denied/delayed transactions information must be filed in a binder that is set up in three sections with tabs:

1. The first section will hold the denied/delayed log.
2. The second section will hold Straw Purchase Alerts.
3. The third section will hold the phone call list for area stores.

Continuing the current process, selling associates will use the Denied/Delayed Firearm Transactions Log to record all related transactions as they occur. Several changes have been made to the Log for Q4 2011:

- A date is required to be entered in the delayed, denied and proceed columns. If a transaction is delayed and then a proceed response is given by NICS then the proceed date must be recorded in the column provided. When this occurs, we would not later deny a sale to an individual with the same last name and address.
- Each entry now has two rows for information to be documented. If a customer is denied for inappropriate comments or another reason by a store, specific information related to the interaction and customer description can be added.
- A column has been added to document transactions that have been voided. When a delayed transaction expires after 30 days a mark in this column will signify that the form has been marked as void and filed accordingly. If a 4473 is voided the customer's information must still remain in the denied/delayed log. We still must deny firearms sales to individuals with the same last name and address.
- A column has been added to identify the date a Straw Purchase Alert is received from another store. Information related to alerts received must be recorded on the log and a copy of any Straw Purchase Alert filed in the appropriate tab of the must be in the binder.

EXHIBIT



**Operational Excellence**
**"Building the Foundation for the Customer Experience"**
**Standards – Process – Technology**

Before any firearm transfer can occur, the selling associate must review the Denied/Delayed Firearms Transactions Log looking for 4473 commonalities with a previously denied or delayed transaction. Characteristics of a straw purchase include:
- Same last name
- Same or neighboring address (such as street or apartment complex)
- Exactly the same gun
- Similar gun model/caliber

If a straw purchase is suspected, partner with a manager and contact your District Loss Prevention Manager.

**Denied/Delayed Firearm Transactions Log Maintenance**

The Denied/Delayed Firearm Transactions Log binder must be maintained by the telephone or computer where background checks are completed for firearms transactions. This allows associates to easily review the log prior to conducting a background check. The denied/delayed log must not be accessible by customers.

On a quarterly basis, when the required ATF quarterly print outs are completed, the Log must be updated. To update the log the following must occur:
- Print a fresh, blank copy of the Log.
- Transfer all information related to any current delayed transactions to the new log.
- Transfer all information for voided transactions that final responses from NICS (POC) were never received, dating back on year.
- Transfer all information related to any denied transactions dating back one year to the new Log.
- Maintain any Straw Purchase Alerts for one year. File older alerts.
- File outdated Logs and related BOLOs in the file cabinet in a folder labeled "Denied/Delayed Firearms Transactions Log 2012."
- Review and appropriately update the Straw Purchase Phone List

On a weekly basis, the Store Manager must run a "Guns Sold" report from the GLS to validate the presence of all 4473s. During this review, the Store Manager must compare all sold firearms to the Denied/Delayed Firearms Transaction Log to identify any potential straw purchases. If a potential straw purchase is identified, partner with your District Loss Prevention Manager.



### Straw Purchase Attempt Communication

Whenever a straw purchase is attempted and denied, the event must be immediately communicated to your store team and to surrounding stores. As part of our improved process, there will be two communication steps:

### Straw Purchase Alert

Complete a Straw Purchase Alert form and send it to all other stores. The Straw Purchase Alert must be sent to all stores within the District as well as the two other closest districts. The two closest Districts must be listed on the phone list.

When completing the form all information listed must be complete. If the information is not available then list N/A in the area provided. There are locations to list two individual if the denied person is accompanied by someone.

When stores receive a Straw Purchase Alert they must log the information into the Denied/Delayed Transaction Log and retain the Straw Purchase Alert in the second section of the binder.

### Phone List

Each store will complete and maintain a store phone list of all locations within 90 miles to your store. This includes stores in all surrounding districts. The list must be created in order of descending distance beginning with the store closest to your location and ending with the store farthest from your store. This phone list must be maintained in the third section Denied/Delayed Firearms Transactions Log binder.

### Communication

If a customer is denied the store must complete a straw purchase alert form and send it to all stores on this list. Once the straw purchase alert form is sent, then utilize the phone list to contact the area stores. Calls must be made to the closest store first until all stores are reached. When the phone call is made, simply inform the MOD at the contacted store that a straw purchase alert was emailed. It is the store receiving the phone call's responsibility to immediately print the straw purchase alert form and add the information to their denied/delayed log.

Delayed transactions only need to be communicated if the customer indicates that they plan on going to another location or plan on having another person attempt to make the purchase for them.

If another individual attempts to purchase a firearm for the denied/delayed individual then it is truly a straw purchase attempt. These transactions must follow the same method of communication as the denied/delayed sales listed above.

Straw Purchase Phone List

| Store Number | Store Location | Phone Number |
|---|---|---|
| 376 | Memphis | 901-737-2216 |
| 395 | Flowood MS | 601-992-2341 |
| 608 | Conway AR | 501-336-0700 |
| 662 | Hot Springs AR | 501-624-0200 |
| 703 | Tupelo MS | 662-844-5799 |
| 704 | Jackson TN | 731-660-4344 |
| 793 | Madison MS | 601-853-4373 |
| 1016 | Hattiesburg MS | 601-264-6648 |
| | | |
| | | |
| | | |
| | | |

# LOSS PREVENTION
## B O L O – Be On The Look Out

**Type of Incident:**

Date: _____  Time: _____  Store # _____  Location: _____

| Summary of Incident: | Insert Photo (if applicable): |
|---|---|
| | |

**Subject Information**

Name:                    Gender: Choose an item.        Hair Color:
Address:                 Height:                          Eye Color:
City:                    Weight:                          Race: Choose an item.
State:                   Age:                             Description of clothing:
Zip Code:

**Merchandise Stolen / Lost Info (Completed After Initial BOLO and sent to DLPM)**

| QTY | SKU | Description | Price |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Police Info (If Applicable – Completed After Initial BOLO and sent to DLPM)**

**Gun Information (If Applicable – Complete With BOLO)**

| Manufacturer: | Model: | Caliber / Gauge: |
|---|---|---|

**What To Do**
Call The Manager on Duty – Contact Your DLPM Immediately – Enter into LPMS

**Managers:**
Review BOLO information with all associates
Post in a non-public, designated area for 30 Days, then file in with loss prevention paperwork.

Revised 10/13

 

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco
Firearms & Explosives
151 N. Delaware Street, Suite 1000
Indianapolis, IN 46204
(317) 287-3500  (317) 287-3502 FAX

www.atf.gov

August 30, 2011

773075:DJA
5373

Ms. Elly Petcoff, Manager
Dick's Sporting Goods, Inc.
2850 East 3rd Street
Bloomington, IN 47401

FFL#: 4-35-105-01-4D-01800

Dear Ms. Petcoff:

During a compliance inspection at your firearms business covering the period of July 1, 2010 through July 18, 2011, you were cited for violations of 27 Code of Federal Regulations, Part 478. The violations were discussed with Jamie Johnson and Charlie Taylor during the inspection. A copy of the Report of Violations, Form 5030.5, issued at the time of the inspection is enclosed.

You should be aware that any willful violations of the Gun Control Act may result in revocation of your Federal firearms license. As a result of the recently cited violations, it is important that we have a meeting with you to discuss the violations found. The conference will be held on September 20, 2011, at 10:00AM Eastern Time at the Indianapolis Field Office, 151 N. Delaware Street, Suite 1000, Indianapolis, Indiana. The agenda for the meeting will include a discussion of the reasons for the violations, a review of the legal requirements, and a discussion of steps taken by you to ensure future compliance. Although we do not believe it necessary, legal counsel may assist you at your own expense if you so choose. Please bring with you documentation verifying the corrective action you have taken.

The records you are required to maintain and the business operations you conduct are important to law enforcement in our continuing efforts to reduce violent crime and protect the public. It is essential that you comply with all Federal laws and regulations that govern your firearms business to aid in this effort to combat violent crime.

We will conduct a follow-up inspection in the future. Any violations, either repeat or otherwise, could be viewed as willful and may result in the revocation of your license.



Please contact me at (317) 287-3500 to confirm this appointment, and to ask any questions you may have regarding this conference. I look forward to meeting with you to resolve these issues.

Sincerely yours,

Nena Raye Fisher
Area Supervisor

Enclosure

cc:    Mr. Kevin Dodson
       Dick's Sporting Goods, Inc.
       345 Court Street
       Coraopolis, PA  15108

       Federal Firearms Licensing Center
       Columbus Field Division

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Report of Violations

## Instructions

Please write firmly with a ball point pen when completing this form. ATF officers will prepare this form in triplicate. The original copy will be given to the proprietor or a responsible representative. The remaining copies will be submitted with the completed inspection report. Supervisors will detach one copy from the completed report for their files.

| Name of Proprietor | Street Address | City | State | Zip Code | County |
|---|---|---|---|---|---|
| DICK'S SPORTING GOODS INC (#226) | 2850 EAST 3RD STREET | BLOOMINGTON | IN | 47401- | MONROE |

| | Expiration Date | Date(s) or Period of Inspection |
|---|---|---|
| License/Permit/Registry Number *(If any)*<br>43510501401800 | 4/1/2014 | 07/01/2010 through 07/19/2011 |

## Inspection Results

An examination of your premises, records and operations has disclosed the following violations which have been explained to you:

**Number:** 1

**Nature of Violation:**
Comparison of the licensee's ATF Forms 4473 located in the "Denied" file to ATF Forms 4473 completed during the inspection period examined disclosed the failure to determine the lawfulness of one firearm transaction in reference to a potential straw purchase. On 11/12/10 Mr. William Hardy residing at 9720 S. Dutch Ridge Rd, Heltonville, IN 47436 attempted to purchase a 12 gauge Stoeger shotgun and was denied by NICS. On 11/16/10 Mrs. Michele Hardy also residing at 9720 S. Dutch Ridge Rd, Heltonville, IN 47436 purchased a 12 gauge Remington shotgun.

**Citation:** 27 CFR 478.128(c)

**Date Corrections to be Made:**
*(If not corrected immediately)*

**Corrective Action to be Taken:** The licensee was instructed to make better use of their denial
*(If not corrected immediately)* list when comparing to potential customers and to deny any future straw sales.

**Number:** 2

**Nature of Violation:**
A review of the licensee's completed ATF Forms 4473 revealed that in two (2) instances the licensee failed to record an identification document in Item 20a. In one (1) of those instances the identification document was photocopied but not recorded on the ATF Form 4473.

**Citation:** 27 CFR 478.124(c)(3)(i)

**Date Corrections to be Made:**
*(If not corrected immediately)*

**Corrective Action to be Taken:** The licensee was instructed to always record an
*(If not corrected immediately)* identification document in Item 20a, even those instances in which a NICS denial is received.

ATF E-Form 5030.5
Revised April 2005

U.S. Department of Justice
*Bureau of Alcohol, Tobacco, Firearms and Explosives*

# Report of Violations

## Instructions

Please write firmly with a ball point pen when completing this form. ATF officers will prepare this form in triplicate. The original copy will be given to the proprietor or a responsible representative. The remaining copies will be submitted with the completed inspection report. Supervisors will detach one copy from the completed report for their files.

| Name of Proprietor | Street Address | City | State | Zip Code | County |
|---|---|---|---|---|---|
| DICK'S SPORTING GOODS INC (#226) | 2850 EAST 3RD STREET | BLOOMINGTON | IN | 47401- | MONROE |

| License/Permit/Registry Number *(If any)* | Expiration Date | Date(s) or Period of Inspection |
|---|---|---|
| 435105014D01800 | 4/1/2014 | 07/01/2010 through 07/19/2011 |

## Inspection Results

An examination of your premises, records and operations has disclosed the following violations which have been explained to you:

**Number:** 3

**Nature of Violation:**
A review of the licensee's completed ATF Forms 4473 revealed that in one (1) instance the licensee recorded a transfer date in Item 36 despite the firearm not actually being transferred. It was found in two (2) other instances the transferor failed to sign Item 34 for two (2) NICS denial transactions.

**Citation:** 27 CFR 478.124(c)(5)

**Date Corrections to be Made:**
*(If not corrected immediately)*

**Corrective Action to be Taken:** The licensee was instructed to always complete Items 33-35 *(If not corrected immediately)* on the ATF Form 4473 for any NICS denials or NICS cancellations. The licensee was also instructed to not complete Item 36 if the firearm is not transferred.

**Number:** 4

**Nature of Violation:**
A review of the licensee's completed ATF Forms 4473 revealed that in two (2) instances the licensee failed to record the transferor's/seller's name in Item 33 and title in Item 35 for two (2) NICS denial transactions.

**Citation:** 27 CFR 478.21(a)

**Date Corrections to be Made:**
*(If not corrected immediately)*

**Corrective Action to be Taken:** The licensee was instructed to always complete Items 33-35 *(If not corrected immediately)* on the ATF Form 4473 for any NICS denials or NICS cancellations.

ATF E-Form 5030.5
Revised April 2005

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco, Firearms and Explosives

# Report of Violations

## Instructions

Please write firmly with a ball point pen when completing this form. ATF officers will prepare this form in triplicate. The original copy will be given to the proprietor or a responsible representative. The remaining copies will be submitted with the completed inspection report. Supervisors will detach one copy from the completed report for their files.

| Name of Proprietor | Street Address | City | State | Zip Code | County |
|---|---|---|---|---|---|
| DICK'S SPORTING GOODS INC (#226) | 2850 EAST 3RD STREET | BLOOMINGTON | IN | 47401- | MONROE |

| License/Permit/Registry Number *(If any)* | Expiration Date | Date(s) or Period of Inspection |
|---|---|---|
| 43510501A4D01800 | 4/1/2014 | 07/01/2010 through 07/19/2011 |

## Inspection Results

An examination of your premises, records and operations has disclosed the following violations which have been explained to you:

Date Corrections to be Made:
*(If not corrected immediately)*

Corrective Action to be Taken: The licensee was instructed to ensure that the transferee
*(If not corrected immediately)* always accurately completes all Items in Section A of the ATF Form 4473.

**Number:** 5

**Nature of Violation:**

A review of the licensee's completed ATF Forms 4473 revealed that in one (1) instance the transferee recorded an incorrect certification date in Item 17, and in one (1) other instance the transferee failed to sign Item 16 and date Item 17.

**Citation:** 27 CFR 478.124(c)(1)

I Have Received a Copy of This Report of Violations    *(Proprietor's signature and title)*

Signature _____ Hardlines Manager

| Signature and Title of ATF Officer | | Date |
|---|---|---|
| ____ A. Spencer Coggs, IOI | | 7/26/11 |
| | | 7/26/11 |

**For Official Use Only**

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Report of Violations

## Instructions

Please write firmly with a ball point pen when completing this form. ATF officers will prepare this form in triplicate. The original copy will be given to the proprietor or a responsible representative. The remaining copies will be submitted with the completed inspection report. Supervisors will detach one copy from the completed report for their files.

| Name of Proprietor | Street Address | City | State | Zip Code | County | Page 1 of |
|---|---|---|---|---|---|---|
| DICK'S SPORTING GOODS INC (#226) | 2850 EAST 3RD STREET | BLOOMINGTON | IN | 47401- | MONROE | 3 Pages |

| License/Permit/Registry Number (If any) | Expiration Date | Date(s) or Period of Inspection |
|---|---|---|
| 435105014D01800 | 4/1/2014 | 07/01/2010 through 07/19/2011 |

## Inspection Results

An examination of your premises, records and operations has disclosed the following violations which have been explained to you:

**Number:** 1

**Nature of Violation:**
Comparison of the licensee's ATF Forms 4473 located in the "Denied" file to ATF Forms 4473 completed during the inspection period examined disclosed the failure to determine the lawfulness of one firearm transaction in reference to a potential straw purchase. On 11/12/10 Mr. William Hardy residing at 9720 S. Dutch Ridge Rd, Heltonville, IN 47436 attempted to purchase a 12 gauge Stoeger shotgun and was denied by NICS. On 11/16/10 Mrs. Michele Hardy also residing at 9720 S. Dutch Ridge Rd, Heltonville, IN 47436 purchased a 12 gauge Remington shotgun.

**Citation:** 27 CFR 478.128(c)

Date Corrections to be Made:
*(If not corrected immediately)*

Corrective Action to be Taken: The licensee was instructed to make better use of their denial
*(If not corrected immediately)* list when comparing to potential customers and to deny any
future straw sales.

**Number:** 2

**Nature of Violation:**
A review of the licensee's completed ATF Forms 4473 revealed that in two (2) instances the licensee failed to record an identification document in Item 20a. In one (1) of those instances the identification document was photocopied but not recorded on the ATF Form 4473.

**Citation:** 27 CFR 478.124(c)(3)(i)

Date Corrections to be Made:
*(If not corrected immediately)*

Corrective Action to be Taken: The licensee was instructed to always record an
*(If not corrected immediately)* identification document in Item 20a, even those instances in
which a NICS denial is received.

ATF E-Form 5030.5
Revised April 2005

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Report of Violations

## Instructions

Please write firmly with a ball point pen when completing this form. ATF officers will prepare this form in triplicate. The original copy will be given to the proprietor or a responsible representative. The remaining copies will be submitted with the completed inspection report. Supervisors will detach one copy from the completed report for their files.

| Name of Proprietor | Street Address | City | State | Zip Code | County |
|---|---|---|---|---|---|
| DICK'S SPORTING GOODS INC (#226) | 2850 EAST 3RD STREET | BLOOMINGTON | IN | 47401- | MONROE |

| License/Permit/Registry Number (If any) | Expiration Date | Date(s) or Period of Inspection |
|---|---|---|
| 43510501 4D01800 | 4/1/2014 | 07/01/2010 through 07/19/2011 |

## Inspection Results

An examination of your premises, records and operations has disclosed the following violations which have been explained to you:

**Number:** 3

**Nature of Violation:**

A review of the licensee's completed ATF Forms 4473 revealed that in one (1) instance the licensee recorded a transfer date in Item 36 despite the firearm not actually being transferred. It was found in two (2) other instances the transferor failed to sign Item 34 for two (2) NICS denial transactions.

**Citation:** 27 CFR 478.124(c)(5)

Date Corrections to be Made:
*(If not corrected immediately)*

Corrective Action to be Taken: The licensee was instructed to always complete Items 33-35 on the ATF Form 4473 for any NICS denials or NICS cancellations. The licensee was also instructed to not complete Item 36 if the firearm is not transferred.

**Number:** 4

**Nature of Violation:**

A review of the licensee's completed ATF Forms 4473 revealed that in two (2) instances the licensee failed to record the transferor's/seller's name in Item 33 and title in Item 35 for two (2) NICS denial transactions.

**Citation:** 27 CFR 478.21(a)

Date Corrections to be Made:
*(If not corrected immediately)*

Corrective Action to be Taken: The licensee was instructed to always complete Items 33-35 on the ATF Form 4473 for any NICS denials or NICS cancellations.

ATF E-Form 5030.5
Revised April 2005

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Report of Violations

## Instructions

Please write firmly with a ball point pen when completing this form. ATF officers will prepare this form in triplicate. The original copy will be given to the proprietor or a responsible representative. The remaining copies will be submitted with the completed inspection report. Supervisors will detach one copy from the completed report for their files.

| Name of Proprietor DICK'S SPORTING GOODS INC (#226) | Street Address 2850 EAST 3RD STREET | City BLOOMINGTON | State IN | Zip Code 47401- | County MONROE | Page 3 of 3 Pages |
|---|---|---|---|---|---|---|

| License/Permit/Registry Number *(If any)* 435105014D01800 | Expiration Date 4/1/2014 | Date(s) or Period of Inspection 07/01/2010 through 07/19/2011 | |

## Inspection Results

An examination of your premises, records and operations has disclosed the following violations which have been explained to you:

Number: 5

Nature of Violation:

A review of the licensee's completed ATF Forms 4473 revealed that in one (1) instance the transferee recorded an incorrect certification date in Item 17, and in one (1) other instance the transferee failed to sign Item 16 and date Item 17.

Citation: 27 CFR 478.124(c)(1)

**Date Corrections to be Made:**
*(If not corrected immediately)*

**Corrective Action to be Taken:** The licensee was instructed to ensure that the transferee always accurately completes all Items in Section A of the ATF Form 4473.

| I Have Received a Copy of This Report of Violations | *(Proprietor's signature and title)* | Date |
|---|---|---|
| | R. SPENCER COOL, MGT | |

| Signature and Title of ATF Officer | Date 7 26 11 |
|---|---|

For Official Use Only

ATF E-Form 5030.5
Revised April 2005



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives
5300 Maryland Way, Suite 200
Brentwood, Tennessee 37027

January 31, 2014
www.atf.gov

203080:PRL
5372    NVL-13-211482

Mark Barnes, Attorney at Law
Mark Barnes & Associates
1350 I Street NW Suite 260
Washington, DC 20005

Via Electronic Mail:
mark.barnes@mbassociateslaw.com
regina.fisher@mbassociateslaw.com

RE:    Dick's Sporting Goods, Inc. #375, FFL No. 1-62-157-01-3K-03207

Dear Mr. Barnes:

This is in response to your proposal dated January 30, 2014, concerning the pending revocation action against the above referenced Federal firearms licensee, whom you represent. You provided a number of Appendices in support of your proposal regarding resolution of this matter. The Bureau of Alcohol, Tobacco and Firearms (ATF) appreciates your submission of your proposal.

The proposal which you have provided to ATF is the type of information that is appropriately presented at the hearing. ATF looks forward to considering a full presentation from the hearing in making a final decision in this matter. ATF has, therefore, determined that your request to resolve this matter other than by proceeding with this revocation action, as originally alleged in the Notice of Revocation dated November 13, 2013, is denied. The hearing on this matter will proceed as scheduled on Wednesday, February 5, 2014, at 9:00 a.m., at the ATF Office in Memphis, Tennessee.

If you have any questions concerning this matter or need any additional information, please contact Attorney Pat Lancaster of our office at (615) 565-1400.

Sincerely yours,

Kevin Boydston

Kevin L. Boydston
Director, Industry Operations
Nashville Field Division



cc:    Office of Division Counsel Nashville

MARK BARNES*
CHRISTOPHER THOMAS *
REGINA FISHER†
KATHRYN CIANO††

\* Also Admitted in Arizona and Alaska
\* Also Admitted in Arizona



**Mark Barnes & Associates**

A T T O R N E Y S

HEATHER HAMILTON **
OF COUNSEL.

** Only Admitted in Maryland
† Only Admitted in Ohio
†† Only Admitted in Florida

January 30, 2014

# BY ELECTRONIC DELIVERY

MEMORANDUM TO:     KEVIN L. BOYDSTON
DIRECTOR OF INDUSTRY OPERATIONS
NASHVILLE FIELD DIVISION
BUREAU OF ALCOHOL, TOBACCO, FIREARMS, &
EXPLOSIVES
UNITED STATES DEPARTMENT OF JUSTICE

FROM:     MARK BARNES
ATTORNEY AT LAW

REGINA GONZALEZ
ATTORNEY AT LAW

SUBJECT:     **Dick's Sporting Goods, Inc., (Store #375) (License 1-62-157-01-3K-03207) REQUEST FOR RESCISSION OF HEARING NOTICE, REVOCATION NOTICE, AND CITATIONS 2 AND 3 OF REPORT OF VIOLATIONS PURSUANT TO NEWLY DISCOVERED EVIDENCE**

---

## I.     INTRODUCTION AND BACKGROUND

In support of this firm's client Dick's Sporting Goods, Inc. ("Dick's") d/b/a Dick's Sporting Goods Inc. #375 ("Dick's Store #375") (store at issue is located at 2393 N. Germantown Parkway, Memphis, Tennessee 38016) the purpose of this memorandum is to set forth important considerations in law, policy, and fact relevant to the proposed revocation of the Federal Firearms License ("FFLs") associated with Dick's Store #375. In short, there was no willfulness that served as a basis for the revocation for the following reasons: 1. the conduct in question did not rise to the standard of willfulness set forth by the applicable case law; 2. the underlying substantive transaction was in fact not a straw purchase; and 3. the recordkeeping citations are legally inapplicable to a licensee's recordkeeping conduct under the circumstances.

Herein we explain specific findings of fact and conclusions of law, as well as the application of policy that support the rescission of the aforementioned Notices, as well as the citations #2 and #3 of the Report of Violations ("ROV") upon which the proposed Revocation is based. Accordingly, we respectfully request rescission of the Hearing Notice, Revocation Hearing, and all but citation #1 on the ROV. Rescission is appropriate based on newly discovered evidence, which is described more fully below.

The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") conducted a regulatory compliance inspection ("Inspection") of Dick's Store #375 from June 11, 2013 through June 14, 2013. ATF issued Dick's Store #375 an ROV as a result of the Inspection. For your convenient reference, a true and correct copy of this ROV is attached hereto as **Exhibit A**. The ROV cites three violations of the Gun Control Act of 1968 ("GCA"), described more fully below, for Dick's alleged:  1) failure to record required firearm disposition information in a particular transaction; 2) failure to enter the true identity of a firearm buyer (apparent straw purchase) in a particular transaction; and 3) failure to stop the transfer of a firearm to a 'prohibited person.' Numbers two and three of this ROV apply to the Revocation Action.

On or about November 21, 2013, ATF issued a Notice of Revocation of License ("Revocation Notice") to Dick's Store #375. For your convenient reference, a true and correct copy of the Revocation Notice is attached hereto as **Exhibit B**. By and through its outside regulatory compliance counsel (Christopher Thomas of Mark Barnes & Associates) on December 6, 2013 Dick's/Dick's Store #375 filed its timely request for hearing ("Hearing Request") via email to Mr. Kevin Boydston, the ATF Director of Industry Operations ("DIO") for the ATF Nashville Field Division. For your convenient reference, a true and correct copy of the hearing Request is attached hereto as **Exhibit C**.

A Notice of Hearing ("Hearing Notice") for a Revocation Hearing was first issued by ATF to Dick's Store #375 on or about December 18th. Due to the need for rescheduling of the hearing, a subsequent Hearing Notice was issued to Dick's Store #375. For your convenient reference, true and correct copies of the Hearing Notice documents are attached hereto as **Exhibit D**. The hearing in this matter is currently set for 9:00 am local time on February 5, 2014 at the ATF Field Office in Memphis, Tennessee.

Considering the foregoing, Dick's has thoroughly investigated the matter and the available evidence indicates the relevant employee at Dick's Store #375 made an unintentional mistake by failing to record a denied firearms transaction in the appropriate tracking log ("denial log"), as required by Dick's policy, and that this mistake was inadvertent and was not willful in nature. This record is not required to be kept by GCA regulations, but is done as a matter of established policy by Dick's. Dick's has clearly demonstrated history of dedication to regulatory compliance at it stores, such as the store at issue. When combined with the fact that this was the first time that Dick's Store #375 was inspected by ATF for regulatory compliance, and considering the relevant legal and policy precedent, we respectfully submit that a revocation of the FFL at Dick's Store #375 would be improper and unnecessary.

## II.    FINDING OF FACTS

The transaction at issue involves the purchase of a Mossberg 12 gauge shotgun from Dick's Store #375 on November 6, 2012. The following information was obtained through an extensive investigation conducted by Dick's in conjunction with its outside counsel Mark Barnes & Associates and its privileged consultants. The investigation included interviews with the sales associate at issue, Mr. Mathew Krueger, as well as the husband and wife involved in the alleged straw purchase, Mr. Jason Brady and Mrs. Laura Brady. Significantly, neither Mr. Krueger nor Mrs. Brady have been contacted or interviewed by a representative of the government. Mr. Jason Brady was interviewed in late November by two ATF Special Agents. The interviews for Dick's were conducted by Tommy Wittman, a well repected former Assitant Special Agent in Charge of the ATF Phoenix Field Division who has performed numerous private investigations since retiring from ATF. His reports are attached at **Appendix 1**.

Mr. Krueger was the sales associate at the time of both transactions and is no longer employed by Dick's. Mr. Krueger has no recollection of the specific sale at issue. It is important to note that during his employment with Dick's, Mr. Krueger was specifically instructed and trained by Dick's on what a straw purchase is, how to recognize such a purchase, and how to proceed if and when a straw purchase attempt is suspected. In November 2012, Dick's Store #375 was busy as the holiday shopping season commenced.

Mrs. Brady is the alleged straw purchaser. At the time of the sale in question, Mr. Brady possessed a current concealed weapon permit ("CCW") that was issued by the State of Tennessee. He had purchased various firearms in the past without incident and was unaware of any prohibitions or firearms disabilities. Mrs. Brady had been invited to participate in an upcoming controlled pheasant hunt, but she did not own a shotgun. Mr. Brady decided to research shotguns for his wife. He saw a Mossberg 12 gauge shotgun that he felt would be appropriate for his wife at Dick's. He decided to purchase the Mossberg shotgun as a surprise gift for his wife. After his NICS check was returned as a denial, Mr. Brady left the store and returned to his residence. At that time, Mr. Brady did not understand the reason for the denial and thought that it must have been a mistake. He did not tell store personnel that his wife would return to buy the firearm.

Mr. Brady informed his wife that he found a shotgun for her to use for the hunt. He informed her that it was a Mossberg 12 gauge but did not provide her with the serial number. He also told his wife that he had intended to purchase the shotgun as a surprise gift, but there was an issue with the paperwork and she would have to buy the shotgun herself. He did not tell his wife that his background check had been denied. Mr. Brady then remained at their residence with their children while Mrs. Brady returned to Dick's Store #375 to buy the shotgun. She did not tell store personnel that her husband had been there earlier in the day. She did not pick out the shotgun by serial number; it was handed to her by store personnel. Mrs. Brady subsequently returned to their residence with the shotgun and attended the pheasant hunt the following weekend. Copies of both Mr. Brady's and Mrs. Brady's ATF Forms 4473 are attached hereto as **Exhibit E**.

Sometime in the following year, Mr. Brady was contacted by a representative from the Tennessee Bureau of Investigation ("TBI"). The representative advised that TBI had been informed by the Veterans Administration ("VA") that there was an "issue" with Mr. Brady's CCW and accordingly, the permit was being revoked. A few days later, local police officers from the Memphis Police Department arrived at the Brady home and informed Mr. Brady that he was required to surrender all of his firearms. Mr. Brady complied with the request, and the officers took custody of all firearms in the home, including his wife's shotgun. Mr. Brady subsequently contacted the VA to determine the nature of the prohibition. He believes that his prohibition may be related to his post-traumatic stress disorder diagnosis and treatment through the VA. He is currently attempting to resolve the matter.

In approximately November 2013, two ATF Special Agents arrived at the Brady residence searching for the Mossberg shotgun that Mrs. Brady had purchased. Mr. Brady informed the agents that he did not have the shotgun in his possession, as it belonged to his wife, but was surrendered to the Memphis Police when they demanded custody of all firearms stored in the home. Mr. Brady recalls that one of the agents then mentioned that the shotgun was believed to be involved in a straw purchase. He explained the circumstances to the agents, specifically noting that he intended to purchase the shotgun as a gift for his wife, but she ended up buying the shotgun herself.

## III.     REPORT OF VIOLATIONS

The ROV contains three citations to alleged Violations, which are listed below. Citation #1 is not involved in the Revocation Action at issue. Furthermore, the ROV and Revocation Notice are inconsistent as to the nature of the alleged violations and legal citations, as illustrated below.

**1. Nature of Violation**:
Failure to properly record the correct disposition name and address for a Stoeger model P350 shotgun identified by serial number 1227962 acquired on 3/28/13 and transferred on 3/28/13.
**Citation**:  27 C.F.R. § 478.125(e)

**2. Nature of Violation**:
Failure to enter the true identity of a buyer into the A&D Record (by entering a straw purchaser into the record). On November 6, 2012 Jason Wayne Brady, of 70 Grove Dale St., Memphis, TN, attempted to purchase a firearm, a Mossberg, Mavrick S/N MV84994S and received a denied response by TICS. On the same day, within nine (9) hours, Laura Carolyn Brady, of 70 Grove Dale St., Memphis, TN, purchased the same firearm from the same clerk.
**Citation**: 27 C.F.R. § 478.128(c)

**3. Nature of Violation:**
Failure to stop the transfer of a firearm to a person while knowing or having reasonable cause to believe that such a person is prohibited (by transferring a firearm thru a straw purchase). On November 6, 2012 Jason Wayne Brady, of 70 Grove Dale St. Memphis, TN, attempted to purchase a firearm, a Mossberg, Mavrick, S/N MV84994S and received a denied response by TICS. On the same day, within nine (9) hours, Laura Carolyn Brady, of 70 Grove Dale St. Memphis, TN, purchased the same firearm from the same clerk.
**Citation:** 27 C.F.R. § 478.99(c)

The Revocation Notice includes the following citations to alleged Violations:

1. Transfer to Person with Reason to Believe Prohibited
   **Citation:** 18 U.S.C.§ 922(d); 27 C.F.R. § 478.99(c)

2. False Information in A&D Record as to Purchaser
   **Citation:** 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. § 478.124(e)
   18 U.S.C. §§ 922(m) and 924(a)(3)(A); 27 C.F.R. § 478.128(c)

3. False Information on ATF Form 4473 as to Purchaser
   **Citation:** 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. § 478.124(c)(1)
   18 U.S.C. §§ 922(m) and 924(a)(3)(A); 27 C.F.R. § 478.128(c)

## IV.     REVOCATION OF LICENSE – LAW AND POLICY

Revocation of the Dick's Store #375 FFL would be inappropriate and unjust. First, a revocation requires that the FFL exhibited willfulness in its violation of the GCA. There is no indication that Dick's or its employee acted in willful disregard or plain indifference to its known obligations under the GCA. The Dick's employee made a simple error during busy store hours – though this error ultimately had no effect on whether a straw purchase was completed. Second, the facts clearly show that there was no straw purchase attempted or executed. Mrs. Brady was the intended recipient of the firearm and was in fact the actual buyer of the firearm when she acquired it. Lastly, recordkeeping citation #2 listed in the ROV is improper given the facts of the case because Mrs. Brady is the actual person to whom the firearm was transferred and delivered. Accordingly, the ATF 4473 and the acquisition and disposition ("A&D") Record are both accurate and do not contain any false information. Therefore, the citations #2 and #3 listed in the ROV are without merit and should be immediately rescinded by ATF. Accordingly, the Hearing Notice and Revocation Notice should be likewise rescinded.

### A.     Dick's Store #375 License Cannot be Revoked Because the Conduct Was Not Willful

The Firearm Owners Protection Act ("FOPA"), enacted in 1986 and codified at 18 U.S.C. § 921 *et seq.*, revised a number of provisions in the GCA, including adding the "willful" requirement to cited violations. Specifically, the text states "Paragraph (4) of

Section 103 amends 18 U.S.C. 923(e) to provide that the Secretary may revoke a license only for 'willful' violations of Chapter 44 or any regulation prescribed by the Secretary thereunder. The purpose this change is to *ensure that licenses are not revoked for inadvertent errors or technical mistakes*."[1]

Accordingly, the Attorney General may revoke any license issued under the GCA if the holder of such license has willfully violated the GCA, or any rule or regulation issued thereunder.[2] In order to prove a willful violation of the GCA with regard to a straw purchase, ATF "must prove that the petitioner knew of his legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements."[3] "Willful," under § 923 "means action taken knowledgeably by one subject to the statutory provisions in disregard of the action's legality. No showing of malicious intent is necessary. A conscious, intentional, deliberate, voluntary decision properly is described as willful, regardless of venal motive."[4]

### 1.    Dick's Employee Actions did Not Constitute Willful Violation of a Known Legal Obligation

The evidence shows that there was no conscious disregard of a known legal obligation on the part of Dick's. Dick's did not know of nor had reason to know of potential straw purchase. Mr. Krueger received considerable training regarding straw purchases, in terms of how to recognize a potential straw purchase and how to handle any such attempt. During his employment with Dick's, Mr. Krueger did encounter straw purchase attempts on multiple occasions. He would follow Dick's standard procedure and simply advise the purchaser that he could not proceed with the sale. Mr. Krueger has stated that if he believed the transaction at issue might have been a straw purchase through information provided by the purchaser, or any relevant actions or statements, he would not have completed the sale.

As noted above, Mr. Krueger mistakenly failed to enter Mr. Brady's denial into the store denial log. It is unknown whether he returned to the denial log before proceeding with Mrs. Brady's purchase; however, it is irrelevant because even if he did check the log, Mr. Brady's denial had not been entered and therefore Mr. Krueger (or another employee) would not have had that information. Furthermore, entering the denial information is not a requirement under federal law or regulations. It is merely Dick's internal policy. This mistake alone does not constitute a violation of the GCA, willful or otherwise.

Mr. Krueger was trained to recognize straw purchases and had in fact denied suspicious purchases in the past. In this case, he had no reason to believe that a straw purchase was being attempted. At the time of the transaction, none of the parties involved

---

[1] *See* S. Rep. No. 98-583 (1984).
[2] *See* 18 U.S.C. § 923(e); *see also Jim's Pawn Shop, Inc. v. Bowers, 2008 U.S. Dist. LEXIS 97199 (E.D. N.C. 2008).*
[3] *See Lewin v. Blumenthal, 590 F.2d 268 (8th Cir. 1979).*
[4] *See Prino v. Simon, 606 F.2d 449, 451 (4th Cir. 1979).*

knew or had any reason to believe that a prohibited party existed. Neither Mr. Brady nor Mrs. Brady gave any indication to Mr. Krueger or any other employee that they were associated with each other. Mr. Brady did not ask Mr. Krueger or any other employee to set the gun aside for his wife. Mrs. Brady did not mention that her husband had been in the store and/or tried to purchase the gun previously. Mrs. Brady simply requested a Mossberg 12 gauge shotgun.

In addition to not having a record of Mr. Brady's denial, the time of year was extremely busy in anticipation of the upcoming holiday. Mr. Krueger made a simple mistake in failing to record the denial in the store log, which thereafter could not have been referenced or compared to Mrs. Brady's purchase. Therefore, if the purchase had been straw (which it factually was not), Mr. Krueger would have no indicia of the same. Accordingly, the facts show that there was no willfulness on part of either Mr. Krueger or Mrs. Brady to perform a straw purchase.

## 2.   Dick's Corporate Compliance Illustrates No Willful Violation of Known Legal Obligations

While "[a] single willful violation is enough to uphold the ATF's revocation," the willful violation must have been "[a] conscious, intentional, deliberate, voluntary decision."[5] In *Jim's Pawn Shop, Inc. v. Bowers*, the court reasoned that when "errors continue or even increase in the face of repeated warnings given by enforcement officials, accompanied by explanations of the severity of the failures, one may infer as a matter of law that the licensee simply does not care about the legal requirements. At that point, the failures show the licensee's plain indifference and therefore become willful."[6] These circumstances are not present here. The inspection of June 2013 was the first inspection of Dick's Store #375 since it opened in 2007, and there were no citations or violations in addition to the citations associated with this alleged straw purchase. The actions of Mr. Krueger and Dick's in general certainly do not rise to the standard set forth in the numerous district court cases that have addressed the issue of willfulness.

Despite Dick's dedication to overall compliance, human error cannot be completely eliminated. Dick's has an excellent compliance record, and strives to maintain that record by eliminating the risk for errors to the extent possible. Furthermore, Dick's is committed to training its employees properly to recognize straw purchases, as well as other potential compliance issues. Though not required by state or federal law, Dick's has a longstanding firearms training manual and standard operating procedures ("Manual") for its employees. All firearms sales associates are trained on and evaluated by this Manual. Associates are also required to complete online training covering compliance with the standard operating procedures. The online training includes a section on the detection of straw purchases. Dick's periodically sends its employees to offsite training seminars, and conducts employee training meetings onsite.

---

[5] See *Jim's Pawn Shop, Inc. v. Bowers, 2008 U.S. Dist. LEXIS 97199 (E.D. N.C. 2008).*
[6] *Id.*

Section 27.5 of Dick's Manual, is entitled Denied Transactions. The term "Denied" means not only denied by NICS (TICS in Tennessee) but also denied by store associates based on the totality of the circumstances. One of the requirements of this section is that the stores maintain a denial log into which all denied transactions are to be entered. It is important to note that this denial log is not required by federal record keeping requirements, but this is an internal policy established by Dick's in an attempt to accurately track such transactions. Furthermore, sales associates are required to check the denial log in each firearm sale transaction to check for: same last name; same address; same or similar gun. The Manual states that if any of the above listed items are noticed, the sale is a likely straw purchase and the associate is to consult a manager and contact the District Loss Prevention Manager.

With these measures in place, Dick's has expended a great deal of time, effort, and resources to ensure that its stores fully comply with ATF's requirements with regard to firearms sales and transfer. In fact, with regard to straw purchases, Dick's personnel have detected and prevented numerous potential straw purchases. In a number of cases, potential straw purchases have been detected after a sale was made. In such cases, it is Dick's policy to retrieve the firearm and offer a refund to the customer. Dick's then submits a voluntary self-disclosure of the matter to the local ATF office.

Dick's conducts periodic audits and checks inventory to ensure there are no compliance issues or missing firearms. On occasion, Dick's compliance team has discovered mistakes or errors, which it promptly discloses to ATF as indicated above. Dick's often works with outside firearms counsel, Mark Barnes & Associates to ensure its firearms operations are in compliance with the applicable local, state, and federal laws and regulations. Dick's also participates in industry-wide initiatives and meetings with ATF, the purpose of which are to promote and improve compliance in all aspects. For example, Dick's participates in ATF's corporate retailer program and utilizes the Don't Lie for the Other Guy, a partnership between ATF and the National Shooting Sports Foundation ("NSSF"), to train new sales associates.[7]

### 3.      Ongoing Cooperation with Law Enforcement

Dick's Store #375 and other locations consistently cooperate with ATF and local law enforcement. Dick's takes pride in its stores' longstanding relationships with local law enforcement as well as the local ATF Special Agents throughout the country. It is Dick's policy to quickly contact law enforcement whenever anything suspicious is noted at the licensed premises. Dick's has also assisted ATF in agency criminal investigations of attempted unlawful transactions at the Dick's licensed premises. Accordingly, Dick's dedication to properly conducting its FFL operations in compliance with the GCA and demonstrated record of assisting ATF Special Agents whenever possible, should strongly factor in favor of Dick's being allowed to continue its FFL operations.

---

[7] http://www.atf.gov/firearms/programs/dont-lie/index.html.

## 4.    Trace Requests

Dick's values its relationship with ATF and works hard to assist ATF in conducting ATF investigations. This cooperation with ATF and dedication to be a lawful and helpful member of the FFL community extends to Dick's trace request responses as well. Last year, Dick's received and processed 1,341 trace requests from the National Tracing Center ("NTC"), which is a very low number of traces given the high volume of Dick's firearm sales.[8] Dick's is particuarly proud of its quick tracing request response times. Dick's tracing request responses are uniformly completed in a timely manner, often completed within an hour. Accordingly, Dick's has demonstrated dedication to properly maintaining required records and conducting its FFL operations in compliance with the GCA, as well as assisting ATF whenever possible. These factors should strongly influence ATF's decision that Dick's be permitted to continue its FFL operations at Dick's Store #375.

### B.    Dick's Store #375 License Cannot be Revoked Because the Underlying Facts Illustrate that there was No Actual or Attempted Straw Purchase

ATF defines a straw purchase as "the illegal purchase of a firearm by one person for another."[9] ATF's policy on straw purchases is clearly illustrated in this example from the Federal Firearms Regulations Reference Guide (2005):[10]

> Mr. Smith asks Mr. Jones to purchase a firearm for Mr. Smith. Mr. Smith gives Mr. Jones the money for the firearm. If Mr. Jones fills out Form 4473, he violates the law by falsely stating that he is the actual buyer of the firearm. Mr. Smith also violates the law because he has unlawfully aided and abetted or caused the making of false statements on the form. **Where a person purchases a firearm with the intent of making a gift of a firearm to another person, the person making the purchase is indeed the true purchaser.**

In a straw purchase, the actual buyer may often be a person who is a felon or has another firearms disability under 18 U.S.C. § 922(g) and (n) and uses the straw purchaser to acquire the firearm.[11] In the example above, neither party is a prohibited person. However, false information was provided on the ATF Form 4473, and therefore both parties violated the GCA.

In addition to ATF's established policy, it is clear that the government's position, as presented before the United States Supreme Court in the recently argued *Abramski* case, is that gifts are perfectly acceptable. Assistant to the Solicitor General, Joseph

---

[8] Of these 1,341 traces, 1,328 (99.03%) were completed successfully. Dick's receives some trace requests that can date back to the 1980s and 1970s. Sometimes, records dating back this far cannot be located.

[9] http://webcache.googleusercontent.com/search?q=cache:WqacfAwqTGYJ:www.atf.gov/publications/facts heets/factsheet-dont-lie-campaign.html+&cd=4&hl=en&ct=clnk&gl=us&client=safari

[10] Federal Firearms Regulations Reference Guide 2005 (ATF P 5300.4), p. 165.

[11] *Id.*

Palmore, Esq. agreed with Justice Kagan that gifts are acceptable.[12] In fact, ATF "has never interpreted this provision [18 U.S.C. § 922(t)]...to prohibit gifts."[13] A non-prohibited person is permitted to purchase a firearm with the intent of transferring to another non-prohibited person via gift or donation.

Significantly, there is no evidence that the purchasers in fact attempted a straw purchase. Quite the contrary, the evidence clearly shows that Mrs. Brady was in fact the actual purchaser and recipient of the firearm. Here, Mr. Brady intended to purchase the firearm as a gift for his wife. When he filled out the ATF 4473, he indicated that he was the actual buyer of the firearm and, in fact, he was the actual buyer. When his purchase was denied, he did not fully understand the reason for the denial and did not convey the information to his wife. Mrs. Brady then purchased the firearm on her own accord, for her own use and benefit. She did not falsify any information on the form, as she was the actual buyer and actual intended recipient of the firearm. There is no evidence that Mr. Brady was the intended recipient of the firearm or that he has ever used the firearm. Furthermore, no money was exchanged between the two parties.

Both Mr. Brady's and Mrs. Brady's accounts confirm that the shotgun was intended to be used by Mrs. Brady for her pheasant hunt. There is no indication that Mr. Brady was the actual transferee, the end-user, or the intended recipient of the firearm, when Mrs. Brady purchased the firearm for own use. Both parties have remained consistent in this explanation. In fact, Mr. Brady informed both the Memphis Police and ATF Special Agents of the exact circumstances of the purchase.

The facts clearly show that Mrs. Brady was the actual buyer of the firearm. While Mr. Brady was apparently prohibited under Federal or Tennessee law, Mrs. Brady is not. Mr. Brady was never the intended recipient of the firearm. Accordingly, Mrs. Brady was legally permitted to purchase a firearm, regardless of her husband's prohibition. The fact that Mr. Brady previously attempted to purchase the same firearm as a gift for his wife is of no consequence. The Dick's clerk simply sold Mrs. Brady the same firearm that her husband had attempted to buy as a gift some nine hours earlier. No money was exchanged between the Bradys and the firearm was not transferred between the two. All information that was provided by the Bradys was true and correct, and Mrs. Brady took possession of the firearm in the store. Mrs. Brady was a qualified and bona fide purchaser – with no intention to transfer the firearm to her husband, irrespective of disability – and therefore Dick's had no duty to "stop the transfer of a firearm to [Mrs. Brady] while knowing or having reasonable cause to believe that [her husband] is prohibited." Therefore, no straw purchase was attempted or made. Accordingly, the ROV and Notice of Revocation should be rescinded immediately.

---

[12] Transcript of Oral Argument, at p. 15:10, *Abramski v. United States*, Case No. 12-1493 (January 22, 2014).

[13] Transcript of Oral Argument at p. 47:15-16, *Abramski v. United States*, Case No. 12-1493 (January 22, 2014).

### C. Dick's Store #375 License Cannot be Revoked Because the Violations are Legally Inapplicable to a Licensee's Recordkeeping Conduct

ATF contends that Dick's violated 18 U.S.C. § 922(m) and 27 C.F.R. § 478.128(c) by making false entries into its federal record keeping. In his arguments to the Supreme Court on behalf of the government, Assistant to the Solicitor General, Mr. Palmore also addresses recordkeeping violations similar to those at issue herein. He emphasizes the application of 18 U.S.C. § 922(b)(5), "one cannot make a false statement about information where Congress says this is the information required [by the Gun Control Act]...to be kept."[14] The required information being "three things: The name, age, and place of residence of the person acquiring the gun from the gun dealer."[15]

As noted above, Dick's had no duty or obligation to record Mr. Brady's denial in its internal records. This is not a record that is required to be kept under 18 U.S.C. § 923. However, Dick's did have a duty to record the information required of the actual buyer, Mrs. Brady. The statute requires identification of a firearm transferee to be recorded, confirmed, and screened in every case.[16] The cited provisions criminalize a licensee's "knowing" entry of false information into the A&D record or on the ATF Form 4473. Here, Mr. Krueger did not know nor had reason to know of any false information from Mrs. Brady. In fact, all true and correct required information was properly recorded into Dick's federal recordkeeping.

These citations are legally inapplicable because the actual buyer, Mrs. Brady, properly completed the ATF Form 4473. Dick's employees then properly entered her information into the A&D Record. All information was properly recorded – the correct disposition name and address, as well as the true identity of the buyer. There was no "knowledge" present on behalf of Dick's, and furthermore, there was no false information presented. In accordance with the above, the record keeping citations listed in the ROV are legally inapplicable and should be rescinded immediately. Therefore, the Hearing Notice and Revocation Notice should likewise be rescinded, because Dick's license cannot be revoked where all information that was recorded was true and accurate.

## V. CONCLUSION

In accordance with the information outline above, there was no willfulness on the part of Dick's to facilitate a transfer of a firearm to a prohibited person. More importantly, there was no straw purchase because Mr. Brady (the prohibited person) was not the intended recipient, nor was he the actual buyer of the firearm. Mrs. Brady did not transfer the firearm to Mr. Brady, and Dick's had no reason to believe that she would. Accordingly, the willfulness requirement is not met and Dick's did not violate 27 C.F.R.

---

[14] Transcript of Oral Argument at p. 24: 24-25, 25:1-2, *Abramski v. United States*, Case No. 12-1493 (January 22, 2014).

[15] Transcript of Oral Argument at p. 25: 5-7, *Abramski v. United States*, Case No. 12-1493 (January 22, 2014).

[16] Transcript of Oral Argument at p. 50:18-19, *Abramski v. United States*, Case No. 12-1493 (January 22, 2014).

§ 478.99(c). Here, there was no intent on the part of Mrs. Brady or Dick's to facilitate the transfer of a firearm for the benefit of a prohibited person. Lastly, the actual buyer's information was properly recorded pursuant to 18 U.S.C. § 922(b)(5). Therefore, the Revocation Notice is improper and should be rescinded immediately.

Dick's has made, and will continue to make, every effort to improve its internal controls, employee training, business practices, recordkeeping procedures, and supervision in order to continually improve its processes and to mitigate the risk of non-compliance with ATF rules and regulations. Dick's is dedicated to ensuring that all of its stores strictly adhere to its professionally reviewed and prepared Manual and recordkeeping audit programs. As demonstrated above, Dick's is completely committed to full regulatory compliance, as well as being a responsible and helpful firearms industry member and citizen. Dick's is dedicated to the promotion of public safety.

In light of the foregoing, we respectfully request rescission of the citations #2 and #3 of the ROV, the Hearing Notice, and the Revocation Notice that were submitted to Dick's Store #375. Dick's is committed to resolving any known regulatory compliance weaknesses (at this time there are none) and should be allowed to continue its role in the industry as a valuable partner with ATF. Dick's therefore respectfully requests that ATF consider the facts and circumstances of this case and the inaccuracy of the Report of Violations, to conclude that rescission of the ROV, Hearing Notice, and Revocation Notice is appropriate. In the alternative, if the hearing is not rescinded by COB Friday, we respectfully request that the Revocation Hearing at least be continued to allow for the parties to consider this additional information. We believe it would be an imprudent expenditure of resources for both the government and Dick's to attend a hearing when these important new facts can be considered without requiring travel.

Thank you for your time and attention to this matter. In the meantime, should you have any questions regarding the above, please do not hesitate to contact Mr. Barnes at 202-626-0070 or Regina Gonzalez at 202-626-0072.

MB:rfg

Enclosure (Exhibits, Appendix)

cc:   Mr. Curtis Gilbert, Deputy Assistant Director, Field Operations
      Ms. Patricia Lancaster, Field Division Counsel, Nashville Field Division

# Appendix 1
# Interviews

**REPORT OF INTERVIEW**
(Telephonic)

With

Mathew Krueger
(901-491-4548)

January 26, 2014

Mr. Krueger was contacted this date regarding his involvement in and knowledge of the sale of a Mossberg shotgun from Dick's Sporting Goods, 2393 N. Germantown Parkway, Cordova, TN. on November 6, 2012. Mr. Krueger was additionally advised that clarification was being sought regarding his recollection of the denial of a sale of the same shotgun to the purchaser's spouse the same date.

Mr. Krueger acknowledged that he was employed in the firearm department of Dick's Sporting Goods in November 2012. Mr. Krueger had no specific recollection of the firearm transactions in question. Mr. Krueger was read specifics of the firearms transaction from the 2 ATF Form 4473s that he participated in preparing. The information did not refresh his memory of the transactions. Specifically, Mr. Krueger stated that he does not know Mr. Jason Brady or Mrs. Laura Brady and that their identity and the description of the transactions bring nothing to mind that would have him question the denial or sale.

Mr. Kruger was asked if he was aware of a practice where by a person would purchase a firearm for another person who was prohibited from purchasing firearms. Mr. Krueger stated that he was well aware of Straw Purchases and, as a Dick's Sporting Goods employee, he had received considerable training in awareness of this practice, what to look for and what to do when it was suspected. Mr. Krueger stated that during his employment at Dick's Sporting Goods he did experience straw purchase attempts on occasions and would simple advise the purchaser that he could not proceed with the sale. Mr. Krueger believes that if he thought the transaction in question was a straw purchase through the actions or statements of the purchaser he would not have completed the sale.

**REPORT OF INTERVIEW**
(Telephonic)

With

Jason Wayne Brady
(901-207-4413)

January 26, 2014

Mr. Jason Wayne Brady was contacted this date regarding his attempted purchase of a Mossberg shotgun from Dick's Sporting Goods, 2393 N. Germantown parkway, Cordova, TN, on November 6, 2012.

Mr. Brady states that he currently resides at 70 Grove Dale Street, Memphis, TN. He resides at this address with his wife, Mrs. Laura Carolyn Brady and their children.

Mr. Brady reported that he clearly recalls the day he tried to purchase a Mossberg shotgun as a gift for his wife at the Dick's Sporting Goods store. Mr. Brady stated that, at the time of the attempted purchase, he held a current Concealed Carry Weapons permit issued by the state of TN and had purchased several firearms on prior occasions without any issues.

In 2012, Mr. Brady learned from his wife that she wanted to participate in a controlled pheasant hunt to be held in November 2012. Since they did not have a shotgun for her to use, Mr. Brady decided he would research and find the right shotgun for her. On November 6, 2012, Mr. Brady traveled to the Dick's store identified above with the intent of purchasing a shotgun for his wife as a surprise gift for her upcoming pheasant hunt. Upon entering the store Mr. Brady contacted a store representative at the firearms counter and asked to examine a Mossberg 12 gauge shotgun. Mr. Brady decided that the shotgun was the right one and attempted to purchase it by filling out the required form. He was then advised by the store representative that his purchase was denied by the state of TN. He was not given any particulars as to what the denial was based on. Mr. Brady returned to his home and informed his wife that he had attempted to buy her a shotgun as a gift for her upcoming pheasant hunt. He told her that there was a mix up in the paper work and he was unable to buy the shotgun. He further told her that if she wanted the shotgun she would have to go to the store and buy it herself. Mr. Brady described the shotgun to Mrs. Brady as a 12 gauge Mossberg. Mr. Brady stated that his wife decided she would go to the store and look at the shotgun. Mr. Brady stayed at home to watch their children while his wife traveled to the Dick's store to look at and possibly purchase her shotgun. Mrs. Brady later returned home with a Mossberg 12 gauge shotgun.

Sometime later, specific date not recalled, Mr. Brady received a telephone call that he believes was from the TN Bureau of Investigation. He was advised by the representative that he could

not buy any additional firearms until he resolved an issue he had with the Veteran's Administration. Mr. Brady asked about his current CCW and the firearms he had at home. Mr. Brady was told that his CCW was now revoked but that he could keep the firearms he currently had but could not purchase any more.

Mr. Brady advised that sometime later, specific date not recalled, a police officer from the Memphis Police Department arrived at his house and informed him that he had to surrender all firearms in the house. Mr. Brady complied with the request by giving the officer his firearms as well as his wife's shotgun. Mr. Brady inquired but was not given an explanation as to his specific prohibition.

Mr. Brady stated that approximately 2 months ago 2 individuals who identified themselves as ATF Agents arrived at his house and requested he surrender to them the Mossberg shotgun that his wife had purchased on November 6, 2012 from Dick's Sporting Goods. Mr. Brady stated that he informed the agents that the shotgun had been surrendered to the Memphis Police Department on a previous date. Mr. Brady asked the agents what the issue was. Mr. Brady was informed that he needed to contact the VA for specifics. Mr. Brady also recalls 1 of the agents mentioning something about the shotgun being involved in a straw purchase. Mr. Brady responded to the agent that there was no straw purchase, that neither he or his wife knew he was considered a prohibited person, that he attempted to buy the firearm as a gift for his wife and when he was denied, he told his wife that if she wanted the firearm that she had to go buy it for herself, which she did. Mrs. Brady did not purchase the shotgun for Mr. Brady.

Mr. Brady has no personal or professional knowledge/association with any employee of Dick's Sporting Goods store and could not recall the store attendant who assisted him in the attempted purchase. Specifically, he does not know a Mr. Matthew Krueger. On the day he attempted to buy the shotgun at Dick's Sporting Goods store he did so believing he was not prohibited to do so. Mr. Brady did not ask the store representative to put the shotgun on hold or give any indication that his wife would travel to the store at a later date and purchase the shotgun. Mr. Brady, at the time, was not certain that his wife would even want to travel to the store and buy the shotgun; she subsequently did, and purchased the shotgun for her use during a pheasant hunt.

Mr. Brady states that since the ATF Agent informed him that his prohibition was related to an issue with the VA he has contacted the VA office. He has since learned that the prohibition is related to the PTSD treatment he receives through the VA. Mr. Brady does not completely understand the prohibition and, as time permits, will attempt to resolve the matter.

With

Laura Carolyn Brady
(901-491-1262)

January 26, 2014

Mrs. Laura Carolyn Brady was contacted this date regarding her purchase of a Mossberg shotgun from Dick's Sporting Goods, 2393 N. Germantown Parkway, Cordova, TN, on November 6, 2012.

Mrs. Brady states that she currently resides at 70 Grove Dale Street, Memphis, TN. She resides at this address with her husband, Mr. Jason Wayne Brady and their children. Mrs. Brady and their family enjoy outdoor activities including hunting and camping. Mrs. Brady, in 2012, specific date not recalled, was invited/drawn to participate in an annual controlled pheasant hunt. Mrs. Brady did not have a shotgun to be able to participate in the pheasant hunt and discussed her need for a shotgun with her husband Mr. Jason Brady. Mr. Jason Brady told his wife that he would do the looking around/checking and find the right shotgun for her.

In November 2012, just prior to her scheduled pheasant hunt, Mr. Jason Brady told Mrs. Brady that he found the shotgun for her at Dick's Sporting Goods store. Further, that he had intended to buy the shotgun as a gift for her but some sort of a mix up occurred with the paper work when he tried to purchase the shotgun. Mrs. Brady was told that if she wanted the shotgun she had to go to Dick's and buy the shotgun for herself. Mrs. Brady turned the children watching duties over to Mr. Jason Brady and drove to the Dick's Sporting Goods store. Mrs. Brady arrived at the store, walked to the firearms counter and asked the Dick's Sporting Goods representative to show her a Mossberg, 12 gauge shotgun. The store representative retrieved a shotgun and handed it to her. Mrs. Brady told the representative she wanted to buy it and she completed the necessary paper work. A short time later she purchased the shotgun and left the store.

The shogun that was purchased from Dick's Sporting Goods on November 6, 2012 was hers and was never intended to be for her husband. Mrs. Brady has no specific knowledge of any firearm disabilities of her husband. Mrs. Brady was not aware of any issues until police officers from the Memphis Police Department arrived at their house and removed her shotgun along with several other firearms belonging to her husband. Mrs. Brady was informed at that point that her husband was not permitted to have firearms. Mrs. Brady understands that her husband's firearms restriction has something to do with his military service and PTSD treatment he received at the VA.

Mrs. Brady was asked if she had any idea as to how the shotgun she eventually purchased was the exact same shotgun that her husband had attempted to purchase earlier that same day. Mrs. Brady stated she doesn't know how that happened, because she did not identify herself to anyone in the store prior to being handed the shotgun to examine at the store counter and she did not get any instructions from her husband other than I was looking for a 12 gauge Mossberg shotgun at Dick's Sporting Goods store.

# Exhibit A
# Report of
# Violations

## Instructions

Please write firmly with a ball point pen when completing this form. ATF officers will prepare this form in triplicate. The original copy will be given to the proprietor or a responsible representative. The remaining copies will be submitted with the completed inspection report. Supervisors will detach one copy from the completed report for their files.

| Name of Proprietor | Street Address | City | State | Zip Code | County |
|---|---|---|---|---|---|
| Dick's Sporting Goods, Inc<br>Dick's Sporting Goods, Inc (#376) | 2393 N. Germantown Pkwy | Memphis | TN | 37016- | Shelby |

| License/Permit/Registry Number *(If any)* | Expiration Date | Date(s) or Period of Inspection |
|---|---|---|
| 1-62-157-01-3K-03207 | 10/1/2013 | 06/11/2013 through 06/14/2013 |

## Inspection Results

An examination of your premises, records and operations has disclosed the following violations which have been explained to you:

---

**Number:** 1

**Nature of Violation:**
Failure to properly record the correct disposition name and address for a Stoeger model P350 shotgun identified by serial number 1227962 acquired on 3/28/13 and transferred on 3/28/13.

**Citation:** 27 CFR 478.125(e)

**Date Corrections to be Made:**
*(If not corrected immediately)*

**Corrective Action to be Taken:** Record the correct disposition.
*(If not corrected immediately)*

---

**Number:** 2

**Nature of Violation:**
Failure to enter the true identity of a buyer into the A&D Record (by entering a straw purchaser into the record). On November 6, 2012 Jason Wayne Brady, of 70 Grove Dale St., Memphis, TN, attempted to purchase a firearm, a Mossberg, Maverick, S/N MV849948 and received a denied response by TICS. On the same day, within nine (9) hours, Laura Carolyn Brady, of 70 Grove Dale St., Memphis, TN, purchased the same firearm from the same clerk.

**Citation:** 27 CFR 478.128(c)

**Date Corrections to be Made:**
*(If not corrected immediately)*

**Corrective Action to be Taken:** Person completing the Form 4473 must be the actual buyer of the firearm.
*(If not corrected immediately)*

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Report of Violations

## Instructions

Please write firmly with a ball point pen when completing this form. ATF officers will prepare this form in triplicate. The original copy will be given to the proprietor or a responsible representative. The remaining copies will be submitted with the completed inspection report. Supervisors will detach one copy from the completed report for their files.

| Name of Proprietor | Street Address | City | State | Zip Code | County |
|---|---|---|---|---|---|
| Dick's Sporting Goods, Inc<br>Dick's Sporting Goods, Inc (#375) | 2393 N. Germantown Pkwy | Memphis | TN | 37016- | Shelby |

| License/Permit/Registry Number (If any) | Expiration Date | Date(s) or Period of Inspection |
|---|---|---|
| 1621S7013K03207 | 10/1/2013 | 06/11/2013 through 06/14/2013 |

## Inspection Results

An examination of your premises, records and operations has disclosed the following violations which have been explained to you:

**Number:** 3

**Nature of Violation:**

Failure to stop the transfer of a firearm to a person while knowing or having reasonable cause to believe that such person is prohibited (by transferring a firearm thru a straw purchaser). On November 6, 2012 Jason Wayne Brady, of 70 Grove Dale St., Memphis, TN, attempted to purchase a firearm, a Mossberg, Maverick, S/N MV849945 and received a denied response to TICS. On the same day, within nine (9) hours, Laura Carolyn Brady, of 70 Grove Dale St., Memphis, TN, purchased the same firearm from the same clerk.

**Citation:** 27 CFR 478.99(c)

**Date Corrections to be Made:**
*(If not corrected immediately)*

**Corrective Action to be Taken:** Person completing the Form 4473 must be the actual buyer
*(If not corrected immediately)* of the firearm.

---

I Have Received a Copy of This Report of Violations

| *(Proprietor's signature and title)* | Date |
|---|---|
| Signature and Title of ATF Officer | 06/18/2013 |
| | Date |
| _(signature)_ Chie Bo Interm Store Mgr | 6/18/13 |

For Official Use Only

# Exhibit E
# 4473's

OMB No. 1140-0020

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Firearms Transaction Record Part I –
Over-the-Counter**

| WARNING: You may not receive a firearm if prohibited by Federal or State law. The information you provide will be used to determine whether you are prohibited under law from receiving a firearm. Certain violations of the Gun Control Act, 18 U.S.C. §§ 921 *et. seq.*, are punishable by up to 10 years imprisonment and/or up to a $250,000 fine. | Transferor's Transaction Serial Number *(If any)* |
|---|---|

Prepare in original only. All entries must be handwritten in ink. Read the Notices, Instructions, and Definitions on this form. "PLEASE PRINT."

### Section A - Must Be Completed Personally By Transferee (Buyer)

1. Transferee's Full Name

| Last Name | First Name | Middle Name *(If no middle name, state "NMN")* |
|---|---|---|
| BRADY | LAURA | CAROLYN |

2. Current Residence Address (U.S. Postal abbreviations are acceptable. Cannot be a post office box.)

| Number and Street Address | City | County | State | ZIP Code |
|---|---|---|---|---|
| 70 GROVE DALE ST | MEMPHIS | SHELBY | TN | 38120 |

3. Place of Birth

| U.S. City and State -OR- | Foreign Country | 4. Height | 5. Weight (Lbs.) | 6. Gender | 7. Birth Date |
|---|---|---|---|---|---|
| MEMPHIS, TN | | Ft. 5<br>In. 3ᴴ | 125 | ☐ Male<br>☒ Female | Month   Day   Year |

| 8. Social Security Number *(Optional, but will help prevent misidentification)* | 9. Unique Personal Identification Number *(UPIN)* if applicable *(See Instructions for Question 9.)* |
|---|---|

| 10.a. Ethnicity | 10.b. Race (Check one or more boxes.) | |
|---|---|---|
| ☐ Hispanic or Latino<br>☒ Not Hispanic or Latino | ☐ American Indian or Alaska Native<br>☐ Asian | ☐ Black or African American    ☒ White<br>☐ Native Hawaiian or Other Pacific Islander |

11. Answer questions 11.a. *(see exceptions)* through 11.l. and 12 *(if applicable)* by checking or marking *"yes" or "no"* in the boxes to the right of the questions.

| | | Yes | No |
|---|---|---|---|
| a. | Are you the actual transferee/buyer of the firearm(s) listed on this form? Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you. *(See Instructions for Question 11.a.)* Exception: *If you are picking up a repaired firearm(s) for another person, you are not required to answer 11.a. and may proceed to question 11.b.* | ☒ | ☐ |
| b. | Are you under indictment or information in any court for a felony, or any other crime, for which the judge could imprison you for more than one year? *(See Instructions for Question 11.b.)* | ☐ | ☐ |
| c. | Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation? *(See Instructions for Question 11.c.)* | ☐ | ☒ |
| d. | Are you a fugitive from justice? | ☐ | ☒ |
| e. | Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? | ☐ | ☒ |
| f. | Have you ever been adjudicated mentally defective *(which includes a determination by a court, board, commission, or other lawful authority that you are a danger to yourself or to others or are incompetent to manage your own affairs)* OR have you ever been committed to a mental institution? *(See Instructions for Question 11.f.)* | ☐ | ☒ |
| g. | Have you been discharged from the Armed Forces under dishonorable conditions? | ☐ | ☒ |
| h. | Are you subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner? *(See Instructions for Question 11.h.)* | ☐ | ☒ |
| i. | Have you ever been convicted in any court of a misdemeanor crime of domestic violence? *(See Instructions for Question 11.i.)* | ☐ | ☒ |
| j. | Have you ever renounced your United States citizenship? | ☐ | ☒ |
| k. | Are you an alien illegally in the United States? | ☐ | ☒ |
| l. | Are you an alien admitted to the United States under a nonimmigrant visa? *(See Instructions for Question 11.l.)* If you answered "no" to this question, do NOT respond to question 12 and proceed to question 13. | ☐ | ☒ |
| 12. | If you are an alien admitted to the United States under a nonimmigrant visa, do you fall within any of the exceptions set forth in the instructions? (If "yes," the licensee must complete question 20.c.) *(See Instructions for Question 12.)* If question 11.l. is answered with a "no" response, then do NOT respond to question 12 and proceed to question 13. | ☐ | ☐ |

| 13. What is your State of residence (if any)? *(See Instructions for Question 13.)* | 14. What is your country of citizenship? *(List/check more than one, if applicable. If you are a citizen of the United States, proceed to question 16.)* | 15. If you are not a citizen of the United States, what is your U.S.-issued alien number or admission number? |
|---|---|---|
| Tennessee | ☒ United States of America<br>☐ Other *(Specify)* | |

Note: Previous Editions Are Obsolete      Transferee (Buyer) Continue to Next Page      ATF Form 4473 (5300.9) Part I

I certify that my answers to Section A are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. I understand that answering "yes" to question 11.a. if I am not the actual buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I understand that a person who answers "yes" to any of the questions 11.b. through 11.k. is prohibited from purchasing or receiving a firearm. I understand that a person who answers "yes" to question 11.l. is prohibited from purchasing or receiving a firearm, unless the person also answers "Yes" to question 12. I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I further understand that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of law (See Instructions for Question 16).

| 16. Transferee's/Buyer's Signature | 17. Certification Date |
|---|---|
| *Donna Brady* | 11/06/2012 |

## Section B - Must Be Completed By Transferor (Seller)

| 18. Type of firearm(s) to be transferred *(check or mark all that apply)*: | 19. If sale at a gun show or other qualifying event. |
|---|---|
| ☐ Handgun  ☒ Long Gun *(rifles or shotguns)*  ☐ Other Firearm *(Frame, Receiver, etc. See Instructions for Question 18.)* | Name of Event _____  City, State _____ |

**20a. Identification** *(e.g., Virginia Driver's license (VA DL) or other valid government-issued photo identification)* *(See Instructions for Question 20.a.)*

| Issuing Authority and Type of Identification | Number on Identification | Expiration Date of Identification *(if any)* | | |
|---|---|---|---|---|
| TENNESSEE DRIVERS LICENSE | | Month 12 | Day 22 | Year 2012 |

**20b. Alternate Documentation** *(if driver's license or other identification document does not show current residence address)* *(See Instructions for Question 20.b.)*

**20c.** Aliens Admitted to the United States Under a Nonimmigrant Visa Must Provide: Type of documentation showing an exception to the nonimmigrant visa prohibition. *(See Instructions for Question 20.c.)*

### Questions 21, 22, or 23 Must Be Completed Prior To The Transfer Of The Firearm(s) *(See Instructions for Questions 21, 22 and 23.)*

| 21a. Date the transferee's identifying information in Section A was transmitted to NICS or the appropriate State agency: *(Month/Day/Year)* | 21b. The NICS or State transaction number *(if provided)* was: |
|---|---|
| Month 11  Day 06  Year 2012 | 12W24B613 |

| 21c. The response initially provided by NICS or the appropriate State agency was: | 21d. If initial NICS or State response was *"Delayed,"* the following response was received from NICS or the appropriate State agency: |
|---|---|
| ☒ Proceed  ☐ Delayed  ☐ Denied  ☐ Cancelled  *[The firearm(s) may be transferred on _____ (Missing Disposition Information date provided by NICS) if State law permits (optional)]* | ☐ Proceed _____ *(date)*  ☐ Denied _____ *(date)*  ☐ Cancelled _____ *(date)*  ☐ No resolution was provided within 3 business days. |

**21e.** *(Complete if applicable.)* After the firearm was transferred, the following response was received from NICS or the appropriate State agency on: _____ *(date).* ☐ Proceed ☐ Denied ☐ Cancelled

**21f.** The name and Brady identification number of the NICS examiner *(Optional)*

_____ *(name)*   _____ *(number)*

**22.** ☐ No NICS check was required because the transfer involved only National Firearms Act firearm(s). *(See Instructions for Question 22.)*

**23.** ☐ No NICS check was required because the buyer has a valid permit from the State where the transfer is to take place, which qualifies as an exemption to NICS *(See Instructions for Question 23.)*

| Issuing State and Permit Type | Date of Issuance *(if any)* | Expiration Date *(if any)* | Permit Number *(if any)* |
|---|---|---|---|
| | | | |

### Section C - Must Be Completed Personally By Transferee (Buyer)

If the transfer of the firearm(s) takes place on a different day from the date that the transferee *(buyer)* signed Section A, the transferee must complete Section C immediately prior to the transfer of the firearm(s). *(See Instructions for Question 24 and 25.)*

I certify that my answers to the questions in Section A of this form are still true, correct and complete.

| 24. Transferee's/Buyer's Signature | 25. Recertification Date |
|---|---|
| | |

**Transferor (Seller) Continue to Next Page**
**STAPLE IF PAGES BECOME SEPARATED**

ATF Form 4473 (5300.9) Part I
Revised April 2012

| 26. Manufacturer and/or Importer *(If the manufacturer and importer are different, the FFL should include both.)* | 27. Model | 28. Serial Number | 29. Type *(pistol, revolver, rifle, shotgun, receiver, frame, etc.) (See instructions for question 29)* | 30. Caliber or Gauge |
|---|---|---|---|---|
| OF MOSSBERG and Sons | BB | MV B4994S | SHOTGUN | 12 |
| | | | | |
| | | | | |
| | | | | |

30a. Total Number of Firearms *(Please handwrite by printing e.g., one, two, three, etc. Do not use numerals.)*

ONE

30b. Is any part of this transaction a Pawn Redemption? ☐ Yes ☒ No

30c. For Use by FFL *(See Instructions for Question 30c.)*

901 491 1262

### Complete ATF Form 3310.4 For Multiple Purchases of Handguns Within 5 Consecutive Business Days

31. Trade/corporate name and address of transferor *(seller)* *(Hand stamp may be used.)*

*(stamp illegible)*

32. Federal Firearms License Number *(Must contain at least first three and last five digits of FFL Number X-XX-XXXXX.) (Hand stamp may be used.)*

FFL# 1-62-157-01-3K-03207

### The Person Transferring The Firearm(s) Must Complete Questions 33-36. For Denied/Cancelled Transactions, The Person Who Completed Section B Must Complete Questions 33-35.

I certify that my answers in Sections B and D are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. On the basis of: (1) the statements in Section A (and Section C if the transfer does not occur on the day Section A was completed); (2) my verification of the identification noted in question 20a (and my reverification at the time of transfer *if the transfer does not occur on the day Section A was completed*); and (3) the information in the current State Laws and Published Ordinances, it is my belief that it is not unlawful for me to sell, deliver, transport, or otherwise dispose of the firearm(s) listed on this form to the person identified in Section A.

| 33. Transferor's/Seller's Name *(Please print)* | 34. Transferor's/Seller's Signature | 35. Transferor's/Seller's Title | 36. Date Transferred |
|---|---|---|---|
| MATTHEW KRUEGER | *(signature)* | LODGE ASSOCIATE | 11-06-2012 |

### NOTICES, INSTRUCTIONS AND DEFINITIONS

**Purpose of the Form:** The information and certification on this form are designed so that a person licensed under 18 U.S.C. § 923 may determine if he or she may lawfully sell or deliver a firearm to the person identified in Section A, and to alert the buyer of certain restrictions on the receipt and possession of firearms. This form should only be used for sales or transfers where the seller is licensed under 18 U.S.C. § 923. The seller of a firearm must determine the lawfulness of the transaction and maintain proper records of the transaction. Consequently, the seller must be familiar with the provisions of 18 U.S.C. §§ 921-931 and the regulations in 27 CFR Part 478. In determining the lawfulness of the sale or delivery of a long gun *(rifle or shotgun)* to a resident of another State, the seller is presumed to know the applicable State laws and published ordinances in both the seller's State and the buyer's State.

After the seller has completed the firearms transaction, he or she must make the completed, original ATF Form 4473 *(which includes the Notices, General Instructions, and Definitions)*, and any supporting documents, part of his or her permanent records. Such Forms 4473 must be retained for at least 20 years. Filing may be chronological *(by date)*, alphabetical *(by name)*, or numerical *(by transaction serial number)*, as long as all of the seller's completed Forms 4473 are filed in the same manner. FORMS 4473 FOR DENIED/CANCELLED TRANSFERS MUST BE RETAINED: If the transfer of a firearm is denied/cancelled by NICS, or if for any other reason the transfer is not completed after a NICS check is initiated, the licensee must retain the ATF Form 4473 in his or her records for at least 5 years. Forms 4473 with respect to which a sale, delivery, or transfer did not take place shall be separately retained in alphabetical *(by name)* or chronological *(by date of transferee's certification)* order.

If you or the buyer discover that an ATF Form 4473 is incomplete or improperly completed after the firearm has been transferred, and you or the buyer wish to make a record of your discovery, then photocopy the inaccurate form and make any necessary additions or revisions to the photocopy. You only should make changes to Sections B and D. The buyer should only make changes to Sections A and C. Whoever made the changes should initial and date the changes. The corrected photocopy should be attached to the original Form 4473 and retained as part of your permanent records.

**Over-the-Counter Transaction:** The sale or other disposition of a firearm by a seller to a buyer, at the seller's licensed premises. This includes the sale or other disposition of a rifle or shotgun to a nonresident buyer on such premises.

**State Laws and Published Ordinances:** The publication (ATF P 5300.5) of State firearms laws and local ordinances ATF distributes to licensees.

**Exportation of Firearms:** The State or Commerce Departments may require you to obtain a license prior to export.

#### Section A

**Question 1. Transferee's Full Name:** The buyer must personally complete Section A of this form and certify *(sign)* that the answers are true, correct, and complete. However, if the buyer is unable to read and/or write, the answers *(other than the signature)* may be completed by another person, excluding the seller. Two persons *(other than the seller)* must then sign as witnesses to the buyer's answers and signature.

When the buyer of a firearm is a corporation, company, association, partnership, or other such business entity, an officer authorized to act on behalf of the

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Firearms Transaction Record Part I – Over-the-Counter

| WARNING: You may not receive a firearm if prohibited by Federal or State law. The information you provide will be used to determine whether you are prohibited under law from receiving a firearm. Certain violations of the Gun Control Act, 18 U.S.C. §§ 921 *et. seq.*, are punishable by up to 10 years imprisonment and/or up to a $250,000 fine. | Transferor's Transac Serial Number *(If any)* |
|---|---|

**Prepare in original only. All entries must be handwritten in ink. Read the Notices, Instructions, and Definitions on this form. "PLEASE PRINT."**

## Section A - Must Be Completed Personally By Transferee (Buyer)

**1. Transferee's Full Name**

| Last Name | First Name | Middle Name *(If no middle name, state "NMN")* |
|---|---|---|
| BRADY | JASON | WAYNE |

**2. Current Residence Address (U.S. Postal abbreviations are acceptable. Cannot be a post office box.)**

| Number and Street Address | City | County | State | ZIP Code |
|---|---|---|---|---|
| 70 GROVE DALE ST. | MEMPHIS | SHELBY | TN | 38120 |

| 3. Place of Birth | 4. Height | 5. Weight *(Lbs.)* | 6. Gender | 7. Birth Date |
|---|---|---|---|---|
| U.S. City and State -OR- Foreign Country: MEMPHIS, TENNESSEE | Ft. 5 In. 10 | 160 | ☒ Male ☐ Female | Month Day Year |

**8. Social Security Number** *(Optional, but will help prevent misidentification)*

**9. Unique Personal Identification Number** *(UPIN) if applicable (See Instructions for Question 9.)*

| 10.a. Ethnicity | 10.b. Race (Check one or more boxes.) | | |
|---|---|---|---|
| ☐ Hispanic or Latino | ☐ American Indian or Alaska Native | ☐ Black or African American | ☒ White |
| ☒ Not Hispanic or Latino | ☐ Asian | ☐ Native Hawaiian or Other Pacific Islander | |

11. Answer questions 11.a. *(see exceptions)* through 11.l. and 12 *(if applicable)* by checking or marking "yes" or "no" in the boxes to the right of the questions.

| | | Yes | No |
|---|---|---|---|
| a. | Are you the actual transferee/buyer of the firearm(s) listed on this form? **Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you.** *(See Instructions for Question 11.a.)* Exception: *If you are picking up a repaired firearm(s) for another person, you are not required to answer 11.a. and may proceed to question 11.b.* | ☒ | |
| b. | Are you under indictment or information in any court for a felony, or any other crime, for which the judge could imprison you for more than one year? *(See Instructions for Question 11.b.)* | ☐ | ☒ |
| c. | Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation? *(See Instructions for Question 11.c.)* | ☐ | ☒ |
| d. | Are you a fugitive from justice? | ☐ | ☒ |
| e. | Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? | ☐ | ☒ |
| f. | Have you ever been adjudicated mentally defective *(which includes a determination by a court, board, commission, or other lawful authority that you are a danger to yourself or to others or are incompetent to manage your own affairs)* OR have you ever been committed to a mental institution? *(See Instructions for Question 11.f.)* | ☐ | ☒ |
| g. | Have you been discharged from the Armed Forces under **dishonorable** conditions? | ☐ | ☒ |
| h. | Are you subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner? *(See Instructions for Question 11.h.)* | ☐ | ☒ |
| i. | Have you ever been convicted in any court of a misdemeanor crime of domestic violence? *(See Instructions for Question 11.i.)* | ☐ | ☒ |
| j. | Have you ever renounced your United States citizenship? | ☐ | ☒ |
| k. | Are you an alien **illegally** in the United States? | ☐ | ☒ |
| l. | Are you an alien admitted to the United States under a nonimmigrant visa? *(See Instructions for Question 11.l.)* If you answered "no" to this question, do NOT respond to question 12 and proceed to question 13. | ☐ | ☒ |
| 12. | If you are an alien admitted to the United States under a nonimmigrant visa, do you fall within any of the exceptions set forth in the instructions? (If "yes," the licensee must complete question 20c.) *(See Instructions for Question 12.)* If question 11.l. is answered with a "no" response, then do NOT respond to question 12 and proceed to question 13. | ☐ | ☐ |

| 13. What is your State of residence *(if any)*? *(See Instructions for Question 13.)* | 14. What is your country of citizenship? *(List/check more than one, if applicable. If you are a citizen of the United States, proceed to question 16.)* | 15. If you are not a citizen of the United States, what is your U.S.-issued alien number or admission number? |
|---|---|---|
| TENNESSEE | ☒ United States of America ☐ Other *(Specify)* | |

Note: Previous Editions Are Obsolete

**Transferee (Buyer) Continue to Next Page**
**STAPLE IF PAGES BECOME SEPARATED**

ATF Form 4473 (5300.9) Part I
Revised April 2012

I certify that my answers to Section A are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. I understand that answering "yes" to question 11.a. if I am not the actual buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I understand that a person who answers "yes" to any of the questions 11.b. through 11.c. is prohibited from purchasing or receiving a firearm. I understand that a person who answers "yes" to question 11.i. is prohibited from purchasing or receiving a firearm, unless the person also answers "Yes" to question 12. I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I further understand that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of law (See Instructions for Question 16).

| 16. Transferee's/Buyer's Signature | 17. Certification Date |
|---|---|
| | 11-06-2012 |

## Section B - Must Be Completed By Transferor (Seller)

| 18. Type of firearm(s) to be transferred (check or mark all that apply): | 19. If sale at a gun show or other qualifying event. |
|---|---|
| ☐ Handgun  ☒ Long Gun (rifles or shotguns)  ☐ Other Firearm (Frame, Receiver, etc. See Instructions for Question 18.) | Name of Event _____  City, State _____ |

20a. Identification (e.g., Virginia Driver's license (VA DL) or other valid government-issued photo identification.) (See Instructions for Question 20.a.)

| Issuing Authority and Type of Identification | Number on Identification | Expiration Date of Identification (if any) | | |
|---|---|---|---|---|
| TENNESSEE DRIVERS LICENSE | | Month 04 | Day 27 | Year 2013 |

20b. Alternate Documentation (if driver's license or other identification document does not show current residence address) (See Instructions for Question 20.b.)

20c. Aliens Admitted to the United States Under a Nonimmigrant Visa Must Provide: Type of documentation showing an exception to the nonimmigrant visa prohibition. (See Instructions for Question 20.c.)

### Questions 21, 22, or 23 Must Be Completed Prior To The Transfer Of The Firearm(s) (See Instructions for Questions 21, 22 and 23.)

| 21a. Date the transferee's identifying information in Section A was transmitted to NICS or the appropriate State agency: (Month/Day/Year) | 21b. The NICS or State transaction number (if provided) was: |
|---|---|
| Month 11   Day 06   Year 2012 | 12W247B66 |

| 21c. The response initially provided by NICS or the appropriate State agency was: | 21d. If initial NICS or State response was "Delayed," the following response was received from NICS or the appropriate State agency: |
|---|---|
| ☐ Proceed  ☒ Denied  ☐ Cancelled  ☐ Delayed  [The firearm(s) may be transferred on _____ (Missing Disposition Information date provided by NICS) if State law permits (optional)] | ☐ Proceed _____ (date)  ☐ Denied _____ (date)  ☐ Cancelled _____ (date)  ☐ No resolution was provided within 3 business days. |

21e. (Complete if applicable.) After the firearm was transferred, the following response was received from NICS or the appropriate State agency on: _____ (date).  ☐ Proceed  ☐ Denied  ☐ Cancelled

21f. The name and Brady identification number of the NICS examiner (Optional)

_____ (name)  _____ (number)

22. ☐ No NICS check was required because the transfer involved only National Firearms Act firearm(s). (See Instructions for Question 22.)

23. ☐ No NICS check was required because the buyer has a valid permit from the State where the transfer is to take place, which qualifies as an exemption to NICS (See Instructions for Question 23.)

| Issuing State and Permit Type | Date of Issuance (if any) | Expiration Date (if any) | Permit Number (if any) |
|---|---|---|---|
| | | | |

### Section C - Must Be Completed Personally By Transferee (Buyer)

If the transfer of the firearm(s) takes place on a different day from the date that the transferee (buyer) signed Section A, the transferee must complete Section C immediately prior to the transfer of the firearm(s). (See Instructions for Question 24 and 25.)

I certify that my answers to the questions in Section A of this form are still true, correct and complete.

| 24. Transferee's/Buyer's Signature | 25. Recertification Date |
|---|---|
| | |

**Transferor (Seller) Continue to Next Page**
**STAPLE IF PAGES BECOME SEPARATED**

ATF Form 4473 (5300.9) Part I
Revised April 2012

## Section D - Must Be Completed By Transferor (Seller)

| 26. Manufacturer and/or Importer (If the manufacturer and importer are different, the FFL should include both.) | 27. Model | 28. Serial Number | 29. Type (pistol, revolver, rifle, shotgun, receiver, frame, etc.) (See instructions for question 29) | 30. Caliber or Gauge |
|---|---|---|---|---|
| O.F. MOSSBERG AND SONS | MAVERICK | MV84994S | SHOTGUN | 12 |
| | | | | |
| | | | | |
| | | | | |

| 30a. Total Number of Firearms (Please handwrite by printing e.g., one, two, three, etc. Do not use numerals.) ONE | 30b. Is any part of this transaction a Pawn Redemption? ☐ Yes ☒ No |
|---|---|

30c. For Use by FFL (See Instructions for Question 30c.)

901 268-0973

### Complete ATF Form 3310.4 For Multiple Purchases of Handguns Within 5 Consecutive Business Days

| 31. Trade/corporate name and address of transferor (seller) (Hand stamp may be used.) | 32. Federal Firearms License Number (Must contain at least first three and last five digits of FFL Number X-XX-XXXXX.) (Hand stamp may be used.) |
|---|---|
| *[illegible hand stamp]* | FFL# 1-62-157-01-3K-03207 |

### The Person Transferring The Firearm(s) Must Complete Questions 33-36. For Denied/Cancelled Transactions, The Person Who Completed Section B Must Complete Questions 33-35.

I certify that my answers in Sections B and D are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. On the basis of: (1) the statements in Section A (and Section C if the transfer does not occur on the day Section A was completed); (2) my verification of the identification noted in question 20a (and my reverification at the time of transfer if the transfer does not occur  the day Section A was completed); and (3) the information in the current State Laws and Published Ordinances, it is my belief that it is not unlawful me to sell, deliver, transport, or otherwise dispose of the firearm(s) listed on this form to the person identified in Section A. *ce 11/06/2012*

| 33. Transferor's/Seller's Name (Please print) | 34. Transferor's/Seller's Signature | 35. Transferor's/Seller's Title | 36. Date Transferred |
|---|---|---|---|
| MATTHEW TURNER | *[signature]* | LONER ASSOCIATE | 11-06-2012 |

### NOTICES, INSTRUCTIONS AND DEFINITIONS

**Purpose of the Form:** The information and certification on this form are designed so that a person licensed under 18 U.S.C. § 923 may determine if he or she may lawfully sell or deliver a firearm to the person identified in Section A, and to alert the buyer of certain restrictions on the receipt and possession of firearms. This form should only be used for sales or transfers where the seller is licensed under 18 U.S.C. § 923. The seller of a firearm must determine the lawfulness of the transaction and maintain proper records of the transaction. Consequently, the seller must be familiar with the provisions of 18 U.S.C. §§ 921-931 and the regulations in 27 CFR Part 478. In determining the lawfulness of the sale or delivery of a long gun (rifle or shotgun) to a resident of another State, the seller is presumed to know the applicable State laws and published ordinances in both the seller's State and the buyer's State.

After the seller has completed the firearms transaction, he or she must make the completed, original ATF Form 4473 (which includes the Notices, General Instructions, and Definitions), and any supporting documents, part of his or her permanent records. Such Forms 4473 must be retained for at least 20 years. Filing may be chronological (by date), alphabetical (by name), or numerical (by transaction serial number), as long as all of the seller's completed Forms 4473 are filed in the same manner. FORMS 4473 FOR DENIED/CANCELLED TRANSFERS MUST BE RETAINED: If the transfer of a firearm is denied/cancelled by NICS, or if for any other reason the transfer is not complete after a NICS check is initiated, the licensee must retain the ATF Form 4473 in his or her records for at least 5 years. Forms 4473 with respect to which a sale, delivery, or transfer did not take place shall be separately retained in alphabetical (by name) or chronological (by date of transferee's certification) order.

If you or the buyer discover that an ATF Form 4473 is incomplete or improperly completed after the firearm has been transferred, and you or the buyer wish to make a record of your discovery, then photocopy the inaccurate form and make any necessary additions or revisions to the photocopy. You only should make changes to Sections B and D. The buyer should only make changes to Sections A and C. Whoever made the changes should initial and date the changes. The corrected photocopy should be attached to the original Form 4473 and retained as part of your permanent records.

**Over-the-Counter Transaction:** The sale or other disposition of a firearm by a seller to a buyer, at the seller's licensed premises. This includes the sale or other disposition of a rifle or shotgun to a nonresident buyer on such premises.

**State Laws and Published Ordinances:** The publication (ATF P 5300.5) of State firearms laws and local ordinances ATF distributes to licensees.

**Exportation of Firearms:** The State or Commerce Departments may require you to obtain a license prior to export.

#### Section A

**Question 1. Transferee's Full Name:** The buyer must personally complete Section A of this form and certify (sign) that the answers are true, correct, and complete. However, if the buyer is unable to read and/or write, the answers (other than the signature) may be completed by another person, excluding the seller. Two persons (other than the seller) must then sign as witnesses to buyer's answers and signature.

When the buyer of a firearm is a corporation, company, association, partnership, or other such business entity, an officer authorized to act on behalf of the

ATF Form 4473 (5300.9) Part 1
Revised April 2012

# REPORTS OF INTERVIEWS



EXHIBIT

## REPORT OF INTERVIEW
(Telephonic)

With

Mathew Krueger
(901-491-4548)

January 26, 2014

Mr. Krueger was contacted this date regarding his involvement in and knowledge of the sale of a Mossberg shotgun from Dick's Sporting Goods, 2393 N. Germantown Parkway, Cordova, TN. on November 6, 2012. Mr. Krueger was additionally advised that clarification was being sought regarding his recollection of the denial of a sale of the same shotgun to the purchaser's spouse the same date.

Mr. Krueger acknowledged that he was employed in the firearm department of Dick's Sporting Goods in November 2012. Mr. Krueger had no specific recollection of the firearm transactions in question. Mr. Krueger was read specifics of the firearms transaction from the 2 ATF Form 4473s that he participated in preparing. The information did not refresh his memory of the transactions. Specifically, Mr. Krueger stated that he does not know Mr. Jason Brady or Mrs. Laura Brady and that their identity and the description of the transactions bring nothing to mind that would have him question the denial or sale.

Mr. Kruger was asked if he was aware of a practice where by a person would purchase a firearm for another person who was prohibited from purchasing firearms. Mr. Krueger stated that he was well aware of Straw Purchases and, as a Dick's Sporting Goods employee, he had received considerable training in awareness of this practice, what to look for and what to do when it was suspected. Mr. Krueger stated that during his employment at Dick's Sporting Goods he did experience straw purchase attempts on occasions and would simple advise the purchaser that he could not proceed with the sale. Mr. Krueger believes that if he thought the transaction in question was a straw purchase through the actions or statements of the purchaser he would not have completed the sale.

## REPORT OF INTERVIEW
(Telephonic)

With

Jason Wayne Brady
(901-207-4413)

January 26, 2014

Mr. Jason Wayne Brady was contacted this date regarding his attempted purchase of a Mossberg shotgun from Dick's Sporting Goods, 2393 N. Germantown parkway, Cordova, TN, on November 6, 2012.

Mr. Brady states that he currently resides at 70 Grove Dale Street, Memphis, TN. He resides at this address with his wife, Mrs. Laura Carolyn Brady and their children.

Mr. Brady reported that he clearly recalls the day he tried to purchase a Mossberg shotgun as a gift for his wife at the Dick's Sporting Goods store. Mr. Brady stated that, at the time of the attempted purchase, he held a current Concealed Carry Weapons permit issued by the state of TN and had purchased several firearms on prior occasions without any issues.

In 2012, Mr. Brady learned from his wife that she wanted to participate in a controlled pheasant hunt to be held in November 2012. Since they did not have a shotgun for her to use, Mr. Brady decided he would research and find the right shotgun for her. On November 6, 2012, Mr. Brady traveled to the Dick's store identified above with the intent of purchasing a shotgun for his wife as a surprise gift for her upcoming pheasant hunt. Upon entering the store Mr. Brady contacted a store representative at the firearms counter and asked to examine a Mossberg 12 gauge shotgun. Mr. Brady decided that the shotgun was the right one and attempted to purchase it by filling out the required form. He was then advised by the store representative that his purchase was denied by the state of TN. He was not given any particulars as to what the denial was based on. Mr. Brady returned to his home and informed his wife that he had attempted to buy her a shotgun as a gift for her upcoming pheasant hunt. He told her that there was a mix up in the paper work and he was unable to buy the shotgun. He further told her that if she wanted the shotgun she would have to go to the store and buy it herself. Mr. Brady described the shotgun to Mrs. Brady as a 12 gauge Mossberg. Mr. Brady stated that his wife decided she would go to the store and look at the shotgun. Mr. Brady stayed at home to watch their children while his wife traveled to the Dick's store to look at and possibly purchase her shotgun. Mrs. Brady later returned home with a Mossberg 12 gauge shotgun.

Sometime later, specific date not recalled, Mr. Brady received a telephone call that he believes was from the TN Bureau of Investigation. He was advised by the representative that he could

not buy any additional firearms until he resolved an issue he had with the Veteran's Administration. Mr. Brady asked about his current CCW and the firearms he had at home. Mr. Brady was told that his CCW was now revoked but that he could keep the firearms he currently had but could not purchase any more.

Mr. Brady advised that sometime later, specific date not recalled, a police officer from the Memphis Police Department arrived at his house and informed him that he had to surrender all firearms in the house. Mr. Brady complied with the request by giving the officer his firearms as well as his wife's shotgun. Mr. Brady inquired but was not given an explanation as to his specific prohibition.

Mr. Brady stated that approximately 2 months ago 2 individuals who identified themselves as ATF Agents arrived at his house and requested he surrender to them the Mossberg shotgun that his wife had purchased on November 6, 2012 from Dick's Sporting Goods. Mr. Brady stated that he informed the agents that the shotgun had been surrendered to the Memphis Police Department on a previous date. Mr. Brady asked the agents what the issue was. Mr. Brady was informed that he needed to contact the VA for specifics. Mr. Brady also recalls 1 of the agents mentioning something about the shotgun being involved in a straw purchase. Mr. Brady responded to the agent that there was no straw purchase, that neither he or his wife knew he was considered a prohibited person, that he attempted to buy the firearm as a gift for his wife and when he was denied, he told his wife that if she wanted the firearm that she had to go buy it for herself, which she did. Mrs. Brady did not purchase the shotgun for Mr. Brady.

Mr. Brady has no personal or professional knowledge/association with any employee of Dick's Sporting Goods store and could not recall the store attendant who assisted him in the attempted purchase. Specifically, he does not know a Mr. Matthew Krueger. On the day he attempted to buy the shotgun at Dick's Sporting Goods store he did so believing he was not prohibited to do so. Mr. Brady did not ask the store representative to put the shotgun on hold or give any indication that his wife would travel to the store at a later date and purchase the shotgun. Mr. Brady, at the time, was not certain that his wife would even want to travel to the store and buy the shotgun; she subsequently did, and purchased the shotgun for her use during a pheasant hunt.

Mr. Brady states that since the ATF Agent informed him that his prohibition was related to an issue with the VA he has contacted the VA office. He has since learned that the prohibition is related to the PTSD treatment he receives through the VA. Mr. Brady does not completely understand the prohibition and, as time permits, will attempt to resolve the matter.

**REPORT OF INTERVIEW**
(Telephonic)

With

Laura Carolyn Brady
(901-491-1262)

January 26, 2014

Mrs. Laura Carolyn Brady was contacted this date regarding her purchase of a Mossberg shotgun from Dick's Sporting Goods, 2393 N. Germantown Parkway, Cordova, TN, on November 6, 2012.

Mrs. Brady states that she currently resides at 70 Grove Dale Street, Memphis, TN. She resides at this address with her husband, Mr. Jason Wayne Brady and their children. Mrs. Brady and their family enjoy outdoor activities including hunting and camping. Mrs. Brady, in 2012, specific date not recalled, was invited/drawn to participate in an annual controlled pheasant hunt. Mrs. Brady did not have a shotgun to be able to participate in the pheasant hunt and discussed her need for a shotgun with her husband Mr. Jason Brady. Mr. Jason Brady told his wife that he would do the looking around/checking and find the right shotgun for her.

In November 2012, just prior to her scheduled pheasant hunt, Mr. Jason Brady told Mrs. Brady that he found the shotgun for her at Dick's Sporting Goods store. Further, that he had intended to buy the shotgun as a gift for her but some sort of a mix up occurred with the paper work when he tried to purchase the shotgun. Mrs. Brady was told that if she wanted the shotgun she had to go to Dick's and buy the shotgun for herself. Mrs. Brady turned the children watching duties over to Mr. Jason Brady and drove to the Dick's Sporting Goods store. Mrs. Brady arrived at the store, walked to the firearms counter and asked the Dick's Sporting Goods representative to show her a Mossberg, 12 gauge shotgun. The store representative retrieved a shotgun and handed it to her. Mrs. Brady told the representative she wanted to buy it and she completed the necessary paper work. A short time later she purchased the shotgun and left the store.

The shogun that was purchased from Dick's Sporting Goods on November 6, 2012 was hers and was never intended to be for her husband. Mrs. Brady has no specific knowledge of any firearm disabilities of her husband. Mrs. Brady was not aware of any issues until police officers from the Memphis Police Department arrived at their house and removed her shotgun along with several other firearms belonging to her husband. Mrs. Brady was informed at that point that her husband was not permitted to have firearms. Mrs. Brady understands that her husband's firearms restriction has something to do with his military service and PTSD treatment he received at the VA.

Mrs. Brady was asked if she had any idea as to how the shotgun she eventually purchased was the exact same shotgun that her husband had attempted to purchase earlier that same day. Mrs. Brady stated she doesn't know how that happened, because she did not identify herself to anyone in the store prior to being handed the shotgun to examine at the store counter and she did not get any instructions from her husband other than I was looking for a 12 gauge Mossberg shotgun at Dick's Sporting Goods store.

# Exhibit B
# Revocation Notice

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

Original

# Notice of Revocation of License

In the matter of License Number 1-62-157-01-3K-03207 , as a Dealer, Including Pawnbroker, in Firearms

Other than Destructive Devices issued to:

Name and Address of Licensee *(Show number, street, city, State and ZIP Code) (Begin typing one space below dots)*

Dick's Sporting Goods, Inc.
d/b/a Dick's Sporting Goods, Inc. #375
2393 N. Germantown Pkwy.
Memphis, Tennessee 38016

Notice Is Hereby Given That:

☑ (1) Pursuant to section 923(e) of Title 18, U.S.C., and for the reasons stated in the page(s) attached to this form, having been afforded proper opportunity for a hearing, the license described above is revoked effective <u>15 days from the date of receipt</u> ;

☑ (2) Pursuant to section 923(f)(2) of Title 18, U.S.C., you may file a request with the Director of Industry Operations (DIO), Bureau of Alcohol, Tobacco, Firearms and Explosives, <u>5300 Maryland Way, Suite 200, Brentwood, Tennessee 37027</u>

*(Address)*

in duplicate, within 15 days after receipt of this notice, for a hearing to review the revocation of your license;

☑ (3) If you request a hearing, it will be held as provided in 27 CFR Part 478; and

☑ (4) If your request for a hearing is filed on time, the effective date of revocation of your license will be stayed pending review pursuant to the hearing.

| Date | Signature and Title of Bureau of Alcohol, Tobacco, Firearms and Explosives Official |
|---|---|
| 11/21/2013 | *Kevin Boydston*     Kevin L. Boydston, Director, Industry Operations |

I certify that on the date shown below I served the above notice on the person identified below by

☐ Delivering a copy of the notice to the address shown below

☑ Certified mail to the address shown below
7008 0500 0002 1621 3368

| Date Notice Served | Name of Person Served *(Please state if served on partner or officer of corporation)* |
|---|---|
| 11/21/2013 | Edward W. Stack, Chairman/CEO |

Address Where Notice Served

345 Court St. Coraopolis, PA. 15108

| Date | Signature of Person Serving Notice | Title |
|---|---|---|
| 11/21/2013 | *Kevin Boydston*    Kevin L. Boydston | Director, Industry Operations |

ATF Form 4500(5300.4)
Revised July 2005

ATF Form 4500, Notice of Revocation of License

203080:PRL
5372 NVL-13-211482

Dick's Sporting Goods, Inc.
d/b/a Dick's Sporting Goods, Inc. #375
2393 N. Germantown Pkwy.
Memphis, Tennessee 38016

Federal Firearms License No. 1-62-157-01-3K-03207

Under the provisions of 18 U.S.C. § 923(e) and 27 C.F.R. § 478.73, notice is hereby given of the revocation of the Federal firearms license specified above, in that the Director, Industry Operations, United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Nashville Field Division, has reason to believe that Dick's Sporting Goods, Inc. d/b/a Dick's Sporting Goods, Inc. #375, 2393 N. Germantown Pkwy., Memphis, Tennessee 38016, a Dealer, in Firearms Other than Destructive Devices, willfully violated the provisions of the Gun Control Act of 1968 as amended, 18 U.S.C. Chapter 44, and the regulations issued thereunder, 27 C.F.R. Part 478.

## Transfer to Person with Reason to Believe Prohibited

1. 18 U.S.C. § 922(d) and 27 C.F.R. § 478.99(c) provide that a licensed dealer shall not sell or otherwise dispose of any firearm or any ammunition to any person knowing or having reasonable cause to believe that such person is prohibited from receipt and possession of firearms.

   The Licensee, Dick's Sporting Goods, Inc. d/b/a Dick's Sporting Goods, Inc. #375, by and through its officers, agents and employees, on or about November 6, 2012, willfully transferred a firearm, a Mossberg, Maverick, serial number MV84994S, to Wayne Brady, knowing or having reasonable cause to believe that such person was prohibited from receipt and possession of firearms.

## False Information in A&D Record as to Purchaser

2. 18 U.S.C. § 923(g)(1)(A), and 27 C.F.R. § 478.125(e), provide that each licensed dealer shall enter into a record each receipt and disposition of firearms. The sale or disposition of a firearm shall be recorded by the licensed dealer not later than 7 days following the date of such transaction and such record shall show the date of the sale or other disposition of each firearm, the name and address of the person to whom the firearm is transferred, or the name and license number of the person to whom transferred if such person is a licensee, or the firearms transaction record, Form 4473, serial number if the

ATF Form 4500, Notice of Revocation of License

licensed dealer transferring the firearm serially numbers the Forms 4473 and files them numerically.

18 U.S.C. §§ 922(m) and 924(a)(3)(A) and 27 C.F.R. § 478.128(c) provide that it is unlawful for any licensed dealer knowingly to make any false entry in, or fail to make appropriate entry in, or to fail to properly maintain, any record which is required to be kept pursuant to section 923 of Chapter 44 or regulations promulgated thereunder.

The Licensee, Dick's Sporting Goods, Inc. d/b/a Dick's Sporting Goods, Inc. #375, by and through its officers, agents and employees, willfully entered false information into its Acquisition and Disposition Record (A&D Record) in that on or about November 6, 2012, the Licensee recorded in its A&D Record the name of Laura Carolyn Brady, as being the transferee of a firearm, a Mossberg, Maverick, serial number MV84994S, when in fact the Licensee knew that Laura Carolyn Brady was not the true purchaser and transferee of the firearm and that said recording in its A&D Record was false.

### False Information on ATF Form 4473 as to Purchaser

3. 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c)(1) provide that prior to making an over-the-counter transfer of a firearm to a nonlicensee who is a resident of the State in which the licensee's business premises is located, the licensed dealer so transferring the firearm shall obtain a Form 4473 from the transferee showing, among other things, the transferee's name.

18 U.S.C. §§ 922(m) and 924(a)(3)(A), and 27 C.F.R. § 478.128(c) provide that it is unlawful for any licensed dealer knowingly to make any false entry in, or fail to make appropriate entry in, or to fail to properly maintain, any record which is required to be kept pursuant to section 923 of Chapter 44 or regulations promulgated thereunder.

The Licensee, Dick's Sporting Goods, Inc. d/b/a Dick's Sporting Goods, Inc. #375, by and through its officers, agents and employees, willfully maintained false statements and false entries on a Firearms Transaction Record, ATF Form 4473 (5300.9), (ATF Form 4473) a record required to be maintained by 18 U.S.C. § 923(g) and 27 C.F.R. § 478.124, in that on or about November 6, 2012, the Licensee maintained an ATF Form 4473 which recorded the name of Laura Carolyn Brady, of 70 Grove Dale St., Memphis, Tennessee, as being the transferee of a firearm, a Mossberg, Maverick, serial number MV84994S, when in fact the Licensee knew that Laura Carolyn Brady was not the true purchaser and transferee of such firearm.

ATF Form 4500, Notice of Revocation of License

Therefore, the Federal Firearms License referenced above is REVOKED under the authority of Title 18, United States Code, Section 923(e) and Title 27 Code of Federal Regulations, Section 478.73.

# Exhibit C
# Hearing Request

MARK BARNES*
CHRISTOPHER THOMAS '
REGINA FISHER†
KATHRYN CIANO††

\* Also Admitted in Arizona and Alaska
• Also Admitted in Arizona

## **Mark Barnes & Associates**

### A T T O R N E Y S

HEATHER HAMILTON **
OF COUNSEL

** Only Admitted in Maryland
† Only Admitted in Ohio
†† Only Admitted in Florida

December 6, 2013

Bureau of Alcohol, Tobacco, Firearms, and Explosives
Nashville Field Division
Attn: Mr. Kevin Boydston
Director of Industry Operations
5300 Maryland Way, Suite 200
Brentwood, TN 37027

RE:   **Request for Revocation Hearing for Dick's Sporting Goods, Inc. dba Dick's
Sporting Goods, Inc. #375 (License #1-62-157-01-3K-03207)**

Dear Mr. Boydston:

On November 26, 2013, Dick's Sporting Goods, Inc. dba Dick's Sporting Goods, Inc. #375 ("Dick's Store #375"), Federal Firearms License ("FFL") #1-62-157-01-3K-03207 received a Notice of Revocation of License ("Revocation Notice"), issued under 18 U.S.C. § 923(e). The Revocation Notice was dated November 21, 2013 and was issued by the Nashville Field Division of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). For your convenient reference, a true and correct copy of the Revocation Notice, as Dick's Store #375 received it, is attached hereto. As the Revocation Notice noted, Dick's Store #375 has the right under 18 U.S.C. § 923(f)(2) to request a hearing before ATF in this matter. Accordingly, and as per our brief discussion earlier today, please accept this letter as both our notice of appearance as counsel for Dick's Store #375 in this matter and our request, on our client's behalf, for a hearing in this matter.

We have been recently assigned by Dick's Sporting Goods, Inc. to address this matter so we are currently reviewing the case. However, if we may address any concerns you have regarding this matter, please do not hesitate to contact Mr. Mark Barnes at 202-626-007 or I can be reached at 202-626-0079. Otherwise, we look forward to hearing from you regarding the scheduling of a hearing in this matter.

Respectfully yours,

Christopher Thomas
Attorney at Law

CT:ct
Enclosure
By email to: Kevin.Boydson@ATF.gov
1350 I Street NW Suite 260  •  Washington, DC 20005  •  202.626.0089 *phone*  •  202.626.0088 *fax*

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

Original

# Notice of Revocation of License

In the matter of License Number  1-62-157-01-3K-03207  , as  a Dealer, Including Pawnbroker, in Firearms

Other than Destructive Devices  issued to:

Name and Address of Licensee *(Show number, street, city, State and ZIP Code)  (Begin typing one space below dots)*

Dick's Sporting Goods, Inc.
d/b/a Dick's Sporting Goods, Inc. #375
2393 N. Germantown Pkwy.
Memphis, Tennessee 38016

Notice Is Hereby Given That:

[✓] (1) Pursuant to section 923(e) of Title 18, U.S.C., and for the reasons stated in the page(s) attached to this form, having been afforded proper opportunity for a hearing, the license described above is revoked effective  15 days from the date of receipt  ;

[✓] (2) Pursuant to section 923(f)(2) of Title 18, U.S.C., you may file a request with the Director of Industry Operations (DIO), Bureau of Alcohol, Tobacco, Firearms and Explosives,  5300 Maryland Way, Suite 200, Brentwood, Tennessee 37027
*(Address)*
in duplicate, within 15 days after receipt of this notice, for a hearing to review the revocation of your license;

[✓] (3) If you request a hearing, it will be held as provided in 27 CFR Part 478; and

[✓] (4) If your request for a hearing is filed on time, the effective date of revocation of your license will be stayed pending review pursuant to the hearing.

| Date | Signature and Title of Bureau of Alcohol, Tobacco, Firearms and Explosives Official |
|---|---|
| 11/21/2013 | *Kevin Boydston*   Kevin L. Boydston, Director, Industry Operations |

I certify that on the date shown below I served the above notice on the person identified below by

[ ] Delivering a copy of the notice to the address shown below

[✓] Certified mail to the address shown below
7008 0500 0002 1621 3368

| Date Notice Served | Name of Person Served *(Please state if served on partner or officer of corporation)* |
|---|---|
| 11/21/2013 | Edward W. Stack, Chairman/CEO |

Address Where Notice Served

345 Court St. Coraopolis, PA. 15108

| Date | Signature of Person Serving Notice | Title |
|---|---|---|
| 11/21/2013 | *Kevin Boydston*  Kevin L. Boydston | Director, Industry Operations |

ATF Form 4500(5300.4)
Revised July 2005

ATF Form 4500, Notice of Revocation of License

203080:PRL
5372 NVL-13-211482

Dick's Sporting Goods, Inc.
d/b/a Dick's Sporting Goods, Inc. #375
2393 N. Germantown Pkwy.
Memphis, Tennessee 38016

Federal Firearms License No. 1-62-157-01-3K-03207

Under the provisions of 18 U.S.C. § 923(e) and 27 C.F.R. § 478.73, notice is hereby given of the revocation of the Federal firearms license specified above, in that the Director, Industry Operations, United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Nashville Field Division, has reason to believe that Dick's Sporting Goods, Inc. d/b/a Dick's Sporting Goods, Inc. #375, 2393 N. Germantown Pkwy., Memphis, Tennessee 38016, a Dealer, in Firearms Other than Destructive Devices, willfully violated the provisions of the Gun Control Act of 1968 as amended, 18 U.S.C. Chapter 44, and the regulations issued thereunder, 27 C.F.R. Part 478.

## Transfer to Person with Reason to Believe Prohibited

1.  18 U.S.C. § 922(d) and 27 C.F.R. § 478.99(c) provide that a licensed dealer shall not sell or otherwise dispose of any firearm or any ammunition to any person knowing or having reasonable cause to believe that such person is prohibited from receipt and possession of firearms.

    The Licensee, Dick's Sporting Goods, Inc. d/b/a Dick's Sporting Goods, Inc. #375, by and through its officers, agents and employees, on or about November 6, 2012, willfully transferred a firearm, a Mossberg, Maverick, serial number MV84994S, to Wayne Brady, knowing or having reasonable cause to believe that such person was prohibited from receipt and possession of firearms.

## False Information in A&D Record as to Purchaser

2.  18 U.S.C. § 923(g)(1)(A), and 27 C.F.R. § 478.125(e), provide that each licensed dealer shall enter into a record each receipt and disposition of firearms. The sale or disposition of a firearm shall be recorded by the licensed dealer not later than 7 days following the date of such transaction and such record shall show the date of the sale or other disposition of each firearm, the name and address of the person to whom the firearm is transferred, or the name and license number of the person to whom transferred if such person is a licensee, or the firearms transaction record, Form 4473, serial number if the

ATF Form 4500, Notice of Revocation of License

licensed dealer transferring the firearm serially numbers the Forms 4473 and files them numerically.

18 U.S.C. §§ 922(m) and 924(a)(3)(A) and 27 C.F.R. § 478.128(c) provide that it is unlawful for any licensed dealer knowingly to make any false entry in, or fail to make appropriate entry in, or to fail to properly maintain, any record which is required to be kept pursuant to section 923 of Chapter 44 or regulations promulgated thereunder.

The Licensee, Dick's Sporting Goods, Inc. d/b/a Dick's Sporting Goods, Inc. #375, by and through its officers, agents and employees, willfully entered false information into its Acquisition and Disposition Record (A&D Record) in that on or about November 6, 2012, the Licensee recorded in its A&D Record the name of Laura Carolyn Brady, as being the transferee of a firearm, a Mossberg, Maverick, serial number MV84994S, when in fact the Licensee knew that Laura Carolyn Brady was not the true purchaser and transferee of the firearm and that said recording in its A&D Record was false.

## False Information on ATF Form 4473 as to Purchaser

3. 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c)(1) provide that prior to making an over-the-counter transfer of a firearm to a nonlicensee who is a resident of the State in which the licensee's business premises is located, the licensed dealer so transferring the firearm shall obtain a Form 4473 from the transferee showing, among other things, the transferee's name.

18 U.S.C. §§ 922(m) and 924(a)(3)(A), and 27 C.F.R. § 478.128(c) provide that it is unlawful for any licensed dealer knowingly to make any false entry in, or fail to make appropriate entry in, or to fail to properly maintain, any record which is required to be kept pursuant to section 923 of Chapter 44 or regulations promulgated thereunder.

The Licensee, Dick's Sporting Goods, Inc. d/b/a Dick's Sporting Goods, Inc. #375, by and through its officers, agents and employees, willfully maintained false statements and false entries on a Firearms Transaction Record, ATF Form 4473 (5300.9), (ATF Form 4473) a record required to be maintained by 18 U.S.C. § 923(g) and 27 C.F.R. § 478.124, in that on or about November 6, 2012, the Licensee maintained an ATF Form 4473 which recorded the name of Laura Carolyn Brady, of 70 Grove Dale St., Memphis, Tennessee, as being the transferee of a firearm, a Mossberg, Maverick, serial number MV84994S, when in fact the Licensee knew that Laura Carolyn Brady was not the true purchaser and transferee of such firearm.

ATF Form 4500, Notice of Revocation of License

Therefore, the Federal Firearms License referenced above is REVOKED under the authority of Title 18, United States Code, Section 923(e) and Title 27 Code of Federal Regulations, Section 478.73.

# Exhibit D
# Hearing Notices

UNITED STATES OF AMERICA     * NVL-13-211482
                             *
IN THE MATTER OF THE NOTICE  * NASHVILLE FIELD DIVISION
OF REVOCATION OF LICENSE     * 5300 MARYLAND WAY, SUITE 200
ISSUED TO:                   * BRENTWOOD, TN 37027
                             *
DICK'S SPORTING GOODS, INC.  * DEPARTMENT OF JUSTICE
2393 N. GERMANTOWN PKWY.     * BUREAU OF ALCOHOL, TOBACCO,
MEMPHIS, TENNESSEE 38016     * FIREARMS AND EXPLOSIVES

## NOTICE OF HEARING

On November 21, 2013, a Notice of Revocation of License, ATF Form 4500, was issued to Dick's Sporting Goods, Inc. d/b/a Dick's Sporting Goods, Inc. #375, 2393 N. Germantown Pkwy. Memphis, Tennessee 38016.

By letter received on December 6, 2013, the licensee requested a hearing on the notice revoking the license by and through Christopher Thomas, Attorney at Law, Mark Barnes & Associates.

Therefore, notice is given that a hearing in the matter will be conducted in accordance with 27 C.P.R. Part 478, Subpart E, before Michael Reilly, Hearing Officer, Bureau of Alcohol, Tobacco, Firearms and Explosives at 9:00 am on January 15, 2014, at our ATF Field Office located at 2600 Thousand Oaks Blvd., Suite 2300 Memphis TN 38118. As provided in 27 C.P.R.§ 478.76, the licensee maybe represented at the hearing.

Issued at BRENTWOOD, TENNESSEE this _15th_ day of December, 2013.

KEVIN L. BOYDSTON
DIRECTOR OF INDUSTRY OPERATIONS
NASHVILLE FIELD DIVISION
BUREAU OF ALCOHOL, TOBACCO, FIREARMS
AND EXPLOSIVES



## Hearings

A determination has been made to deny your original or renewal application for a Federal firearms license or to revoke your existing Federal firearms license.

As indicated on the enclosed form, you have the right to request a hearing. This brochure provides general guidance and an overview of the hearing process for industry members that may assist you in making a decision to request a hearing, and to appropriately prepare for a hearing should you request one.

## Background

The Gun Control Act of 1968 and its implementing regulations specify certain licensing requirements for those intending to engage in a firearms business.

ATF is authorized to deny a license when an inspection reveals the applicant is not qualified to receive or not qualified to continue to hold the license. ATF may also revoke a license when it is determined that a current licensee is no longer eligible to continue licensed operations.

## Your Rights

ATF has made one of the above determinations in your case, issuing you either a Notice of Denial or a Notice of Revocation of License. You have the right to request a hearing to review the proposed denial or revocation action found in the notice you received. This is done by submitting written notification to the Director, Industry Operations (DIO) who issued your Notice. Timeliness is important. *You only have 15 days from your receipt of the Notice to request a hearing.*

Although you may hire an attorney, it is not required, although it may be in your interest to do so. That is your option.

## Hearing Overview

If you submit a letter requesting a hearing to the DIO in time, the DIO or his/her representative will begin to make arrangements for the hearing. The date and time of the hearing will be set by ATF, but you will be consulted as to your availability. ATF will also notify you of the location of the hearing, taking into consideration convenience to you and the availability of government office space that is close to you to conduct the hearing. Once the date, time, and place are set, you will be notified in writing (via certified mail, return receipt requested).

*NOTE:* Under no circumstances will you, your representative, or witnesses be permitted to bring firearms or any other

1

weapons to the hearing. The hearing will not begin, or will cease, if it is determined this policy has been violated.

The hearing is generally scheduled not later than 90 days from the date of the letter notifying you of the date, time, and location of the hearing. There are, however, limited circumstances that may require the hearing to be rescheduled for good cause, as determined by the DIO.

The hearing itself is informal in nature, and adherence to civil court rules and procedures is not required. There is no sworn testimony and formal courtroom procedures are not required. The hearing is recorded via audiotape recorder. The resulting tape, along with exhibits presented at the hearing, constitute the official record of the hearing.

***ATF does not videotape the hearing proceedings and you will not be allowed to videotape the hearing.*** You may make an audiotape recording of the proceedings, or have the proceedings recorded by a stenographer at your own expense, provided this recording is not disruptive to the proceedings. However, the ATF recording of the hearing is the official record of the proceeding.

## Hearing Officer

The hearing officer is designated by ATF. The selection of the hearing officer is dependent upon a number of factors, including the nature of your case. A hearing officer will be selected who has no prior knowledge of your case and has had no interactions with you or your licensed operations. In most cases, the assigned hearing officer will come from outside the

ATF field division in which your licensed business is located.

## Conduct of the Hearing

The hearing officer will ensure the proceedings are conducted in an orderly and professional manner. The purpose of the hearing is to allow both parties to fully present all relevant evidence and arguments regarding the denial or revocation of a license or permit. Most hearings require less than a single day to complete.

The government will be represented by an attorney and will present its evidence first. The government will generally call as a witness the ATF industry operations investigator(s) who conducted your application or compliance inspection, or other ATF employees who have relevant information concerning your case.

At the conclusion of the government's presentation, you will have the opportunity to respond. Make sure you state your case as clearly and factually as possible. The case you present will receive the same consideration by the hearing officer as the government's case. Be willing and prepared to address each violation described in the Notice you received. You may call witnesses. Your witnesses should be able to speak to the findings in the Notice, and may be, for example, the store manager, an employee, bookkeeper, or clerk. You may also present relevant evidence. Relevant evidence is evidence which tends to prove or disprove an issue at the hearing, such as whether the alleged violation occurred as stated in the Government's Notice of Denial or Revocation.

Both parties have the right to question all witnesses. The party calling a witness shall have the right to re-direct examination of the witness. You should need no legal training to state your case. The most important consideration is that both parties –you and the government – are given a chance to fully explain the findings and violations disclosed during the application inspection or compliance inspection.

When the hearing officer is satisfied all evidence and arguments have been fully presented by the parties, the hearing officer will advise you that the DIO will make a decision in the matter and will notify you of the final decision in writing.

Following completion of the hearing, the hearing officer prepares a factual report summarizing the proceedings. This report will be forwarded to the DIO, who makes the denial or revocation decision for ATF.

A license may be denied based on your failure to satisfy licensing requirements, or based on past willful violations.

Generally speaking, ATF will cite willful violations as the basis for revocation cases. Willful violations are those violations meeting the statutory requirement for denial or revocation. "Willfulness," as defined by the courts means the purposeful disregard of a known legal duty, or plain indifference to a licensee's legal obligation. ATF is not required to prove you intended to violate the law, only that you knew your legal obligation as a licensee, and you purposefully disregarded this obligation or were plainly indifferent to your obligation.

If, after review of the entire record, you failed to satisfy licensing requirements, or willful violations are found, the DIO may issue a final notice of denial or revocation, which will be sent to you via certified mail.

If you are not satisfied with the final decision of the DIO, you may appeal the decision to Federal district court within 60 days. The hearing proceedings may become part of the review.

If you have any questions concerning the
hearing, please contact the DIO for the ATF
division in which you are located.

| | | | |
|---|---|---|---|
| Atlanta, GA | (404) 417-2600 | Miami, FL | (305) 597-4800 |
| Baltimore, MD | (443) 965-2000 | Nashville, TN | (615) 565-1400 |
| Boston, MA | (617) 557-1200 | New Orleans, LA | (504) 841-7000 |
| Charlotte, NC | (704) 716-1800 | New York, NY | (646) 335-9000 |
| Chicago, IL | (312) 846-7200 | Newark, NJ | (973) 413-1179 |
| Columbus, OH | (614) 827-8400 | Philadelphia, PA | (215) 446-7800 |
| Dallas, TX | (469) 227-4300 | Phoenix, AZ | (602) 776-5400 |
| Denver, CO | (303) 575-7600 | San Francisco, CA | (925) 557-2800 |
| Detroit, MI | (313) 202-3400 | Seattle, WA | (206) 204-3205 |
| Houston, TX | (281) 716-8200 | St. Paul, MN | (651) 726-0200 |
| Kansas City, MO | (816) 559-0700 | Tampa, FL | (813) 202-7300 |
| Los Angeles, CA | (818) 265-2500 | Washington, DC | (202) 648-8020 |
| Louisville, KY | (502) 753-3400 | | |

## ATF Field Divsions



# Federal Government Building Laws and Regulations

*Inspection.* Packages, briefcases, and other containers in the immediate possession of visitors, employees, or other persons arriving on, working at, visiting, or departing from Federal property, are subject to inspection. A full search of a person and any vehicle driven or occupied by the person may accompany an arrest. (41 CFR 101-20.301)

*Admission to property.* Property shall be closed to the public during other than normal working hours. The closing of property will not apply to that space in those instances where the Government has approved the after-normal-working-hours use of buildings or portions thereof for activities authorized by subpart 101-20.4. During normal working hours, property shall be closed to the public only when situations require this action to ensure the orderly conduct of Government business. The decision to close the property shall be made by the designated official under the Occupant Emergency program after consultation with the buildings manager and the ranking representative of the Law Enforcement Branch responsible for protection of the facility or the area. The designated official is defined in Sec. 101-20.003(g) as the highest ranking official of the primary occupant agency, or the alternate highest ranking official or designee selected by mutual agreement by other occupant agency officials. When property, or a portion thereof, is closed to the public, admission to this property, or a portion, will be restricted to authorized persons who shall register upon entry to the property and shall, when requested, display Government or other identifying credentials to the Federal Protective Officers or other authorized individuals when entering, leaving, or while on the property. Failure to comply with any of the applicable provisions is a violation of these regulations. (41 CFR 101-20.302)

*Preservation of property.* The improper disposal of rubbish on property; the willful destruction of or damage to property; the theft of property; the creation of any hazard on property to persons or things; the throwing of articles of any kind from or at a building or the climbing upon ledges, fountains, or any part of the building, is prohibited. (41 CFR 101-20.303)

*Conformity with signs and directions.* Persons in and on property shall at all times comply with official signs of a prohibitory, regulatory, or directory nature and with the lawful direction of Federal Protective Officers and other authorized individuals. (41 CFR 101-20.304)

*Disturbances.* Any loitering, disorderly conduct, or other conduct on property which creates loud or unusual noise or a nuisance; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; or which prevents the general public from obtaining the administrative services provided on the property in a timely manner, is prohibited. (41 CFR 101-20.305)

*Gambling.* Participating in games for money or other personal property or the operating of gambling devices, the conduct of a lottery or pool, or the selling or purchasing of numbers tickets, in or on property is prohibited. This prohibition shall not apply to the vending or exchange of chances by licensed blind operators of vending facilities for any lottery set forth in a State law and authorized by section 2(a)(5) of the Randolph-Sheppard Act (20 U.S.C. 107, et seq.) (41 CFR 101-20.306)

*Alcoholic beverages and narcotics.* Operations of a motor vehicle while on the property by a person under the influence of alcoholic beverages, narcotic drugs, hallucinogens, marijuana, barbiturates, or amphetamines is prohibited. Entering upon the property, or while on the property, under the influence of or using or possessing any narcotic drugs, hallucinogens, marijuana, barbiturates, or amphetamines is prohibited. The prohibition shall not apply in cases where the drug is being used as prescribed for a patient by a licensed physician. Entering upon the property, or being on the property, under the influence of alcoholic beverages is prohibited. The use of alcoholic beverages on property is prohibited except, upon occasions and on property upon which the head of the responsible agency or his or her designee has for appropriate official uses granted an exemption in writing. The head of the responsible agency or his or her designee shall provide a copy of all exemptions granted to the buildings manager and the Chief, Law Enforcement Branch, or other authorized officials, responsible for the security of the property. (41 CFR 101-20.307)

*Soliciting, vending, and debt collection.* Soliciting alms, commercial or political soliciting, and vending of all kinds, displaying or distributing commercial advertising, or collecting private debts on GSA-controlled property is prohibited. This rule does not apply to: (a) National or local drives for funds for welfare, health, or other purposes as authorized by 5 CFR, parts 110 and 950, Solicitation of Federal Civilian and Uniformed Services Personnel for Contributions to Private Voluntary Organizations issued by the U.S. Office of Personnel Management under Executive Order 12353 of March 23, 1982, as amended, and sponsored or approved by the occupant agencies; (b) Concessions or personal notices posted by employees on authorized bulletin boards; (c) Solicitation of labor organization membership or dues authorized by occupant agencies under the Civil Service Reform Act of 1978 (Pub. L. 95-454); and (d) Lessee, or its agents and employees, with respect to space leased for commercial, cultural, educational, or recreational use under the Public Buildings Cooperative Use Act of 1976 (40 U.S.C. 490(a)(16)). Note: Public areas of GSA-controlled property may be used for other activities permitted in accordance with subpart 101-20.4. (41 CFR 101-20.308)

*Posting and distributing materials.* (a) Public Law 104-52, Section 636, prohibits the distribution of free samples of tobacco products in or around Federal buildings. (b) Posting or affixing materials, such as pamphlets, handbills, or flyers, on bulletin boards or elsewhere on GSA-controlled property is prohibited, except as authorized in Sec. 101-20.308 or when these displays are considered as part of authorized Government activities. Distribution of materials, such as pamphlets, handbills, or flyers is prohibited, except in the public areas of the property as defined in Sec. 101-20.003(z), unless conducted as part of authorized Government activities. Any person or organization proposing to distribute materials in a public area under this section shall first obtain a permit from the building manager under Subpart 101-20.4 and shall conduct distribution in accordance with the provisions of Subpart 101-20.4. Failure to comply with these provisions is a violation of these regulations. (41 CFR 101-20.309)

*Photographs for news, advertising, or commercial purposes.* Photographs may be taken in space occupied by a tenant agency only with the consent of the occupying agency concerned. Except where security regulations apply or a Federal court order or rule prohibits it, photographs for news purposes may be taken in entrances, lobbies, foyers, corridors, or auditoriums when used for public meetings. Subject to the foregoing prohibitions, photographs for advertising and commercial purposes may be taken only with written permission of an authorized official of the agency occupying the space where the photographs are to be taken. (41 CFR 101-20.310)

*Dogs and other animals.* Dogs and other animals, except seeing eye dogs, other guide dogs, and animals used to guide or assist handicapped persons, shall not be brought upon property for other than official purposes. (41 CFR 101-20.311)

*Vehicular and pedestrian traffic.* (a) Drivers of all vehicles entering or while on property shall drive in a careful and safe manner at all times and shall comply with the signals and directions of Federal protective officers or other authorized individuals and all posted traffic signs; (b) The blocking of entrances, driveways, walks, loading platforms, or fire hydrants on property is prohibited; and (c) Except in emergencies, parking on property is not allowed without a permit. Parking without authority, parking in unauthorized locations or in locations reserved for other persons, or parking contrary to the direction of posted signs is prohibited. Vehicles parked in violation, where warning signs are posted, shall be subject to removal at the owners' risk and expense. This paragraph may be supplemented from time to time with the approval of the Regional Administrator by the issuance and posting of such specific traffic directives as may be required, and when so issued and posted such directives shall have the same force and effect as if made a part thereof. Proof that a motor vehicle was parked in violation of these regulations or directives may be taken as prima facie evidence that the registered owner was responsible for the violation. (41 CFR 101-20.312)

*Explosives.* No person entering or while on property shall carry or possess explosives, or items intended to be used to fabricate an explosive or incendiary device, either openly or concealed, except for official purposes. (Weapons, see title 18, U.S. Code 930 (41 CFR 101-20.313)

*Nondiscrimination.* There shall be no discrimination by segregation or otherwise against any person or persons because of race, creed, sex, color, or national origin in furnishing or by refusing to furnish to such person or persons the use of any facility of a public nature, including all services, privileges, accommodations, and activities provided thereby on the property. (41 CFR 101-20.314)

*Penalties and other laws.* Whoever shall be found guilty of violating any rule or regulations in this subpart 101-20.3 while on any property under the charge and control of the U.S. General Services Administration is subject to a fine of not more than $50 or imprisonment of not more than 30 days, or both (See title 40 U.S. Code 318c.) Nothing in these rules and regulations shall be construed to abrogate any other Federal laws or regulations or any State and local laws and regulations applicable to any area in which the property is situated (section 205(c), 63 U.S. Statutes, 390; 40 U.S. Code 486(c)).(41CFR101-20.315)

Title 41 Code of Federal Regulations Subpart 101-20.3.--Conduct on Federal Property

---

**WARNING**
**Title 18, United States Code, Section 930**
**WEAPONS PROHIBITED**
Federal Law prohibits the knowing possession or the causing to be present of firearms or other dangerous weapons in Federal Facilities and Federal Court Facilities by all persons not specifically authorized by Title 18 United Sates Code, Section 930 (c). Violators shall be subject to a fine and/or imprisonment for periods up to five years.

| | |
|---|---|
| UNITED STATES OF AMERICA | * NVL-13-212482 |
| | * |
| IN THE MATTER OF THE NOTICE OF REVOCATION OF LICENSE ISSUED TO: | * NASHVILLE FIELD DIVISION |
| | * 5300 MARYLAND WAY, SUITE 200 |
| | * BRENTWOOD, TN 37027 |
| | * |
| DICK'S SPORTING GOODS, INC 2393 N. GERMANTOWN PKWY MEMPHIS TENNESSEE 38016 | * DEPARTMENT OF JUSTICE |
| | * BUREAU OF ALCOHOL, TOBACCO, |
| | * FIREARMS AND EXPLOSIVES |

## NOTICE OF HEARING

On November 21, 2013, a Notice of Revocation of License, ATF Form 4500, was issued to Dick's Sporting Goods, Inc. d/b/a Dick's Sporting Goods, Inc. # 375 2393 N. Pkwy. Memphis, Tennessee 38016.

By letter received on December 6, 2013, the licensee requested a hearing on the notice revoking the license by and through Christopher Thomas, Attorney at law, Mark Barnes & Associates. At the request of the licensees counsel, the Director of Industry Operations agreed to delay the hearing previously scheduled for January 15, 2014.

Therefore, notice is given that a hearing in the matter will be conducted in accordance with 27 C.F.R. Part 478, Subpart E, before Michael T. Reilly, Hearing Officer, Bureau of Alcohol, Tobacco, Firearms and Explosives at 9:00 am on February 5, 2014, at our ATF Field Office located at 2600 Thousand Oaks Blvd., Suite 2300 Memphis, Tennessee 38118. As provided in 27 C.F.R.§ 478.76, the licensee maybe represented at the hearing.

Issued at BRENTWOOD, TENNESSEE this 3rd day of JANUARY, 2014.

KEVIN L. BOYDSTON
DIRECTOR OF INDUSTRY OPERATIONS
NASHVILLE FIELD DIVISION
BUREAU OF ALCOHOL, TOBACCO, FIREARMS
AND EXPLOSIVES



## Hearings

A determination has been made to deny your original or renewal application for a Federal firearms license or to revoke your existing Federal firearms license.

As indicated on the enclosed form, you have the right to request a hearing. This brochure provides general guidance and an overview of the hearing process for industry members that may assist you in making a decision to request a hearing, and to appropriately prepare for a hearing should you request one.

## Background

The Gun Control Act of 1968 and its implementing regulations specify certain licensing requirements for those intending to engage in a firearms business.

ATF is authorized to deny a license when an inspection reveals the applicant is not qualified to receive or not qualified to continue to hold the license. ATF may also revoke a license when it is determined that a current licensee is no longer eligible to continue licensed operations.

## Your Rights

ATF has made one of the above determinations in your case, issuing you either a Notice of Denial or a Notice of Revocation of License. You have the right to request a hearing to review the proposed denial or revocation action found in the notice you received. This is done by submitting written notification to the Director, Industry Operations (DIO) who issued your Notice. Timeliness is important. *You only have 15 days from your receipt of the Notice to request a hearing.*

Although you may hire an attorney, it is not required, although it may be in your interest to do so. That is your option.

## Hearing Overview

If you submit a letter requesting a hearing to the DIO in time, the DIO or his/her representative will begin to make arrangements for the hearing. The date and time of the hearing will be set by ATF, but you will be consulted as to your availability. ATF will also notify you of the location of the hearing, taking into consideration convenience to you and the availability of government office space that is close to you to conduct the hearing. Once the date, time, and place are set, you will be notified in writing (via certified mail, return receipt requested).

***NOTE:*** Under no circumstances will you, your representative, or witnesses be permitted to bring firearms or any other

weapons to the hearing. The hearing will not begin, or will cease, if it is determined this policy has been violated.

The hearing is generally scheduled not later than 90 days from the date of the letter notifying you of the date, time, and location of the hearing. There are, however, limited circumstances that may require the hearing to be rescheduled for good cause, as determined by the DIO.

The hearing itself is informal in nature, and adherence to civil court rules and procedures is not required. There is no sworn testimony and formal courtroom procedures are not required. The hearing is recorded via audiotape recorder. The resulting tape, along with exhibits presented at the hearing, constitute the official record of the hearing.

***ATF does not videotape the hearing proceedings and you will not be allowed to videotape the hearing.*** You may make an audiotape recording of the proceedings, or have the proceedings recorded by a stenographer at your own expense, provided this recording is not disruptive to the proceedings. However, the ATF recording of the hearing is the official record of the proceeding.

## Hearing Officer

The hearing officer is designated by ATF. The selection of the hearing officer is dependent upon a number of factors, including the nature of your case. A hearing officer will be selected who has no prior knowledge of your case and has had no interactions with you or your licensed operations. In most cases, the assigned hearing officer will come from outside the

ATF field division in which your licensed business is located.

## Conduct of the Hearing

The hearing officer will ensure the proceedings are conducted in an orderly and professional manner. The purpose of the hearing is to allow both parties to fully present all relevant evidence and arguments regarding the denial or revocation of a license or permit. Most hearings require less than a single day to complete.

The government will be represented by an attorney and will present its evidence first. The government will generally call as a witness the ATF industry operations investigator(s) who conducted your application or compliance inspection, or other ATF employees who have relevant information concerning your case.

At the conclusion of the government's presentation, you will have the opportunity to respond. Make sure you state your case as clearly and factually as possible. The case you present will receive the same consideration by the hearing officer as the government's case. Be willing and prepared to address each violation described in the Notice you received. You may call witnesses. Your witnesses should be able to speak to the findings in the Notice, and may be, for example, the store manager, an employee, bookkeeper, or clerk. You may also present relevant evidence. Relevant evidence is evidence which tends to prove or disprove an issue at the hearing, such as whether the alleged violation occurred as stated in the Government's Notice of Denial or Revocation.

Both parties have the right to question all witnesses. The party calling a witness shall have the right to re-direct examination of the witness. You should need no legal training to state your case. The most important consideration is that both parties —you and the government – are given a chance to fully explain the findings and violations disclosed during the application inspection or compliance inspection.

When the hearing officer is satisfied all evidence and arguments have been fully presented by the parties, the hearing officer will advise you that the DIO will make a decision in the matter and will notify you of the final decision in writing.

Following completion of the hearing, the hearing officer prepares a factual report summarizing the proceedings. This report will be forwarded to the DIO, who makes the denial or revocation decision for ATF.

A license may be denied based on your failure to satisfy licensing requirements, or based on past willful violations.

Generally speaking, ATF will cite willful violations as the basis for revocation cases. Willful violations are those violations meeting the statutory requirement for denial or revocation. "Willfulness," as defined by the courts means the purposeful disregard of a known legal duty, or plain indifference to a licensee's legal obligation. ATF is not required to prove you intended to violate the law, only that you knew your legal obligation as a licensee, and you purposefully disregarded this obligation or were plainly indifferent to your obligation.

If, after review of the entire record, you failed to satisfy licensing requirements, or willful violations are found, the DIO may issue a final notice of denial or revocation, which will be sent to you via certified mail.

If you are not satisfied with the final decision of the DIO, you may appeal the decision to Federal district court within 60 days. The hearing proceedings may become part of the review.

# EXPLANATION OF THE HEARING PROCESS

If you have any questions concerning the
hearing, please contact the DIO for the ATF
division in which you are located.

| | |
|---|---|
| Atlanta, GA | (404) 417-2600 |
| Baltimore, MD | (443) 965-2000 |
| Boston, MA | (617) 557-1200 |
| Charlotte, NC | (704) 716-1800 |
| Chicago, IL | (312) 846-7200 |
| Columbus, OH | (614) 827-8400 |
| Dallas, TX | (469) 227-4300 |
| Denver, CO | (303) 575-7600 |
| Detroit, MI | (313) 202-3400 |
| Houston, TX | (281) 716-8200 |
| Kansas City, MO | (816) 559-0700 |
| Los Angeles, CA | (818) 265-2500 |
| Louisville, KY | (502) 753-3400 |
| Miami, FL | (305) 597-4800 |
| Nashville, TN | (615) 565-1400 |
| New Orleans, LA | (504) 841-7000 |
| New York, NY | (646) 335-9000 |
| Newark, NJ | (973) 413-1179 |
| Philadelphia, PA | (215) 446-7800 |
| Phoenix, AZ | (602) 776-5400 |
| San Francisco, CA | (925) 557-2800 |
| Seattle, WA | (206) 204-3205 |
| St. Paul, MN | (651) 726-0200 |
| Tampa, FL | (813) 202-7300 |
| Washington, DC | (202) 648-8020 |

## ATF Field Divsions



Industry Operations Regions
North (No Hatching)
South (Hatching)

ATF Field Divisions
Atlanta, Baltimore, Boston, Charlotte, Chicago, Columbus, Dallas, Denver, Detroit, Houston, Kansas City, Los Angeles, Louisville, Miami, Nashville, New Orleans, New York, Newark, Philadelphia, Phoenix, Saint Paul, San Francisco, Seattle, Tampa, Washington

# Federal Government Building Laws and Regulations

*Inspection.* Packages, briefcases, and other containers in the immediate possession of visitors, employees, or other persons arriving on, working at, visiting, or departing from Federal property, are subject to inspection. A full search of a person and any vehicle driven or occupied by the person may accompany an arrest. (41 CFR 101-20.301)

*Admission to property.* Property shall be closed to the public during other than normal working hours. The closing of property will not apply to that space in those instances where the Government has approved the after-normal-working-hours use of buildings or portions thereof for activities authorized by subpart 101-20.4. During normal working hours, property shall be closed to the public only when situations require this action to ensure the orderly conduct of Government business. The decision to close the property shall be made by the designated official under the Occupant Emergency program after consultation with the buildings manager and the ranking representative of the Law Enforcement Branch responsible for protection of the facility or the area. The designated official is defined in Sec. 101-20.003(g) as the highest ranking official of the primary occupant agency, or the alternate highest ranking official or designee selected by mutual agreement by other occupant agency officials. When property, or a portion thereof, is closed to the public, admission to this property, or a portion, will be restricted to authorized persons who shall register upon entry to the property and shall, when requested, display Government or other identifying credentials to the Federal Protective Officers or other authorized individuals when entering, leaving, or while on the property. Failure to comply with any of the applicable provisions is a violation of these regulations. (41 CFR 101-20.302)

*Preservation of property.* The improper disposal of rubbish on property; the willful destruction of or damage to property; the theft of property; the creation of any hazard on property to persons or things; the throwing of articles of any kind from or at a building or the climbing upon statues, fountains, or any part of the building, is prohibited. (41 CFR 101-20.303)

*Conformity with signs and directions.* Persons in and on property shall at all times comply with official signs of a prohibitory, regulatory, or directory nature and with the lawful direction of Federal Protective Officers and other authorized individuals. (41 CFR 101-20.304)

*Disturbances.* Any loitering, disorderly conduct, or other conduct on property which creates loud or unusual noise or a nuisance; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; or which prevents the general public from obtaining the administrative services provided on the property in a timely manner, is prohibited. (41 CFR 101-20.305)

*Gambling.* Participating in games for money or other personal property or the operating of gambling devices, the conduct of a lottery or pool, or the selling or purchasing of numbers tickets, in or on property is prohibited. This prohibition shall not apply to the vending or exchange of chances by licensed blind operators of vending facilities for any lottery set forth in a State law and authorized by section 2(a)(5) of the Randolph-Sheppard Act (20 U.S.C. 107, et seq.) (41 CFR 101-20.306)

*Alcoholic beverages and narcotics.* Operations of a motor vehicle while on the property by a person under the influence of alcoholic beverages, narcotic drugs, hallucinogens, marijuana, barbiturates, or amphetamines is prohibited. Entering upon the property, or while on the property, under the influence of or using or possessing any narcotic drugs, hallucinogens, marijuana, barbiturates, or amphetamines is prohibited. The prohibition shall not apply in cases where the drug is being used or prescribed for a patient by a licensed physician. Entering upon the property, or being on the property, under the influence of alcoholic beverages is prohibited. The use of alcoholic beverages on property is prohibited except, upon occasions and on property upon which the head of the responsible agency or his or her designee has for appropriate official uses granted an exemption in writing. The head of the responsible agency or his or her designee shall provide a copy of all exemptions granted to the buildings manager and the Chief, Law Enforcement Branch, or other authorized officials, responsible for the security of the property. (41 CFR 101-20.307)

*Soliciting, vending, and debt collection.* Soliciting alms, commercial or political soliciting, and vending of all kinds, displaying or distributing commercial advertising, or collecting private debts on GSA-controlled property is prohibited. This rule does not apply to: (a) National or local drives for funds for welfare, health, or other purposes as authorized by 5 CFR, parts 110 and 950, Solicitation of Federal Civilian and Uniformed Services Personnel for Contributions to Private Voluntary Organizations issued by the U.S. Office of Personnel Management under Executive Order 12353 of March 23, 1982, as amended, and sponsored or approved by the occupant agencies; (b) Concessions or personal notices posted by employees on authorized bulletin boards; (c) Solicitation of labor organization membership or dues authorized by occupant agencies under the Civil Service Reform Act of 1978 (Pub. L. 95-454); and (d) Lessee, or its agents and employees, with respect to space leased for commercial, cultural, educational, or recreational use under the Public Buildings Cooperative Use Act of 1976 (40 U.S.C. 490(a)(16)). Note: Public areas of GSA-controlled property may be used for other activities permitted in accordance with subpart 101-20.4. (41 CFR 101-20.308)

*Posting and distributing materials.* (a) Public Law 104-52, Section 636, prohibits the distribution of free samples of tobacco products in or around Federal buildings. (b) Posting or affixing materials, such as pamphlets, handbills, or flyers, on bulletin boards or elsewhere on GSA-controlled property is prohibited, except as authorized in Sec. 101-20.308 or when these displays are conducted as part of authorized Government activities. Distribution of materials, such as pamphlets, handbills, or flyers is prohibited, except in the public areas of the property as defined in Sec. 101-20.003(z), unless conducted as part of authorized Government activities. Any person or organization proposing to distribute materials in a public area under this section shall first obtain a permit from the building manager under Subpart 101-20.4 and shall conduct distribution in accordance with the provisions of Subpart 101-20.4. Failure to comply with those provisions is a violation of these regulations. (41 CFR 101-20.309)

*Photographs for news, advertising, or commercial purposes.* Photographs may be taken in space occupied by a tenant agency only with the consent of the occupying agency concerned. Except where security regulations apply or a Federal court order or rule prohibits it, photographs for news purposes may be taken in entrances, lobbies, foyers, corridors, or auditoriums when space for public meetings. Subject to the foregoing prohibitions, photographs for advertising and commercial purposes may be taken only with written permission of an authorized official of the agency occupying the space where the photographs are to be taken. (41 CFR 101-20.310)

*Dogs and other animals.* Dogs and other animals, except seeing eye dogs, other guide dogs, and animals used to guide or assist handicapped persons, shall not be brought upon property for other than official purposes. (41 CFR 101-20.311)

*Vehicular and pedestrian traffic.* (a) Drivers of all vehicles entering or while on property shall drive in a careful and safe manner at all times and shall comply with the signals and directions of Federal protective officers or other authorized individuals and all posted traffic signs; (b) The blocking of entrances, driveways, walks, loading platforms, or fire hydrants on property is prohibited; and (c) Except in emergencies, parking on property is not allowed without a permit. Parking without authority, parking in unauthorized locations or in locations reserved for other persons, or parking contrary to the direction of posted signs is prohibited. Vehicles parked in violation, where warning signs are posted, shall be subject to removal at the owners' risk and expense. This paragraph may be supplemented from time to time with the approval of the Regional Administrator by the issuance and posting of such specific traffic directives as may be required, and when so issued and posted such directives shall have the same force and effect as if made a part thereof. Proof that a motor vehicle was parked in violation of these regulations or directives may be taken as prima facie evidence that the registered owner was responsible for the violation. (41 CFR 101-20.312)

*Explosives.* No person entering or while on property shall carry or possess explosives, or items intended to be used to fabricate an explosive or incendiary device, either openly or concealed, except for official purposes. (Weapons, see title 18, U.S. Code 930 (41 CFR 101-20.313)

*Nondiscrimination.* There shall be no discrimination by segregation or otherwise against any person or persons because of race, creed, sex, color, or national origin in furnishing or by refusing to furnish to such person or persons the use of any facility of a public nature, including all services, privileges, accommodations, and activities provided thereby on the property. (41 CFR 101-20.314)

*Penalties and other laws.* Whoever shall be found guilty of violating any rule or regulations in this subpart 101-20.3 while on any property under the charge and control of the U.S. General Services Administration is subject to a fine of not more than $50 or imprisonment of not more than 30 days, or both (See title 40 U.S. Code 318c.) Nothing in these rules and regulations shall be construed to abrogate any other Federal laws or regulations or any State and local laws and regulations applicable to any area in which the property is situated (section 205(c), 63 U.S. Statutes, 390; 40 U.S. Code 486(c).(41CFR101-20.315)

Title 41 Code of Federal Regulations Subpart 101-20.3--Conduct on Federal Property

---

**WARNING**
**Title 18, United States Code, Section 930**
**WEAPONS PROHIBITED**

**Federal Law prohibits the knowing possession or the causing to be present of firearms or other dangerous weapons in Federal Facilities and Federal Court Facilities by all persons not specifically authorized by Title 18 United Sates Code, Section 930 (c).**
**Violators shall be subject to a fine and/or imprisonment for periods up to five years.**

# Exhibit A
# Report of
# Violations

# Report of Violations

## Instructions

Please write firmly with a ball point pen when completing this form. ATF officers will prepare this form in triplicate. The original copy will be given to the proprietor or a responsible representative. The remaining copies will be submitted with the completed inspection report. Supervisors will detach one copy from the completed report for their files.

| Name of Proprietor | Street Address | City | State | Zip Code | County | Page 1 of |
|---|---|---|---|---|---|---|
| Dick's Sporting Goods, Inc<br>Dick's Sporting Goods, Inc (#375) | 2393 N. Germantown Pkwy | Memphis | TN | 37016- | Shelby | 2 Pages |

| License/Permit/Registry Number (If any) | Expiration Date | Date(s) or Period of Inspection |
|---|---|---|
| 1621570013K05207 | 10/1/2013 | 06/11/2013 through 06/14/2013 |

## Inspection Results

An examination of your premises, records and operations has disclosed the following violations which have been explained to you:

---

**Number:** 1

**Nature of Violation:**
Failure to properly record the correct disposition name and address for a Stoeger model P350 shotgun identified by serial number 1227962 acquired on 3/28/13 and transferred on 3/28/13.

**Citation:** 27 CFR 478.125(e)

Date Corrections to be Made:
*(If not corrected immediately)*

Corrective Action to be Taken: Record the correct disposition.
*(If not corrected immediately)*

---

**Number:** 2

**Nature of Violation:**
Failure to enter the true identity of a buyer into the A&D Record (by entering a straw purchaser into the record). On November 6, 2012 Jason Wayne Brady, of 70 Grove Dale St., Memphis, TN, attempted to purchase a firearm, a Mossberg, Maverick, SN MV849994S and received a denied response by TICS. On the same day, within nine (9) hours, Laura Carolyn Brady, of 70 Grove Dale St., Memphis, TN, purchased the same firearm from the same clerk.

**Citation:** 27 CFR 478.128(c)

Date Corrections to be Made:
*(If not corrected immediately)*

Corrective Action to be Taken: Person completing the Form 4473 must be the actual buyer of the firearm.
*(If not corrected immediately)*

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Report of Violations

## Instructions

Please write firmly with a ball point pen when completing this form. ATF officers will prepare this form in triplicate. The original copy will be given to the proprietor or a responsible representative. The remaining copies will be submitted with the completed inspection report. Supervisors will detach one copy from the completed report for their files.

| Name of Proprietor | Street Address | City | State | Zip Code | County | |
|---|---|---|---|---|---|---|
| Dick's Sporting Goods, Inc<br>Dick's Sporting Goods, Inc (#8375) | 2593 N. Germantown Pkwy | Memphis | TN | 37016- | Shelby | Page 2 of<br>2 Pages |

| License/Permit/Registry Number (If any)<br>16215701313K03207 | Expiration Date<br>10/1/2013 | Date(s) or Period of Inspection<br>06/11/2013 through 06/14/2013 |
|---|---|---|

An examination of your premises, records and operations has disclosed the following violations which have been explained to you:

### Inspection Results

| | Date Corrections to be Made:<br>*(If not corrected immediately)* | Corrective Action to be Taken:<br>*(If not corrected immediately)* |
|---|---|---|

**Number: 3**

**Nature of Violation:**

Failure to stop the transfer of a firearm to a person while knowing or having reasonable cause to believe that such person is prohibited (by transferring a firearm thru a straw purchase). On November 6, 2012 Jason Wayne Brady, of 70 Grove Date St., Memphis, TN, attempted to purchase a firearm, a Mossberg, Maverick, S/N MV849945 and received a denied response by NICS. On the same day, within nine (9) hours, Laura Carolyn Brady, of 70 Grove Date St., Memphis, TN, purchased the same firearm from the same clerk.

**Citation:** 27 CFR 478.99(c)

Person completing the Form 4473 must be the actual buyer of the firearm.

---

For Official Use Only

| I Have Received a Copy of This Report of Violations | *(Proprietor's signature and title)* | Date<br>06/18/2013 |
|---|---|---|
| Signature and Title of ATF Officer | CWR Ross, Interim Store Mgr | Date<br>6/18/13 |

ATF E-Form 5030.5
Revised April 2005