

U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

www.atf.gov

| | |
|---|---|
| MEMORANDUM TO: | Director of Industry Operations<br>Nashville Field Division |
| FROM: | Michael T. Reilly<br>Hearing Officer, Firearms & Explosives Services Division |
| SUBJECT: | Report on Hearing on the Notice of<br>Revocation of License<br>Dick's Sporting Goods Inc.<br>d/b/a Dick's Sporting Goods, Inc. #375<br>2393 N. Germantown, Pkwy<br>Memphis, TN 38016<br>1-62-157-01-3K-03207 |

## INTRODUCTION

On November 26, 2013, a Notice of Revocation of License, ATF Form 4500 was delivered to Dick's Sporting Goods, Inc., d/b/a Dick's Sporting Goods Inc., #375, 2393 N. Germantown Pkwy., Memphis, Tennessee 38016 by certified mail. In a letter dated December 6, 2013, a request for a hearing on the Notice was received by the Director of Industry Operations, ATF Nashville Field Division. The initial Notice of Hearing was issued on December 18, 2013. An amended Notice of Hearing was issued on January 3, 2014. An informal hearing was held on February 5, 2014 at the ATF Memphis Field Office located in Suite 2300 at 2600 Thousand Oaks Blvd., Memphis, TN 38118 under the provisions of Section 923(f) of Title 18, United States Code, and Section 478.74 Title 27, Code of Federal Regulations. Participating at the hearing were Hearing Officer Michael T. Reilly, Counsel for the ATF Nashville Field Division J. Patricia Lancaster and Todd Martin, ATF Industry Operations Investigator (IOI) Thomas Williams, ATF Special Agent (SA) Richard Howard, Counsel for the Licensee Mark Barnes, Industry Consultant Wally A. Nelson, Vice President and Chief Compliance Officer for Dicks' Sporting Goods Inc. Mary Tortorice, Manager for Loss Prevention / Compliance & Logistics for Dick's Sporting Goods Inc. Kevin Dodson.

In the Notice of Denial the Government asserted the following:

Under the provisions of 18 U.S.C. § 923(e) and 27 C.F.R. § 478.73, notice is hereby given of the revocation of the Federal firearms license specified above, in that the

Director, Industry Operations, United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Nashville Field Division, has reason to believe that Dick's Sporting Goods, Inc., d/b/a Dick's Sporting Goods Inc., #375, 2393 N. Germantown Pkwy., Memphis, Tennessee 38016, a dealer in firearms other than Destructive Devices, willfully violated the provisions of the Gun Control Act of 1968, 18 U.S.C. Chapter 44, and the regulations issued thereunder, 27 CFR Part 478.

## Transfer to Person with Reason to Believe Prohibited

1. Title 18 U.S.C. § 922(d) and 27 C.F.R. § 478.99(c) provide that a licensed dealer shall not sell or otherwise dispose of any firearm or any ammunition to any person knowing or having reasonable cause to believe that such person is prohibited from receipt and possession of firearms.

    The Licensee, Dick's Sporting Goods, Inc. d/b/a Dick's Sporting Goods, Inc. #375, by and through its officer's, agents and employees, on or about November 6, 2012, willfully transferred a firearm, a Mossberg, Maverick, serial number MV84994S, to Wayne Brady[1], knowing or having reasonable cause to believe that such person was prohibited from receipt and possession of firearms.

## False Information in A&D Record as to Purchaser

2. Title 18 U.S.C. §§ 922(g)(1)(A) and 27 C.F.R. § 478.125(e) provide that a licensed dealer shall enter into a record each receipt and disposition of firearms. The sale or disposition of a firearm shall be recorded by the licensed dealer not later than 7 days following the date of such disposition of each firearm, the name and address of the person to whom the firearm is transferred, or the name and license number of the person to whom transferred if such person is a licensee, or the firearms transaction record, Form 4473, serial number if the licensed dealer transferring the firearm serially numbers the Forms 4473 and files them numerically.

    Title 18 U.S.C. §§ 922(m) and 924(a)(3)(A) and 27 C.F.R. § 478.128(c) provide that it is unlawful for any licensed dealer knowingly make any false entry in, or fail to make appropriate entry in, or fail to properly maintain, any record which is required to be kept pursuant to section 923 of Chapter 44 or regulation promulgated thereunder.

    The Licensee, Dick's Sporting Goods, Inc. d/b/a Dick's Sporting Goods, Inc. #375, by and through its officer's, agents and employees, willfully entered false information into its Acquisition & Disposition Record (A&D Record) in that on or about November 6, 2012, the Licensee recorded in its A&D Record the name

---

[1] The correct name of the prohibited person is Jason Wayne Brady

of Laura Carolyn Brady, as being the transferee of a firearm, a Mossberg, Maverick, serial number MV84994S, when in fact the Licensee knew that Laura Carolyn Brady was not the true purchaser and transferee of the firearm and that said recording in the A&D Record was false.

## False Information on ATF Form 4473 as to Purchaser

3. Title 18 U.S.C. § 922(g)(1)(A) and 27 C.F.R. § 478.124(c)(1) provide that prior to making an over the counter transfer of a firearm to a non licensee who is a resident of the State in which the licensee's business premises are located, the licensed dealer so transferring the firearm shall obtain a Form 4473 from the transferee showing, among other things, the transferee's name.

Title 18 U.S.C. §§ 922(m) and 924(a)(3)(A) and 27 C.F.R. § 478.128(c) provide that it is unlawful for any licensed dealer knowingly make a any false entry in, or fail to make appropriate entry in, or fail to properly maintain, any record which is required to be kept pursuant to section 923 of Chapter 44 or regulation promulgated thereunder

Licensee, Dick's Sporting Goods, Inc. d/b/a Dick's Sporting Goods, Inc. #375, by and through its officer's, agents and employees, willfully maintained false statements and false entries on a Firearms Transaction Record, ATF Form 4473 (5300.9), (ATF Form 4473) a record required to be maintained by 18 U.S.C. § 923(g) and 27 C.F.R. § 478.124, in that on or about November 6, 2012, the Licensee maintained an ATF Form 4473 which recorded the name of Laura Carolyn Brady, of 70 Grove Dale St., Memphis, Tennessee, as being the transferee of a firearm, a Mossberg, Maverick, serial number MV84994S, when in fact the Licensee knew that Laura Carolyn Brady was not the true purchaser and transferee of such firearm.

## GOVERNMENT PRESENTATION

Testimony of IOI Thomas Williams

IOI Williams conducted a compliance inspection at Dick's Sporting Goods Inc., Store # 375 in June of 2013. This inspection resulted in the Licensee being cited for three violations which were recorded on ATF Form 5030.5 Report of Violations (**Government Exhibit 7**). IOI Williams stated that he reviewed each violation with three representatives[2] of Dick's Store # 375 at the conclusion of the inspection.

---

[2] Loss Prevention Mgr.Carf, Acting Store Manager Pounds, District Mgr. Silva

In describing the circumstances of Count 1 of the Notice) (violation # 3 of the Report of Violations-), IOI Williams stated that:

On November 6, 2012 Jason Wayne Brady, who resides at 70 Grove Dale St. Memphis, TN 38120 went to Dicks Sporting Goods Inc., (Store #375) at 2393 Germantown Pkwy in Memphis TN 38016 and attempted to purchase a Mossberg Maverick 12 gauge shotgun from the Licensee. The Dick's employee that provided customer service to Mr. Brady for this attempted transaction was Sales Associate Matthew Kruger. After the required information was recorded on Sections A & B of the Firearms Transaction Record (ATF Form 4473- **Government Exhibit 8**), Mr. Kruger, initiated an instant criminal records check on Mr. Brady. The result of that check was "Denied" (**Government Exhibits 8 & 12**). The transaction was terminated and the Mossberg shotgun was not transferred to Mr. Brady.

On November 6, 2012, approximately 8 or 9 hours after Mr. Brady was denied the shotgun, Laura Carolyn Brady, who resides at 70 Grove Dale St. Memphis, TN 38120 went to Dick's Sporting Goods Inc. (Store #375) at 2393 Germantown Pkwy in Memphis TN 38016 and sought to purchase a Mossberg 12 gauge shotgun from the Licensee. The Dick's employee that provided customer service to Mrs. Brady was Sales Associate Matthew Kruger. After the required information was recorded on Sections A & B of the Firearms Transaction Record (ATF Form 4473) Mr. Kruger, initiated an instant criminal records check on Mrs. Brady (**Government Exhibit 10**). The result of that check was "Proceed" (**Government Exhibits 10 & 12**), the transaction was completed, and the Mossberg shotgun was transferred to Mrs. Brady.

Laura Carolyn Brady is the wife of Jason Wayne Brady. They reside together at 70 Grove Dale St. Memphis, TN 38120. The Mossberg shotgun that was transferred to Mrs. Brady was the same shotgun that Mr. Brady attempted to purchase earlier that day. Because each attempt by Mr. & Mrs. Brady to purchase the firearm was handled by the same sales associate, IOI Williams concluded that the firearm was transferred to someone, who the Licensee knew or had reasonable cause to believe, was prohibited from possessing a firearm. IOI Williams stated his belief that Jason Brady was the actual purchaser of the firearm.

In support of the Government's assertion that Sales Associate Krueger knew, or had reasonable cause to believe that Laura Brady was a straw purchaser for Jason Brady, **Government Exhibit 11** was introduced. This document shows that Krueger, on the date of the purchase, affirmed by his signature that he reviewed the Delay/Denied Log for possible straw purchase[3], yet he still transferred the firearm to Laura Brady.

IOI Williams stated that the record made by the criminal records check for Jason Brady is required to be maintained by the Licensee by last name or chronological order and separately from the other required records.

---

[3] The Firearm Sign-Off Sheet is an internal control document for the Licensee and is not required by any law or regulation.

It was further explained by the IOI that failing to record the correct name of a purchaser precludes law enforcement from obtaining the needed information about that firearm if and when the firearm is recovered and traced.

**Government Exhibit 9** was offered in support of the Government's assertion that the Licensee willfully entered the name of Laura Brady as the purchaser of the firearm in the A&D Record when they (the Licensee) knew that Jason Brady was the actual purchaser of the firearm.

*Under questioning from Mr. Barnes, IOI Williams testified to the following:*

The representatives of the Licensee who were present at the closing conference told IOI Williams "they had no idea" that the transactions involving the Brady's (Count 1 of the Notice) had occurred.

IOI Williams wanted to speak with Sales Associate Mr. Krueger but Krueger was no longer employed with the Licensee. Nor did Williams speak with Mr. or Mrs. Brady.

IOI Williams acknowledged that there is no regulation that requires a Licensee to perform a check of previous purchase transactions to ascertain if a straw purchase is being attempted.

IOI Williams discussed the exceptions to question 11a of the ATF Form 4473 which asks if the person completing the form is the actual transferee/purchaser of the firearm. Specifically that persons purchasing the firearm as a gift need not identify themselves as the actual transferee/ purchaser and still be allowed to complete the form and transaction.

IOI Williams stated that when Sales Associate Krueger physically handed the firearm to Mrs. Brady, he did it knowing, or having reasonable cause to believe that the firearm would be given to Mr. Brady and Mrs. Brady was acting on behalf of Mr. Brady, the actual purchaser.

IOI Williams maintained that despite the fact that Krueger failed to record the denied transaction in the extra-regulatory, internal control document (Government Exhibit 11), a record that could have prevented the subsequent sale to Mrs. Brady, it was still incumbent upon Krueger to deny the attempt made by Mrs. Brady because of the knowledge he had of the previous attempt by Mr. Brady.

IOI Williams confirmed that it is not a violation of the Gun Control Act for a person to have firearms in the same residence as a person prohibited from possessing firearms if dominion and control of the firearm remains with the lawful possessor.

An FFL[4] does not have a regulatory responsibility to have a training manual, standard operating procedures or training program for its employees. Nor are they required to have a multiple sale tracking system that records purchasing trends.

---

[4] Federal Firearms Licensee

IOI Williams described the Dick's employees as "cordial and very helpful and professional" and they were organized with their records.

Testimony of SA Richard Howard

SA Howard was assigned to perform a NICS Retrieval[5] for the Mossberg Maverick shotgun that is referenced in the Notice, from Mr. Jason Brady. On September 20, 2013, S/A Howard, accompanied by ATF S/A Jason Crenshaw, interviewed Jason Brady at his residence at 70 Grove Dale St. Memphis, TN 38120.

The shotgun was not retrieved that day in September 2013 because several months earlier, in May of 2013, the Memphis TN Police Department answering a call for a domestic disturbance at the Brady household, 70 Grove Dale St. Memphis, TN 38120, removed that shotgun and a Taurus pistol from the residence. The shotgun has been in the possession of the Memphis TN Police Department since that day.

Mr. Brady told S/A's Howard and Crenshaw that he attempted to purchase the shotgun in in November 2012 because he was going on a dove hunt with either friends or family and sought to obtain a shotgun rather than have to borrow one for the hunt. Brady told the agents that he filled out the paperwork (Form 4473) and paid for the shotgun. However, the TICS[6] check response was denied. Brady, then said that, because he had purchased firearms in the past, and at the time had a current valid concealed carry permit for handguns, he was "in shock" when the response came back "Denied."

Jason Brady left Dick's and went home and told his wife Laura who suggested that if he needed it, she would go to the store later that day to buy it. Mr. Brady added that although he was denied on the TICS check, he believed there were no reasons why he could not have the firearm and both him and his wife thought there was nothing wrong with her going in later to purchase the firearm for him.

S/A Howard stated that Mr. Brady made no mention of the firearm being a gift for anyone or needing the firearm for any other reason than for an upcoming dove hunt. Mr. Brady owned one other firearm, a Taurus pistol.

**Government Exhibit 13** was presented to show that a regulations review was conducted with the licensee on June 18, 2013[7]

---

[5] A NICS Retrieval is when an ATF Special Agent is assigned to retrieve a firearm that was purchased by an individual who subsequently was determined to be someone who cannot possess a firearm.

[6] TICS – Tennessee Instant Criminal Background Check System- the criminal records check completed before the transfer of a firearm can occur. This check is identical to the federally required NICS (National Instant Criminal Background Check System ) check except that the point of contact for the check is the state of Tennessee rather than the FBI.

[7] This review was conducted approximately 7 months after the events in question at this hearing took place.

**Government Exhibit 14** is a blank ATF Form 4473 presented for informational purposes.

*Under questioning from Mr. Barnes, S/A Howard testified to the following:*

The interview of Mr. Brady lasted about 20 minutes. The prohibiting factor for Jason Brady was related to a mental health issue. Mr. Brady was lucid and cogent during the interview.

Laura Brady was not present at the time of the visit by S/A's Howard and Crenshaw and she was not interviewed. The Memphis Police Department will not be returning the firearm to anyone in the household. After the field interview of Jason Brady, S/A Howard consulted with his supervisor and the U.S. Attorney's Office. Satisfied that the shotgun was permanently removed from Jason Brady's possession, all concurred that the further investigation was not warranted and the case was closed.

A record of the interview of Mr. Brady was made but that record is not part of the Government's evidence for this hearing.

No interviews of officers from the Memphis Police Dept. relative to the domestic call they answered at 70 Grove Dale Memphis, TN in May of 2013 were attempted. S/A Howard could not recall if the police report of the incident identified who had control over the firearms at the time they were taken.

No Dick's employees were interviewed by ATF Special Agents with respect to the Mr. Brady and the Mossberg Maverick shotgun.

## LICENSEE PRESENTATION

<u>Testimony of Kevin Dodson, Manager of Loss Prevention, Compliance & Logistics for Dick's Sporting Goods Inc.</u>

Mr. Dodson is responsible for the corporate policies and procedures for the sale of firearms at all Dick's Sporting Goods stores across the country as well as the national distribution center for Dick's Sporting Goods Inc.

Mr. Dodson's develops practices and procedures that are in compliance with Federal law and the laws of individual states that Dick's stores are located in. Included amongst these practices and procedures are company safeguards against the straw purchase of firearms.

In the estimation of Mr. Dodson, Dick's Sporting Goods Store #375 was "as good as any other store in the company" in complying with the core competencies of the company and applicable laws and regulations.

Mr. Dodson then proceeded to explain the training that Dick's employees undertake to identify potential straw purchases.

A Denied/Delay Log is employed by the company, and Store # 375, to record the name of any person that received a "Denied" or "Delayed" response to a TICS/NICS check. Prior to the sale of any firearm, the Dick's employee is charged with checking the Denied/Delay Log to see if any similarities suggesting a straw purchase involving the current purchaser with any past attempts. Same address, same last name, same firearm are some of the indicators that Dick's employees are trained to detect. The log is physically located at the place where the TICS/NICS check is conducted in each store. **Licensee Exhibit 1**

Because some "Delayed" responses eventually become "Proceed" responses those transactions are periodically purged from the stores list.

In addition, the company has a BOLO (Be On Lookout) Program whereby identifying information on any person who was "Denied" in an attempt to purchase a firearm is immediately disseminated to other FFL's in the area.[8] **Licensee Exhibit 2**

Prior to being able to sell firearms as an employee of Dick's a Sales Associate must pass an internal competency exam with a perfect score of 100%. Mr. Dodson added that Sales Associate Matthew Krueger, who handled both transactions of Jason and Laura Brady, passed that exam.

Random internal management company audits to measure compliance with state and Federal laws and regulations are conducted. Dick's also contracts outside entities to conduct audits and evaluate store policies and procedures.

Dodson stated that the corporate goal is to have 100% compliance at all stores throughout the country and while that is very difficult to attain, 76% of the Dick Stores that were inspected by ATF nationwide last year had no violations cited. Comparatively speaking Dodson added the percentage for all FFL's nationwide that receive no violations stands at 49%.

Mr. Dodson stated he was "shocked" when read the Notice of Revocation of License. He added that when he first reviewed the Report of Violations for the inspection he told his employees at the time that a warning conference would likely be the result of this violation.

Mr. Dodson's conclusion that the likely result would be a warning conference was based upon the result of another inspection at a Dick's store in Bloomington IN that was cited for the same violation (also on one occasion) and was summoned to a warning conference rather than having been served with a Notice of Revocation (**Licensee Exhibit 3**).

---

[8] These BOLO's are not limited to just other Dick's stores but are sometime sent to Dick's competitors that have partnered with Dick's to share such information.

An internal investigation was initiated by Mr. Dodson to learn how this violation occurred when safeguards where in place to prevent it. The result of that investigation led Mr. Dodson to conclude that the Matthew Krueger[9], the Sales Associate who provided customer service to both Jason and Laura Brady on November 6, 2012, failed to record Jason Brady's name on the company Denied/Delayed Log sheet. Thus no indicators were in place for any employee, including Krueger, to suspect a possible straw purchase when a person with the same last name and address (Laura Brady) came in to the store later that evening to purchase the same firearm. Dodson believed the error was inadvertent on Krueger's part and not a deliberate act.

Dodson also concluded the fact that the Mossberg Maverick shotgun that appears on the form for Jason Brady was the exact same firearm that was sold to Laura Brady was coincidence and simply attributed to the manner in which the firearms inventory at Dick's stores are stocked and displayed. The firearm initially brought out of the stock room for Jason Brady was likely re-stocked and brought out for Laura Brady when she asked for that same make and model of shotgun.

Mr. Dodson went on to explain in detail the policies and practices for Dick's stores across the country to identify and prevent straw purchases.

*Under questioning by Mr. Martin, Mr. Dodson testified to the following:*

Mr. Dodson acknowledged that the procedures outlined in the training of Dick's employees for firearm transactions were not followed by Sales Associate Krueger in the instance involving Laura Brady if an employee of Dick's does something in contravention to the Gun Control Act, then that action imputes to the Licensee.

### Testimony of Tommy Whittman, Private Investigator

Mr. Whittman is a retired Special Agent for ATF whose most recent post with ATF was that of Assistant Special Agent in Charge of the Phoenix Field Division.

Mr. Whittman conducted phone interviews Matthew Krueger, Jason Brady and Carolyn Brady for Dick's Sporting Goods Inc.

Mr. Krueger told Mr. Whittman had no specific recollection of the transactions involving Jason or Laura Brady. Mr. Kreuger explained his knowledge of what constitutes a straw purchase and recalled in detail the store policies for straw purchases and several instances in which he thwarted straw purchases during his time employed at Dicks Store #375 Mr. Krueger was "adamant" that if would not have allowed a straw purchase to occur if the circumstances indicated one was being attempted. In the estimation of Mr. Whittman, Mr. Krueger's knowledge of the requirements an FFL has with respect to straw purchases was correct and creditable (**Licensee Exhibit 5**).

---

[9] Matthew Krueger was no longer employed by Dick's Store #375 at the time of the ATF inspection or the subsequent internal investigation and was not interviewed by ATF or during the company investigation.

In his interview with Mr. Whittman, Jason Brady told the investigator that his intent, on November 6, 2012, was to purchase a Mossberg 12 gauge shotgun as a gift for his wife Laura who was intending to participate in a pheasant hunt, but who did not own a shotgun. Thinking that his transaction denial was a "paperwork mixup,"[10] Brady went home and told his wife that he found a shotgun suitable for her but that she would have to purchase the firearm because a paperwork mix-up prevented him from doing so **(Licensee Exhibit 5)**.

Later that day Laura Brady went to Dick's and told the sales associate that she wanted "a 12 gauge Mossberg to go hunting." She made no reference to her husband's attempt to buy the shotgun earlier that day.

Mr. Whittman stated that Laura Brady told him that she was unaware that her husband was prohibited from possessing a firearm.

Several days later, Mr. Brady told the investigator, he was notified by the State of Tennessee that he was prohibited by law from possessing firearms, could purchase no more firearms and that his concealed weapon permit was being revoked.

Mr. Brady explained to Mr. Whittman that several firearms were taken from the home by the Memphis Police Department several months later.

*Under questioning by Mr. Martin, Mr. Whittman testified to the following:*

Jason Brady told Mr. Whittman that he owned a handgun, rifle and a shotgun and those were surrendered to the Memphis Police Dept. because the Tennessee Bureau of Investigation determined that he was a prohibited person. Mr. Whittman didn't ask Mr. Brady why the police responded to his home in the first place. Nor did Mr. Whittman inquire as to why the Memphis Police went to the Brady home in May of 2013.

Testimony of Industry Consultant Wally Nelson

Mr. Nelson is a retired career employee of ATF. Starting in 1972, Mr. Nelson held numerous positions within the Bureau, most of his tenure was spent as a supervisor at the local, regional or national level. Mr. Nelson was a Deputy Assistant Director for the Bureau's Enforcement Program Services Division when he retired in 2005. Since that time he has worked as a private consultant to the firearms industry for regulatory and compliance matters.

Mr. Nelson testified that ATF Supervisors in 2003, in an effort to be consistent in revoking Federal firearms licenses, were trained, by an ATF Attorney named Paul Pendley who told the them that different parties may not exactly agree on the exact language for what "willfulness' is but, Pendley told the supervisors "We know what it is not. It is not accident, happenstance or human error."

---

[10] At the time of the attempted purchase Jason Brady held a concealed weapons permit and possibly a hunting license

Mr. Nelson reviewed the facts and circumstances of the transactions referenced in the Notice and did an in person evaluation of the compliance operations at the Dick's 375 store, along with a review of the national compliance program of Dick's Sporting Good Inc.

In Mr. Nelson's opinion, the programs and policies and training system for firearms compliance that is in place for the Dick's Sporting Goods retail chain is "exemplary" and if not the best in the nation, then "darn close." Mr. Nelson added that the commitment of personnel and money ("probably millions of dollars"), the development of electronic data systems.

Mr. Nelson had the occasion to examine the Denial Log maintained at the Dicks Store # 375 and found it to be above what exists as the industry norm.

With respect to the Notice of Revocation, Mr. Nelson feels that the Government's case is not on solid footing. He felt the violations cited were the result of human error by one employee and should not rise

Mr. Nelson added that in his experience, he's never seen a violation cited for a false entry on an A&D Record for an unsuspected straw purchase.

Mr. Nelson went on to cite Title 18 U.S.C. 923(e) to argue that the Bureau has the discretion on whether to pursue revocation of license for a violation of the regulations and are not compelled to revoke that license, even if the violation(s) are deemed to be willful. In his opinion this is case warrants the discretion not to revoke because many FFL"s miss straw sales.

Mr. Nelson added that in his 36 year career with ATF, he was not aware of one instance in which a license was revoked for a single transaction in which a straw sale was missed, and revealed on their first compliance inspection after being in business for 6 years.

*Under questioning by Mr. Martin, Mr. Whittman testified to the following:*

Based upon the investigation he participated in for the Licensee, Mr. Nelson concluded that the acquisition of the Mossberg shotgun by Laura Brady on November 6, 2012 was not a straw purchase. After listening to the Government's presentation at this hearing, Mr. Nelson believes the Government's assertion that it was a straw sale is still "in doubt."

Mr. Nelson acknowledged that the version of facts about the purchase of the 12 gauge Mossberg that was given by Jason Brady to S/A's Howard & Crenshaw was given closer to the time of the purchase then the differing account that Mr. Brady gave to Mr. Whittman in January of 2014.

Mr. Nelson acknowledged that it would help the Licensee's effort to retain their license if there is doubt as to whether a straw purchase occurred on November 6, 2012.

# FINDINGS OF FACT

Count 1 of the Notice asserts that the Licensee transferred a firearm to a person who the Licensee knew, or had reasonable cause to believe, was prohibited from receipt and possession of a firearm. The Government was successful in establishing that a sales associate for the Licensee, on one occasion, neglected to follow store policies and procedures, and in contravention to the company training that was delivered to him, transferred a firearm to a person whom the associate knew, or had reasonable cause to believe, was prohibited from receipt and possession of a firearm. The testimony of IOI Williams and Government Exhibits 7-14 were presented to support their assertion. The licensee failed to refute it. Therefore I find that the Licensee was in violation of 18 U.S.C. § 922(d) and 27 C.F.R. § 478.99(c).

Count 2 of the Notice asserts that the Licensee willfully entered false information into its Acquisition & Disposition Record (A&D Record) in that on or about November 6, 2012, the Licensee recorded in its A&D Record the name of Laura Carolyn Brady, as being the transferee of a firearm, a Mossberg, Maverick, serial number MV84994S, when in fact the Licensee knew that Laura Carolyn Brady was not the true purchaser and transferee of the firearm and that said recording in the A&D Record was false.

From the evidence presented at the hearing, only Dick's Sales Associate Krueger knew that Jason Brady attempted to purchase the Mossberg Maverick 12 gauge shotgun on the morning of November 6, 2012. Krueger failed to notify his fellow employees about unsuccessful attempt to buy the shotgun because he failed to record Mr. Brady's name on the "Denied List" that the company maintains to prevent straw purchases. Mr. Krueger was the only known Sales Associate to have been present when Laura Brady acquired the same Mossberg Maverick 12 gauge in the evening of November 6, 2012. ATF Forms 4473 that have a "Denied" response to a criminal records check are filed separately from the Forms with a "Proceed " response which require the additional step of updating the A&D Record.

Government Exhibit 9 is a copy of the computer printout for the A&D Record showing the Laura Brady entry for the shotgun. This computer record gives no indication as to who updated that record. Government Exhibit 11 shows that there were as many as five Dick's employees involved in the execution and cross checking of the firearms sale to Laura Brady. It also seems to indicate that Mr. Krueger's involvement in the record keeping for this sale ended with the completion of the Form 4473. The Government's Exhibit 11 also suggests that the A&D Record was updated in Step 5 or Step 6 on the form. Both of these steps were completed by managers of the Licensee and not Mr. Krueger. Therefore, whoever recorded "Laura Brady" in the A&D Record as the actual purchaser of the firearm did so without the knowledge that Jason Brady attempted to buy the same gun earlier that day.

At the very least, the Government did not establish that it was Krueger who made the record in the A& D Book or that the Licensee had any information about Jason Brady at

the time that they recorded his wife's name in the A&D Record. Thus it cannot be established that the Licensee "willfully"[11] or "knowingly"[12] entered information into the A&D Record that they knew to be false.

Therefore I find that the Licensee was not in violation of 18 U.S.C. § 924(a)(3)(A); and 27 C.F.R. § 478.128(c).

Count 3 of the Notice asserts that the Licensee willfully maintained false statements and false entries on a Firearms Transaction Record, ATF Form 4473 (5300.9), a record that is required to be maintained. The Government established that the Licensee failed to retain an ATF Form 4473 completed by the purchaser and that they obtained and retained a false record of the firearm transfer to Jason Wayne Brady and by retaining an ATF Form 4473 that records Laura Carolyn Brady as the actual purchaser and affirms that the transfer to Laura Brady was lawful. The testimony of IOI Williams and Government Exhibits 8,10,12 were presented to support their assertion. The licensee failed to refute it. Therefore I find that the Licensee is in violation of 18 U.S.C. §§ 922(m); 924(a)(3)(A); 922(g)(1)(A) and 27 C.F.R. §§ 478.124(c)(1); 478.128(c).

## CONCLUSIONS

As provided in 18 U.S.C. § 923(f), the Bureau of Alcohol, Tobacco, Firearms and Explosives may revoke a federal firearms license if the licensee willfully violates any provision of Chapter 44, Title 18, United States Code, or any rule or regulation there under.

Having established that the Licensee:

- On one occasion, transferred a firearm to a person who was known, or there was reasonable cause to believe, was prohibited from receipt and possession of a firearm

- On one occasion failed to obtain and retain an ATF Form 4473 from the transferee that included, amongst other things, the name of the transferee

- On one occasion, maintained an ATF Form 4473 which recorded false information to include the name of the actual purchaser of the firearm, and affirmation that it was lawful to transfer that firearm.

It must then be determined if such violations were willful.

---

[11] Notice of Revocation
[12] Title 18 U.S.C. §§ 922(m) and 924(a)(3)(A) and 27 C.F.R. § 478.128(c)

A "willful" violation for purposes of revoking a Federal firearms license is one in which the licensee knows of a legal obligation and purposefully disregards such obligation or is plainly indifferent to it.

The Licensee acknowledged that they were aware of their legal obligation and that with respect to the transfer to Laura Brady, they did not fulfill that requirement. The Government maintains that the Licensee was made aware of their legal requirements with respect to suspected straw purchases and record keeping during the qualification inspection for Dick's Sporting Goods Inc. Store # 375 in 2006.

Thus it was established that Licensee was aware of their legal obligation with respect to the laws and regulations of a federally licensed firearms dealer, and on one transaction, the Licensee either purposefully disregarded, or was plainly indifferent, to those obligations.

Based on the information presented, the Government has established that the license is subject to revocation, as the licensee has willfully violated the provisions of Title 18, United States Code, Chapter 44, and the regulations thereunder.

Michael T. Reilly
Hearing Officer

# LIST OF EXHIBITS

GOVERNMENT EX. 1 -   ATF Federal Licensing System Report – Dick's Sporting Good Inc. Store # 375

GOVERNMENT EX. 2 -   ATF Form 4500 Notice of Revocation of License

GOVERNMENT EX. 3 -   Request for a Hearing - December 6, 2013

GOVERNMENT EX. 4 -   Power of Attorney

GOVERNMENT EX. 5 -   Initial Notice of Hearing dated December 18, 2013 – Certified Mail Return Receipt

GOVERNMENT EX. 6-   Amended Notice of Hearing dated January 3, 2014 - Certified Mail Return Receipt

GOVERNMENT EX. 7-   ATF Form 5030.5 Report of Violations dated June 18, 2013

GOVERNMENT EX. 8 -   ATF Form 4473 – Firearms Transaction Record - Jason Wayne Brady dated November 6, 2012

GOVERNMENT EX. 9 -   A&D Record of Licensee dated June 13, 2013

GOVERNMENT EX. 10-   ATF Forms 4473 – Firearms Transaction Record – Laura Carolyn Brady dated November 6, 2012

GOVERNMENT EX. 11-   Dick's Firearms Transaction sign off sheet: Laura Brady

GOVERNMENT EX. 12-   Tennessee Instant Criminal Background Check System results for Dick's #375 on November 6, 2012

GOVERNMENT EX. 13-   Acknowledgment of Federal Firearms Regulations dated June 18, 2013

GOVERNMENT EX. 14-   Blank ATF Form 4473

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

LICENSEE EX  1-   Dick's Sporting Goods Manual Excerpt

| | |
|---|---|
| LICENSEE EX.2- | Denied/Delayed & BOLO Procedures - Dick's Sporting Goods Inc. |
| LICENSEE EX. 3- | Warning Conference Letter & Report of Violations for Dick's Store #226 |
| LICENSEE EX. 4 - | ATF Form 4500 Notice of Revocation of License (GOV EX 2) |
| LICENSEE EX 5- | Request for a Hearing - December 6, 2013 (GOV EX 3) |
| LICENSEE EX. 6- | Initial Notice of Hearing (GOV EX 4) |
| LICENSEE EX. 7- | Amended Notice of Hearing (GOV EX 5) |
| LICENSEE EX. 8 - | ATF Form 5030.5 Report of Violations - June 18, 2013 (GOV EX 6) |