# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| DICK'S SPORTING GOODS, INC. d/b/a DICK'S SPORTING GOODS, INC. #375,<br><br>    Petitioner,<br><br>v.<br><br>KEVIN L. BOYDSTON, Director of Industry Operations, Bureau of Alcohol, Tobacco, Firearms and Explosives,<br><br>    Respondent. | No. 2:14-cv-02360-JPM-dkv |

**ORDER DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Respondent Kevin L. Boydston's Motion for Summary Judgment, filed July 10, 2014. (ECF No. 11.) For the reasons stated below, Respondent's Motion for Summary Judgment is DENIED.

## I. BACKGROUND

This case concerns an appeal from the revocation of a Federal Firearms License ("FFL") as a dealer in firearms other than destructive devices. (See Compl. ¶ 1, ECF No. 1.) On or about November 21, 2013, Kevin L. Boydston, Director of Industry Operations, Bureau of Alcohol Tobacco Firearms and Explosives ("DIO Boydston"), executed and served a revocation of Petitioner's FFL as to Petitioner's store #375 for violations of the Gun Control Act of 1968 ("GCA"), codified as amended at 18

U.S.C. § 921 et seq. (Id. ¶ 5.) Petitioner requested an administrative hearing to contest the revocation, which was held on February 5, 2015. (Id. ¶¶ 6-7.) On or about March 25, 2014, Petitioner received a Final Notice of Denial of Application or Revocation of Firearms license from DIO Boydston that was effective 60 days from the date of its receipt. (Id. ¶ 8.)

Boydston found the following as a matter of fact:

8. On November 6, 2012 Jason Wayne Brady, who resides at 70 Grove Dale Street, Memphis, Tennessee 38120, went to the Licensee's premises location and attempted to purchase a Mossberg Maverick 12 gauge shotgun, serial number MV84994S, from the Licensee. Gov't Exhibits 8 and 12. The Licensee's Sales Associate, Matthew Kruger, assisted Mr. Brady for this attempted transaction. After the required information was recorded on Sections A & B of the Firearms Transaction Record (ATF Form 4473), Mr. Kruger initiated the required Tennessee Instant Check System (TICS) criminal background inquiry for Mr. Brady. Gov't Exhibit 8. A "Denied" response was received from TICS. Gov't Exhibits 8 and 12. The transaction was then terminated, and the Mossberg shotgun was not delivered to Mr. Brady.

9. On that same date, approximately 8 or 9 hours after Mr. Brady was denied the shotgun purchase, Laura Carolyn Brady, who resides at the same address as Mr. Brady, went to the Licensee's location and sought to purchase a Mossberg 12 gauge shotgun from the Licensee. Gov't Exhibit 10 and 12. The same sales associate, Matthew Kruger, assisted Mrs. Laura Brady. Gov't Exhibit 10. After she recorded the required information on Sections A & B of the ATF Form 4473, Mr. Kruger initiated a TICS inquiry for Mrs. Brady. Gov't Exhibit 10. A "Proceed" result was received, the transaction was completed, and the Mossberg Maverick 12 gauge shotgun serial number MV84994S was delivered to Mrs. Brady. Gov't Exhibits 10 and 12.

10. Laura Carolyn Brady and Jason Wayne Brady are husband and wife, and they reside together at 70 Grove Dale Street, Memphis, Tennessee 38120. Gov't Exhibits 8 and 10. The Mossberg shotgun that was delivered to Mrs. Brady was the

> same shotgun that Mr. Brady attempted to purchase earlier that same day. Gov't Exhibits 8 and 10. . . .
>
> 11. On the date of the purchase, Sales Associate Matthew Krueger designated by his signature that he had reviewed the Delay/Denied Log for a possible "straw purchase," yet he still delivered the firearm to Laura Brady although the name of Jason Wayne Brady was recorded as a denial only a few hours earlier, with only three transactions in between. Gov't. Exhibit 12.

(ECF No. 11-8 at ¶¶ 8-11 (footnotes omitted).) Further, at the administrative hearing, "Licensee admitted that it was aware of the legal requirements for the violations cited in the 2013, prior to the inspection." (Id. ¶ 13.) Under these facts, DIO Boydston found that Jason Brady was the actual purchaser. Accordingly, DIO Boydston found that Petitioner, "through its purposeful disregard of, and plain indifference to, its known legal duty under the GCA and the regulations thereunder," committed the following violations:

> 1. Transfer to a prohibited person with reasonable cause to believe such person was prohibited, in violation of 18 U.S.C. § 922(d) and 27 C.F.R. § 478.99(c);
>
> 3. False Information on ATF Form 4473 as to Purchaser in violation of 18 U.S.C. §§ 922(g)(1)(A), 923(g)(1)(A), 922(m), and 924(a)(3)(A); and 27 C.F.R. §§ 478.124(c)(1) and 478.128(c).

(Id. ¶ 29.)

On July 10, 2014, Respondent filed a Motion for Summary Judgment. (ECF No. 11.) Respondent argues that summary judgment is appropriate because Petitioner "has not alleged any additional material facts or evidence which cast substantial

doubt on ATF's authority for its decision, or which dispute any material facts in the record, nor can such facts be alleged." (ECF No. 11-1 at 6.)

Following several motions for extension of time to respond to the Motion for Summary Judgment, Petitioner ultimately filed a Motion to Strike on December 19, 2014. (ECF No. 46.) Respondent filed its Opposition to Petitioner's Motion to Strike on January 16, 2015. (ECF No. 53.)

The Court held a hearing on the Motion to Strike on February 11, 2015. (ECF No. 57.) During the hearing, Petitioner acknowledged that it was appropriate for the Court to consider the Motion to Strike as a partial response to the Motion for Summary Judgment.

**II. LEGAL STANDARD**

    **A.    Standard of Review**

"The Attorney General may, after notice and opportunity for hearing, revoke any license issued [pursuant to 18 U.S.C. § 923] if the holder of such license has willfully violated any provision of [the GCA] or any rule or regulation prescribed by the Attorney General under [the GCA] . . . ." 18 U.S.C. § 923(e). A district court's review of the Attorney General's decision to revoke an FFL is de novo. § 923(f)(3). A reviewing court "may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered" at the

4

revocation hearing.  Id.  "The language of § 923(f)(3) does not call upon this Court to decide whether it would revoke the license in [its] own judgment, but whether all of the evidence presented is sufficient to justify the Attorney General's revocation of the license."  Pinion Enterprises, Inc. v. Ashcroft, 371 F. Supp. 2d 1311, 1315 (N.D. Ala. 2005). Accordingly, this Court's de novo review is limited to the determination as to whether Petitioner willfully violated the GCA.  § 923(f)(3).

**B.    Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); accord Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC, 758 F.3d 777, 781 (6th Cir. 2014) (per curiam). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense."  Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).  "A genuine dispute of material facts exists if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'"  Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc., 757 F.3d 540, 543-44 (6th Cir. 2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

5

"The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)); see also Phelps v. State Farm Mut. Auto. Ins. Co., 736 F.3d 697, 702 (6th Cir. 2012).  "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Phelps, 736 F.3d at 703 (quoting Anderson, 477 U.S. at 251-52).  "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Anderson, 477 U.S. at 252).

"Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448-49 (citing Matsushita, 475 U.S. at 587; Fed. R. Civ.

P. 56(e)). "'When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper.'" Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)); see also Kalich v. AT&T Mobility, LLC, 679 F.3d 464, 469 (6th Cir. 2012).

"To show that a fact is, or is not, genuinely disputed, both parties are required to either 'cite[] to particular parts of materials in the record' or 'show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting Celotex Corp., 477 U.S. at 325)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" Martinez, 703 F.3d at 914 (alteration in original) (quoting Anderson, 477 U.S. at 255) (internal quotation marks omitted).

"The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); see also Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) ("[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact'" (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008))); Emerson v. Novartis Pharm. Corp., 446 F. App'x 733, 736 (6th Cir. 2011) ("'[J]udges are not like pigs, hunting for truffles' that might be buried in the record." (alteration in original) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991))).

## III. ANALYSIS

Even assuming that Respondent has satisfied its initial burden, Petitioner has "set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448-49 (citing Matsushita, 475 U.S. at 587; Fed. R. Civ. P. 56(e)).

Respondent argues that a GCA violation occurs if a Federal firearms licensee has reasonable cause to believe at the time of a purchase that the person obtaining the firearm is not the true purchaser. (ECF No. 53 at 5.) According to Respondent, the violation occurs without respect to whether the person obtaining the firearm at the time is, in fact, the true purchaser of the firearm. In support of this assertion, Respondent cites to a

number of cases in its brief. (ECF No. 53 at 5-6 (citing Abramski v. United States 134 S. Ct. 2259, 2272-75 (2014); United States v. Beaufort, No. 94-5554, No. 95-5002, 1996 U.S. App. LEXIS 9275, aff'd 83 F.3d 416 (4th Cir. 1996), Perri v. Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms, 637 F.2d 1332 (9th Cir. 1981); United States v. Brooks, 611 F.2d 614 (5th Cir. 1980), overruled on other grounds by United States v. Henry, 749 F.2d 203 (5th Cir. 1984).) Not one of these cases supports Respondent's position. In Abramski, the person obtaining the gun at the time of purchase was not the true purchaser. 134 S. Ct. at 2264 ("The petitioner here is Bruce Abramski, a former police officer who offered to buy a Glock 19 handgun for his uncle, Angel Alvarez.") Beaufort involved a number of straw purchases. 1996 U.S. App. LEXIS 9275 at *1-*5. Perri involved two straw purchases. 637 F.2d at 1336. Similarly, Brooks involved a straw purchase. 611 F.2d at 615-16.

The case that Respondent's counsel described during the February 10, 2015 hearing as "most on point" does, however, provide some support for his position. According to Respondent, Shawano Gun & Loan, LLC v. Hughes, No. 09-C-150, 2010 WL 3062847 (E.D. Wis. Aug. 2, 2010) aff'd, 650 F.3d 1070 (7th Cir. 2011)[1]

---

[1] Respondent submitted the district court opinion without referencing either in the filing (ECF No. 56) or in the conference that the opinion had been appealed and affirmed by the Seventh Circuit. The Court notes that this was

9

directly supports his position.  Shawano involved multiple inspections and multiple violations over a period of eight years.  Id. at *1-*2.  Shawano's license was revoked on a finding of five counts of violations, three of which were not contested by Shawano.  650 F.3d at 1076.  Shawano did, however, contest its willfulness as to all violations.  See id.  The third count related to five straw purchases.  2010 WL 3062847, at *4.  Shawano produced affidavits from four of the gun purchasers indicating that they bought the guns for themselves. Id.  According to the Seventh Circuit, "whether certain purchases were straw purchases is beside the point: Shawano had reason to believe, at the time the second purchaser applied to purchase the firearm, that the individual was not the intended purchaser."  650 F.3d 1078-79.  This reference is, however, dicta.  As Respondent repeatedly notes in its briefing, a single willful violation of the GCA is sufficient to justify a revocation of an FFL.  There were ample reasons for the Seventh Circuit to find that its many admitted violations were willful.

---

not a failure to disclose adverse authority, and therefore does not amount to sanctionable conduct under Rule 11 of the Federal Rules of Civil Procedure. Tenn. Sup. Ct. R. 8, RPC 3.3(a)(2); see Matter of Hendrix, 986 F.2d 195, 201 (7th Cir. 1993).  Subsequent case history even when affirming, however, does bear on the weight of authority of the lower court's opinion.  This circumstance is different, however, from what might normally be anticipated by Rule 3.3(a)(2).  The "newly discovered authority" submitted by Respondent in this case was submitted at 4:51 p.m. on February 10, 2015.  (ECF No. 56.) The hearing was held on February 11, 2015 at 10:00 a.m.  When the cited authority is disclosed so close in time before the hearing as happened in this case, such that opposing counsel has limited opportunity to research the legal authority cited, the candor required regarding the weight of the authority is colored by Rule 3.3(a)(3).

See id. at 1079 ("Despite being given multiple opportunities to take corrective action, Shawano continued to repeat its violations."); id. ("The suggestion in its brief and in Mr. Backes's affidavit that, basically, Shawano gets the message loud and clear and will do better if given another chance is not an argument that reaches the merits of the case.")  The ATF was as a result well within its authority to revoke Shawano's license.  The Seventh Circuit's remark as to whether it mattered whether there were in fact straw purchases made was therefore dicta.  Moreover, neither the district court nor the Seventh Circuit in Shawano actually looked to the text of the relevant statutes and regulations in suggesting that an actual straw purchase was irrelevant so long as a firearms licensee had reasonable cause to believe it was a straw purchase.

This Court now considers the relevant statutes and regulations in this case and declines to follow Respondent's position or the Seventh Circuit's dicta.  Each of the statutes and regulations under the GCA that the Attorney General found was violated in this case share a common necessary factual premise: that Laura Brady's purchase of the Mossberg shotgun was a straw purchase made for Jason Wayne Brady.  The Attorney General revoked Petitioners FFL for violations of 18 U.S.C. §§ 922(d), 922(g)(1)(A), 922(m), 923(g)(1)(A), and 924(a)(3)(A); 27 C.F.R. §§ 478.99(c) and 478.128(c).  18 U.S.C. § 922(d) and

27 C.F.R. § 478.99(c) prohibit the sale of "any firearm or ammunition to any person knowing or having reasonable cause to believe that such person" is a prohibited person. There is no allegation that Laura Brady is a prohibited person under federal law. As a result, section 922(d) can only be violated if <u>the person that was sold the gun</u> -- by straw purchase or otherwise -- is a prohibited person. See Abramski, 134 S. Ct. at 2269 (holding that references in § 922 refer "not to the fictitious but to the real buyer"). Accordingly, unless Jason Wayne Brady was in fact the purchaser, then section 922(d) was not violated. Section 922(g)(1)(A) prohibits a felon from receiving any firearm; as Laura Brady was not a felon, the statute was not violated in this case unless Jason Wayne Brady was the buyer. 18 U.S.C. §§ 922(m) and 924(a) and 27 C.F.R. § 478.128 prohibit a firearms dealer from keeping false records; the records in this case were only false if Laura Brady was not the actual buyer. The statutes and regulations at issue in this case make clear that no GCA violation occurs just because a firearms licensee sells a weapon with reasonable cause to believe a straw purchase is occurring: it must actually be a straw purchase for a GCA violation to occur.

Petitioner has set forth specific facts, consistent with Rule 56, that show a triable issue of material fact as to for whom the Mossberg shotgun was purchased. The affidavits from

Jason Wayne Brady and Laura Brady indicate that Laura Brady purchased the gun for herself. (ECF Nos. 46-2, 46-3.) Therefore, there is a genuine issue of material fact as to one of the necessary elements of the GCA violation at issue in this case. Accordingly, Respondent's Motion for Summary Judgment (ECF No. 11) is DENIED.

**IV. CONCLUSION**

For the reasons stated above, Respondent's Motion for Summary Judgment (ECF No. 11) is DENIED. Petitioner's Motion to Strike (ECF No. 46) is DENIED AS MOOT.

**IT IS SO ORDERED,** this 19th day of February, 2015.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE